Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
pgore@prattattorneys.com

(Co-counsel listed on signature page)

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **MICHAEL KOSTA and STEVE BATES, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DEL MONTE CORPORATION,**<br><br>**Defendant.** | **Case No.  CV 12-01722 YGR**<br><br>**MOTION FOR APPLICATION OF COLLATERAL ESTOPPEL**<br><br>Hearing Date:  January 15, 2013<br>Time:  2 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Action filed:  April 5, 2012 |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ....................................................................................................ii

TABLE OF AUTHORITIES...........................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED.............................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF FACTS ..........................................................................2

     A.     The Current Litigation.....................................................................2

     B.     The Fresh Del Monte Trial ..............................................................2

           1.     Facts.......................................................................................2

           2.     Claims, Charge, and Verdict ................................................4

III.    ISSUES PRECLUDED ...............................................................................6

IV.    ARGUMENT AND AUTHORITIES .........................................................7

     A.     Applicable Law ................................................................................7

     B.     Legal Standard for Collateral Estoppel ..........................................8

     C.     The Requirements for Collateral Estoppel Are Met in this Case. .........................9

           1.     Plaintiff could not have easily joined the first action. ...............................9

           2.     Application of collateral estoppel to Del Monte would not be unfair. ....................10

           3.     The issues at stake are identical to those actually litigated in the prior action..................................11

           4.     The issues were actually litigated in the prior action. ...............................14

            5.     The determination of the issues in the prior litigation was a critical and necessary part of the judgment. ..............................15

           6.     There was a full and fair opportunity to litigate the issues in the previous action. .........................15

            7.     The issues were lost as a result of a final judgment in the previous action. ....................................16

            8.     The person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. ..........................17

           9.     There are no applicable exceptions that would preclude application of collateral estoppel in this case.............................18

V.      CONCLUSION ...........................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. McCurry,*
449 U.S. 90 (1980). ..................................................................................8

*Americana Fabrics, Inc. v. L & L Textiles, Inc.,*
754 F.2d 1524 (9th Cir.1985). ....................................................................9

*Avitia v. Metropolitan Club,*
924 F.2d 689 (7th Cir. 1991)......................................................................18

*Bates v. Union Oil Co.,*
944 F.2d 647 (9th Cir. 1991). ..............................................................7, 16

*Blonder-Tongue Labs., Inc. v. Univ of Ill. Found.,*
402 U.S. 313 (1971). ..................................................................................8

*Carroll v. Puritan Leasing Co.,*
77 Cal.App.3d 481 (1978). .........................................................................14

*Charles J. Arndt, Inc. v. City of Birmingham,*
748 F.2d 1486 (11th Cir. 1984)....................................................................9

*Clark v. Bear Stearns & Co., Inc.,*
966 F.2d 1318 (9th Cir. 1992).....................................................................8

*Cleary v. News Corp.,*
30 F.3d 1255 (9th Cir. 1994).....................................................................12

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service,*
911 F.2d 242 (9th Cir.1990)......................................................................13

*Costantini v. Trans World Airlines,*
681 F.2d 1199, 1201 (9th Cir. 1982)...........................................................7

*Davenport v. De Robertis,*
844 F.2d 1310 (7th Cir. 1988)...................................................................17

*Eureka Fed. Sav. & Loan Ass'n v. American Casualty Co.,*
873 F.2d 229 (9th Cir. 1989)......................................................................16

*FDIC v. Continental Casualty Co.,*
796 F. Supp. 1344 (D. Or. 1991).................................................................15

*In re Palmer,*
207 F.3d 566 (9th Cir. 2000);......................................................................9

*In re Westgate-California Corp.,*
642 F.2d 1174 (9th Cir. 1981).....................................................................15

*John Morrell & Co. v. Local Union 304A,*
913 F.2d 544 (8th Cir. 1990)......................................................................17

*Kamilche Co. v. United States,*...........................................................................................12
53 F.3d 1059, 1062 (9th Cir. 1995)

*Klein v. Earth Elements, Inc.,*
59 Cal.App.4th 965 (Cal. App. 2007). ................................................................................13

*Kulak v. City of New York,*
88 F.3d 63 (2d Cir. 1996)....................................................................................................15

*Luben Indus., Inc. v. United States,*
707 F.2d 1037 (9th Cir. 1983)............................................................................................16

*Lummus Co. v. Commonwealth Oil Refining Co.,*
297 F.2d 80 (2d Cir. 1961). ................................................................................................17

*Montana v. United States,*
440 U.S. 147, 155 (1979). ...............................................................................11, 16, 18

*Pacific Mut. Life Ins. Co. v. McConnell,*
44 Cal.2d 715 (Cal. 1955). .................................................................................................14

*Parklane Hosiery Co. v. Shore,*
439 U.S. 322 (1979). .................................................................................................8, 9, 10

*Peck v. Commissioner,*
904 F.2d 525 (9th Cir. 1990)..............................................................................................16

*Pena v. Gardner,*
976 F.2d 469 (9th Cir. 1992)................................................................................................9

*RecoverEdge L.P. v. Pentecost,*
44 F.3d 1284 (5th Cir. 1995)..............................................................................................17

*Richey v. United States IRS,*
9 F.3d 1407 (9th Cir. 1993)...........................................................................................16, 18

*Ross-Berger Co. v. Equitable Life Assurance Soc'y,*
872 F.2d 1331 (7th Cir. 1989)..............................................................................................9

*S.C. Johnson & Son, Inc. v. Clorox Co.,*
241 F.3d 232 (2d Cir. 2001). ..............................................................................................13

*Segal v. American Tele. & Tele. Co.,*
606 F.2d 842 (9th Cir. 1979) (per curiam). .......................................................................15

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997).............................................................................................13

*Starker v. United States,*
602 F.2d 1341 (9th Cir. 1979)......................................................................................8, 9, 10, 12

*Steen v. John Hancock Life Ins. Co.,*
106 F.3d 904 (9th Cir. 1997).........................................................................................12, 18

*Syverson v. IBM,*

472 F.3d 1072, 1079 (9th Cir. 2007)..................................................................................16

*United Indus. Corp. v. Clorox Co.*,
140 F.3d 1175 (8th Cir.  1998)......................................................................................13

*United States v. Moser*,
266 U.S. 236 (1924),....................................................................................................16

*United States v. Stauffer Chem. Co.*,
464 U.S. 165 (1984).......................................................................................................8

*Younger v. Jensen*,
26 Cal. 3d 397 (Cal. 1980).............................................................................................7

**STATUTES**

15 U.S.C. § 1051, *et seq.*.................................................................................................3

15 U.S.C. § 1125............................................................................................................4, 12

28 U.S.C. § 1291..........................................................................................................16

CAL. BUS. & PROF. CODE § 17200...........................................................................12, 13

CAL. HEALTH. & SAFETY. CODE § 109875 *et seq.*....................................................13

**OTHER AUTHORITIES**

18-132 MOORE'S FEDERAL PRACTICE - CIVIL § 132.03..........................................14

18-132 MOORE'S FEDERAL PRACTICE - CIVIL § 132.05..........................................15

RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g.............................................17

RESTATEMENT (SECOND) OF JUDGMENTS § 13.......................................................16

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. c.............................................12

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. d.............................................14

RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. j..............................................15

RESTATEMENT (SECOND) OF JUDGMENTS § 27........................................................8

1

**NOTICE OF MOTION AND MOTION**

2

**TO DEFENDANT AND ITS COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on January 15, 2013, at 2 p.m.,, or as soon thereafter as

4

5

the matter may be heard, in the United States District Court, Northern District of California, San

Jose Division, located at 1301 Clay Street, Oakland, California, in Courtroom 5 before the

6

7

Honorable Yvonne Gonzalez Rogers, Plaintiffs Michael Kosta and Steve Bates will and hereby do

8

move the Court to issue a ruling that the following issues are established through the doctrine of

9

collateral estoppel:

10

11

- Del Monte marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products in a manner that conveys to consumers the false and misleading message that those products are fresh fruit, as opposed to preserved fruit.

12

13

14

- Del Monte falsely labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products as "Must Be Refrigerated," and sold some of the products in plastic, transparent, bowl-shaped containers identical to those used by other producers for fresh, refrigerated cut produce.

15

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by stating the products "Must Be Refrigerated."

16

17

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by not stating the products are pasteurized.

18

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by not stating the products contain "preservatives."

19

20

- Del Monte's practice of packaging some of its products in plastic, transparent, bowl-shaped containers identical to those used by other producers for fresh, refrigerated cut produce conveyed to consumers a false impression of freshness.

21

22

- The labels on the foods complained of in Plaintiff's complaint — Del Monte's Fruit Natural, SuperFruit and SunFresh products — were not compliant with FDA Refrigeration guidelines, including 21 C.F.R. §§ 101.95.

23

24

- The false "freshness" message from Del Monte's false labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products actually deceived or had the tendency to deceive a substantial portion of the target audience.

25

26

- The false "freshness" message from Del Monte's false labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products was material in that it was likely to influence purchasing decisions

27

28

- Del Monte's marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products made or conveyed false or misleading statements or messages about the freshness of product.

---

- Del Monte intentionally marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products to appear like fresh cut fruit.

- Del Monte consciously and deliberately chose to not follow FDA guidelines, including 21 C.F.R. §§ 101.95 by labeling its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products as "Must be Refrigerated."

- Del Monte's marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products gave consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

- Del Monte's marketing, advertising, packaging, and labeling of its marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products actually caused consumers to have that false impression that those products are fresh fruit, as opposed to preserved fruit, or was likely to cause that impression.

- Del Monte knew its marketing, advertising, packaging, and labeling of its marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products gave consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

- Del Monte designed its marketing, advertising, packaging, and labeling of its marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products with the intent to give consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

Plaintiffs' motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Pierce Gore and Exhibits thereto, the court's record in *Fresh Del Monte Produce, Inc., v. Del Monte Foods Company and Del Monte Corporation*, Case No. 1:08-cv-08718-SHS, in the United States District Court for the Southern District of New York, the Proposed Order Granting Motion for Application of Collateral Estoppel, all pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

### CIVIL L.R. 7-4(a)(3)

1.      Whether Plaintiff could have easily joined in *Fresh Del Monte Produce, Inc., v. Del Monte Foods Company and Del Monte Corporation*, Case No. 1:08-cv-08718-SHS, in the United States District Court for the Southern District of New York (the *Fresh Del Monte* case).

2.      Whether application of collateral estoppel to Del Monte Corporation would be unfair.

3.      Whether the issues at stake are identical to those actually litigated in the *Fresh Del Monte* case.

4.      Whether the issues at stake were actually litigated in the *Fresh Del Monte* case.

5.      Whether the issues at stake were critical and necessary to the determination of the issues in the *Fresh Del Monte* case.

6.      Whether Del Monte Corporation had a full and fair opportunity to litigate the issues at stake in the *Fresh Del Monte* case.

7.      Whether the issues at stake were adjudicated as a result of a final judgment in the *Fresh Del Monte* case.

8.      Whether there are any applicable exceptions that would preclude the application of collateral estoppel in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Michael Kosta and Steve Bates, by and through the undersigned counsel, move the Court to grant preclusive effect to certain issues determined by the jury in the United States District Court for the Southern District of New York in an action brought by Fresh Del Monte Produce, Inc. against Del Monte Corporation (hereinafter "Del Monte" or "Defendant"), the defendant in this litigation, and Del Monte Foods Company. The issues for which Plaintiffs seek application of the collateral estoppel doctrine are among the findings of the jury in *Fresh Del Monte Produce Inc. v. Del Monte Foods Company*, Case No. 08-cv-8718.

## I.      INTRODUCTION

Plaintiffs are purchasers of Del Monte's food products, and rely on Del Monte's product labeling in making decisions to purchase and consume Del Monte's products.  Identical federal and California laws require truthful, accurate information on the labels of packaged foods.  This case is about a company that flouts those laws and knowingly sells misbranded food to unsuspecting consumers.  The law, however, is clear: misbranded food cannot legally be manufactured, held, advertised, distributed, or sold.  Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

Del Monte's product misbranding has been established conclusively. In October 2008, Fresh Del Monte Produce, an unaffiliated entity, brought suit against Del Monte alleging breach of contract and Lanham Act violations. At trial in 2012, the jury found, and Del Monte's own employees admitted, *inter alia,* that Del Monte deliberately misled consumers into believing its products were fresh, misled consumers about preservatives in its products, and that Del Monte had actual knowledge that its products' labeling deceived consumers.

Concerns of judicial efficiency and fundamental fairness dictate that in the instant litigation, the Court should conserve its valuable time and resources, and those of the judicial system, by refusing to allow Del Monte to relitigate what another federal court has already conclusively decided.

## II.     STATEMENT OF FACTS

### A.     THE CURRENT LITIGATION

For several years, consumers have begun to favor healthier options in purchasing food products.  Del Monte has implemented an apparent health and wellness strategy that repositions its products as a healthy option for consumers. Del Monte uses unlawful, false, and misleading nutrient content and health claims to promote and market its food products. Through its labels, Del Monte intentionally deceives consumers in the following ways:

- by using unlawful, misleading and false antioxidant claims on its products' labels and labeling. For example, Del Monte's labels include claims of antioxidants in canned tomatoes that do not meet minimum regulatory requirements;

- by using unlawful, misleading and false nutrient content claims on its products' labels and labeling. For example, Del Monte's labels include nutrient content claims about Del Monte's products when such claims are false and are prohibited by federal and California law;

- by using unlawful, misleading and false fresh claims. For example, Del Monte's labels include "fresh" on Del Monte products that are not fresh; and

- by using unlawful, misleading and false "100% natural" claims on its products' labels and labeling. For example, Del Monte's labels include "free of artificial ingredients & preservatives" on the labels of Del Monte's canned tomatoes that contain artificial ingredients and preservatives, and "natural" claims on labels of Del Monte products that contain ingredients that are not natural.

This motion relates to Del Monte's unlawful, false and misleading "fresh" claims with respect to its Fruit Bowls, Fruit Naturals, Superfruit, and SunFresh product lines.

### B.     THE FRESH DEL MONTE TRIAL

#### 1.     Facts

The factual issues central to the current litigation, Del Monte's misbranding of its food products, were examined by the jury in the *Fresh Del Monte* trial, and the evidence at trial demonstrated that Del Monte's false marketing of its food products[1] was part of a deliberate, decade-long strategy to learn about and exploit product attributes that create a perception of freshness in the minds of consumers.

---

[1] The products at issue in the *Fresh Del Monte* trial were products in the Fruit Bowl, SunFresh, Fruit Naturals, SuperFruit, and Orchard Select lines. These products, with the exception of the Orchard Select products are also at issue in the case *sub judice*.

The *Fresh Del Monte* jury found that Del Monte violated 15 U.S.C. § 1051, *et seq*. (the "Lanham Act") in the marketing of its products and that Del Monte acted willfully in misleading consumers into believing that its products are fresh.[2]  Evidence at trial established the following:

    a) Del Monte is not troubled that consumers thought Del Monte's "fresh" fruit was fresh when actually, it is not fresh;[3]

    b) Del Monte does not use the word "preservatives" on newer products to avoid a negative consumer reaction to the product;[4]

    c) At least five of Del Monte's pasteurized products are not labeled as such;[5]

    d) Del Monte consciously disregarded FDA guidelines by labeling its cut fruit products "Must Be Refrigerated." This labeling statement is false because those products do not require refrigeration.  In fact, Del Monte has never tested its chemically preserved products that are labeled "Must Be Refrigerated" at ambient temperatures;[6] and

    e) Del Monte conducted specific research to confirm that it was successfully convincing consumers that its preserved products were fresh with knowledge that substantial and significant portion of consumers were being misled into believing the products in the advertisements were fresh.[7]

Del Monte has chosen not to challenge the jury's verdict.[8]  In response to the jury's findings, Del Monte is changing its labeling to "refrigerate for quality" and adding "pasteurized" for the following products: SunFresh Mandarin Orange, Fruit Naturals Peaches, Fruit Naturals NSA Peaches, and Fruit Natural Mandarin Orange.  Del Monte is also changing its labels to include

---

[2] The jury found that Del Monte had not violated the Lanham Act with respect to its Orchard Select line.  See Gore Decl., Exhibit 1, Verdict Form, *Fresh Del Monte* Document 168-1 at 2-3.  Note: All page cites for documents filed in the *Fresh Del Monte* case refer to the page number stamped by the court at the top of the page.

[3] Gore Decl., Exhibit 2, Excerpts from trial testimony appended to Declaration of Anthony J. Dryer, *Fresh Del Monte* Document 149 at 44.

[4] Gore Decl., Exhibit 2, Excerpts from trial testimony appended to Declaration of Anthony J. Dryer, *Fresh Del Monte* Document 149 at 28.

[5] Gore Decl., Exhibit 2, Excerpts from trial testimony appended to Declaration of Anthony J. Dryer, *Fresh Del Monte* Document 149 at 32-36.

[6] Gore Decl., Exhibit 2, Excerpts from trial testimony appended to Declaration of Anthony J. Dryer, *Fresh Del Monte* Document 149 at 29-31, 37-40.

[7] Gore Decl., Exhibit 3, Fresh Del Monte's memorandum in support of permanent injunction, *Fresh Del Monte* Document 148 at 11.

[8] Gore Decl., Exhibit 4, Del Monte's opposition to motion for permanent injunction, *Fresh Del Monte* Document 167 at 5.

"preservatives" instead of "preserved for quality."[9]  These new labels will reportedly be available on the market in January 2013.[10]

### 2. Claims, Charge, and Verdict

The parties set out Fresh Del Monte's Lanham Act claim in the Joint Pretrial Order as follows:

> Fresh Del Monte challenges the marketing, advertising, packaging, and labeling of refrigerated fruit products under the "Del Monte" name and related "Del Monte" trademarks as false and misleading pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  These include the "Orchard Select," "Sun Fresh," "Fruit Naturals," "Superfruit" and "Fruit Bowls" product lines (collectively, the "Accused Products").  Specifically, Fresh Del Monte asserts that Del Monte Foods has marketed, advertised, packaged, and labeled the Accused Products in a manner that conveys to consumers the false and misleading message that those products are fresh fruit, as opposed to preserved fruit. For example, Fresh Del Monte asserts that Del Monte Foods has falsely labeled some of its products as "Must Be Refrigerated," and sold some of the products in plastic, transparent, bowl-shaped containers identical to those used by other producers for fresh, refrigerated cut produce. Fresh Del Monte will introduce at trial: (a) expert survey evidence demonstrating that consumers perceive a false "freshness" message from the challenged advertising and products; (b) evidence demonstrating that Del Monte Foods intentionally designed and marketed the Accused Products to appear like fresh cut fruit; and (c) consumer surveys commissioned by Del Monte Foods that show that consumers had that false impression about these products and advertisements for these products.[11]

The Joint Pretrial Order also recited that Del Monte asserted several affirmative defenses, including the following:

> [Del Monte Foods] asserts that the Del Monte Foods advertisements and packaging challenged by Fresh Del Monte are factually accurate, literally true, and are not in any way false or misleading, either expressly or by implication. Del Monte Foods denies that its proper and legitimate representations have confused or are likely to confuse consumers, and further denies that its representations were designed with that intent. Del Monte Foods will introduce at trial evidence in the form of expert testimony that it contends will establish that Fresh Del Monte's survey is fundamentally flawed and unreliable.[12]

In the charge, the court explained the Lanham Act claims as follows:

> First, Fresh Del Monte contends that Del Monte Corporation has marketed five of its cut-fruit product lines using false or misleading practices that led many consumers to

---

[9] Gore Decl., Exhibit 5, Declaration of Shaily Sanghvi in support of Del Monte's opposition to motion for permanent injunction, *Fresh Del Monte* Document 170 at 2-3.

[10] Gore Decl., Exhibit 6, Revised Proposed Injunction Language, *Fresh Del Monte* Document 172-2 at 2.

[11] Gore Decl., Exhibit 7, Joint Pretrial Order, *Fresh Del Monte* Document 129 at 3-4.

[12] Gore Decl., Exhibit 7, Joint Pretrial Order, *Fresh Del Monte* Document 129 at 6.

believe that the products are fresh. The five product lines at issue are Del Monte Corporation's cut-fruit product lines sold under the names Fruit Bowl, Fruit Naturals, Superfruit, Sunfresh, and Orchard Select. Del Monte Corporation has denied that its conduct has been deceptive or improper in any way.[13]

* * *

Fresh Del Monte's first claim is that Del Monte Corporation, the defendants, used false or misleading statements or representations in marketing its cut-fruit products in the Fruit Bowl, Fruit Naturals, Superfruit, Sunfresh, and Orchard Select product line. The challenged statements or representations led consumers to believe that those products were fresh and not preserved. That's the first claim.[14]

* * *

To prevail on a claim that a competitor's advertising violated the Lanham Act, the plaintiff must prove by a preponderance of the evidence the following five elements, and remember, ladies and gentlemen, you'll have a copy of this charge in the jury room:

One, the advertiser made or conveyed false or misleading statements or messages about its own or competitor's product or services; two, the advertiser's false or misleading statements or messages actually deceived or had the tendency to deceive a substantial portion of the target audience; three, the advertiser's statement was material in that it was likely to influence purchasing decisions; four, as a result of the statement, there was a likelihood of injury to the business of the plaintiff; and, five, the advertising has a connection to interstate commerce.[15]

The jury found that Del Monte's marketing violated the Lanham Act with respect to the Fruit Bowl, Fruit Naturals, Superfruit, and SunFresh product lines.[16]  The jury further found that the Lanham Act violation was willful.[17]

In this case, Plaintiffs have alleged that Del Monte's Fruit Naturals, SunFresh, and Superfruit fruit products were misbranded for a number of reasons, including those set out in the

---

[13] Gore Decl., Exhibit 8, Transcript at 1235, *Fresh Del Monte* Document 161 at 85.

[14] Gore Decl., Exhibit 8, Transcript at 1236, *Fresh Del Monte* Document 161 at 86.

[15] See Gore Decl., Exhibit 8, Transcript at 1237, *Fresh Del Monte* Document 161 at 87.  The court explained each of the elements (other than interstate commerce, which was not contested) in detail. *See* Gore Decl., Exhibit 8, Transcript at 1238-43, *Fresh Del Monte* Document 161 at 88-94.

[16] *See* Gore Decl., Exhibit 1, Verdict Form, *Fresh Del Monte* Document 168-1 at 1.  The jury found no Lanham Act violation in Del Monte's marketing of its Orchard Select products.  In closing, Del Monte's counsel had told the jury: "Must be refrigerated. The Orchard Select doesn't say must be refrigerated, it says best if refrigerated, so this must be refrigerated complaint that they have doesn't apply to Orchard Select at all."  Gore Decl., Exhibit 8, Transcript at 1286, *Fresh Del Monte* Document 161 at 136. In this case, Plaintiff has not alleged that Del Monte's Orchard Select products were misbranded.

[17] *See* Gore Decl., Exhibit 1, Verdict Form, *Fresh Del Monte* Document 168-1 at 2.

Joint Pretrial Order and the court's charge in *Fresh Del Monte*.[18]

## III.   ISSUES PRECLUDED

Plaintiffs respectfully request that the Court apply the doctrine of collateral estoppel to the jury's findings that are relevant to the following issues, which are derived from the issues as stated in the Joint Pretrial Order, the court's charge, and the verdict form in *Fresh Del Monte*:

- Del Monte marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products in a manner that conveys to consumers the false and misleading message that those products are fresh fruit, as opposed to preserved fruit.

- Del Monte falsely labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products as "Must Be Refrigerated," and sold some of the products in plastic, transparent, bowl-shaped containers identical to those used by other producers for fresh, refrigerated cut produce.

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by stating the products "Must Be Refrigerated."[19]

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by not stating the products are pasteurized.

- The labels on Del Monte's Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products are literally false by not stating the products contain "preservatives."

- Del Monte's practice of packaging some of its products in plastic, transparent, bowl-shaped containers identical to those used by other producers for fresh, refrigerated cut produce conveyed to consumers a false impression of freshness.

- The labels on the foods complained of in Plaintiff's complaint — Del Monte's Fruit Natural, SuperFruit and SunFresh products — were not compliant with FDA Refrigeration guidelines, including 21 C.F.R. §§ 101.95.

- The false "freshness" message from Del Monte's false labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products actually deceived or had the tendency to deceive a substantial portion of the target audience.

---

[18] *See, e.g.,* Amended Complaint [Doc. 23] at ¶¶46-73, 89-90, 248.  Plaintiffs have also alleged that Del Monte's "Citrus Bowls" fruit products were misbranded, but it does not appear that Del Monte's marketing of those products was at issue in *Fresh Del Monte*.

[19] Based on the jury argument and the finding of no Lanham Act violation on the Orchard Select product line, it appears that one thing the jury found particularly offensive was the "Must Be Refrigerated" on the labels of the other products (as opposed to the "best if refrigerated" on the Orchard Select line).  In closing, Del Monte's counsel had told the jury: "Must be refrigerated. The Orchard Select doesn't say must be refrigerated, it says best if refrigerated, so this must be refrigerated complaint that they have doesn't apply to Orchard Select at all."  *See* Gore Decl., Exhibit 8, Transcript at 1286, *Fresh Del Monte* Document 161 at 136.  That appears to be the only significant distinguishing factor raised in the argument.  The jury found no Lanham Act violation in Del Monte's marketing of its Orchard Select products.  *See* Gore Decl., Exhibit 1, Verdict Form, *Fresh Del Monte* Document 168-1 at 1.

- The false "freshness" message from Del Monte's false labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products was material in that it was likely to influence purchasing decisions.

- Del Monte's marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products made or conveyed false or misleading statements or messages about the freshness of product.

- Del Monte intentionally marketed, advertised, packaged, and labeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products to appear like fresh cut fruit.

- Del Monte consciously and deliberately chose to not follow FDA guidelines, including 21 C.F.R. §§ 101.95, by labeling its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products as "Must be Refrigerated."

- Del Monte's marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products gave consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

- Del Monte's marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products actually caused consumers to have the false impression that those products are fresh fruit, as opposed to preserved fruit, or was likely to cause that impression.

- Del Monte knew its marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products gave consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

- Del Monte designed its marketing, advertising, packaging, and labeling of its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products with the intent to give consumers the false impression that those products are fresh fruit, as opposed to preserved fruit.

## IV.    ARGUMENT AND AUTHORITIES

### A.    APPLICABLE LAW

In a diversity action, the forum state's law applies to determine the preclusive effect of a previous judgment, even where the previous judgment was issued by a federal court under diversity jurisdiction. *Bates v. Union Oil Co.*, 944 F.2d 647, 649 (9th Cir. 1991).  According to the Ninth Circuit, "a federal court sitting in diversity must apply the res judicata law of the state in which it sits."  *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). However, California law determines the res judicata effect of a prior federal court judgment by applying federal standards. *Costantini*, 681 F.2d at 1201; *see also Bates*, 944 F.2d at 649 (assuming that Oregon, like Washington and California, would apply federal law on offensive collateral estoppel); *Younger v. Jensen*, 26 Cal. 3d 397, 411 (Cal. 1980) (preclusive effect of a prior federal judgment is

1    a matter governed by federal law).  Consequently, federal law sets the standard for application of

2    collateral estoppel in this case.

3    **B.    LEGAL STANDARD FOR COLLATERAL ESTOPPEL**

4     The common-law doctrine of collateral estoppel — also known as issue preclusion — is

5    designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

6    resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v.*

7    *McCurry*, 449 U.S. 90, 94 (1980); *see also Blonder-Tongue Labs.*, *Inc. v. Univ of Ill. Found.*, 402

8    U.S. 313, 328-29 (1971).  Collateral estoppel applies to both issues of law and issues of fact. *United*

9    *States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-171 (1984); *see also* RESTATEMENT (SECOND) OF

10   JUDGMENTS § 27.  In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court

11   recognized that collateral estoppel is appropriate in cases such as this, where Plaintiffs were not

12   party to an original action—in this case, the *Fresh Del Monte* trial. *Id*. at 326-27.

13    The Supreme Court has said that trial courts have broad discretion to determine when

14   offensive collateral estoppel should be applied. The general rule should be that in cases where a

15   plaintiff could easily have joined in the earlier action or where the application of offensive estoppel

16   would be unfair to a defendant, a trial judge should not allow the use of offensive collateral

17   estoppel.  *Parklane Hosiery*, 439 U.S. at 331.  On the other hand, "[i]f the plaintiff could not 'easily

18   have joined in the first action,' if there is no unfairness to the defendant, and if the defendant had a

19   full and fair opportunity to litigate the issue in the first suit, then collateral estoppel should apply."

20   *Starker v. United States*, 602 F.2d 1341, 1349 (9th Cir. 1979).

21    The Ninth Circuit has said that collateral estoppel applies to a question, issue, or fact when:

22    (1) the issue at stake [is] identical to the one alleged in the prior litigation;

23    (2) the issue [was] actually litigated in the prior litigation; and

24    (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the action."

25   *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 1320 (9th Cir. 1992).  In a somewhat different

26   formulation, the Ninth Circuit has said that collateral estoppel is appropriate when the following

27   elements are met:

28

(1) there was a full and fair opportunity to litigate the issue in the previous action;

(2) the issue was actually litigated in that action;

(3) the issue was lost as a result of a final judgment in that action; and

(4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992); *see also Parklane Hosiery*, 439 U.S. at 329.

In the absence of any unfairness to Del Monte, the law is clear that "a party should get only one opportunity to litigate a dispute. Any other rule could generate endless litigation, and other parties would not be able to obtain peace. Once an issue of fact has been decided in a previous proceeding, it cannot be re-litigated." *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.1985).

### C.   THE REQUIREMENTS FOR COLLATERAL ESTOPPEL ARE MET IN THIS CASE.

#### 1.   Plaintiff could not have easily joined the first action.

While the Supreme Court did not elaborate in *Parklane Hosiery* on what it meant by a case the plaintiff could "easily have joined," the Ninth Circuit has indicated that it is not just a matter of whether joinder would be allowed under Rule 20, but rather whether the plaintiff "adopted a 'wait-and-see' attitude for the obvious purpose of eluding the binding force of an initial resolution of a simple issue." *See Starker v. United States*, 602 F.2d at 1349-50.  That did not happen here.

Plaintiffs had no knowledge of Fresh Del Monte's action against Del Monte until the jury verdict. Thus, Plaintiffs could not have joined in the *Fresh Del Monte* action.  *Cf. Charles J. Arndt, Inc. v. City of Birmingham*, 748 F.2d 1486, 1494-95 (11th Cir. 1984) (no abuse of discretion in refusing to apply non-mutual offensive collateral estoppel because plaintiff was aware of prior litigation and chose not to join).  Furthermore, it would not be easy for a California resident to bring California state law claims in an already complex case in New York involving federal Lanham Act and New York unfair competition and breach of contract claims. *See Ross-Berger Co. v. Equitable Life Assurance Soc'y*, 872 F.2d 1331, 1337-1338 n.2 (7th Cir. 1989) (prior complex litigation involved different type of claim and was "relatively complicated," including counterclaim; complex

1    damages issues were wholly unrelated to plaintiff's claim in instant case).  Under the circumstances,

2    even if Plaintiffs had known about the *Fresh Del Monte* case (which they didn't), and even if New

3    York was a convenient forum (which it isn't), even if they knew they had claims against Del Monte

4    at a time when intervention might have been feasible (which they didn't), there is still no reason to

5    believe that a federal court in New York would allow them to intervene into an already complex

6    case.

7                    **2.    Application of collateral estoppel to Del Monte would not be unfair.**

8              In determining whether application of collateral estoppel would be unfair to a defendant, the

9    Court should consider the following: 1) whether the defendant had every incentive to fully and

10   vigorously litigate, 2) whether future suits were foreseeable, 3) whether there are prior inconsistent

11   judgments, and 4) whether procedural opportunities are available that were unavailable in the prior

12   action that might be likely to cause a different result. *Parklane Hosiery*, 439 U.S at 330-31; *Starker*

13   *v. United States*, 602 F.2d at 1349.  Here, these factors are satisfied and collateral estoppel should

14   be applied.

15                   **a.    Del Monte Had Every Incentive to Defend the Issues of Liability
                            in the Fresh Del Monte Action.**
16

17             The *Fresh Del Monte* action took approximately three and a half years to litigate. The action

18   involved serious allegations against Del Monte, including, *inter alia*, that, Del Monte's false

19   advertising, via its product labels, was willful. Accordingly, Del Monte had every incentive to

20   vigorously litigate the issues that are the subject of this motion in the *Fresh Del Monte* action to

21   avoid liability.

22                   **b.    Future Suits Against Del Monte for the Conduct Alleged and
                            Tried in the Fresh Del Monte Action Were Foreseeable.**

23             Moreover, while litigating the *Fresh Del Monte* action, it was foreseeable to Del Monte that

24   private actions relating to its false advertising and marketing of its food products would be brought

25   against them should Fresh Del Monte prevail on its claims.  Central to the *Fresh Del Monte* action

26   was Del Monte's deception of consumers through its product labels. It was entirely foreseeable that

27   consumers, who relied on Del Monte's product labels for nutritional information, would bring suit

28   against Del Monte after a determination that Del Monte's labels contained false information,

including that the products contained preservatives, were pasteurized, and need not be refrigerated.

Del Monte cannot reasonably make the argument that it did not have every possible incentive to fully defend the *Fresh Del Monte* action, especially concerning its marketing and labeling of its food products, which was at the heart of the Lanham Act violation in the *Fresh Del Monte* action. The potential for future litigation was undeniably foreseeable.

### c. There are No Prior Inconsistent Judgments in Favor of Del Monte.

Plaintiff is unaware of any prior judgment that is inconsistent with the jury verdict in the *Fresh Del Monte* action. Therefore, the judgment relied upon as a basis for the estoppel is not inconsistent with one or more previous judgments in favor of Del Monte.

### d. The Present Litigation Does Not Afford Del Monte Procedural Opportunities Unavailable in the Fresh Del Monte Action that Could Cause or Result in a Different Outcome

Lastly, there are no procedural opportunities available to Del Monte in this case that were not available in the *Fresh Del Monte* action of a kind that might be likely to cause a different result. Del Monte had approximately three and a half years to introduce all theories, evidence, and arguments in the *Fresh Del Monte* action. They cannot now come forward and ask for a "second chance" to introduce evidence that could have been introduced in the *Fresh Del Monte* action.

### 3. The issues at stake are identical to those actually litigated in the prior action.

The "identity of issues" factor does not necessarily mean that the issues of law and fact sought to be precluded have to be identical; rather, the focus of the inquiry is whether the issues of fact and law to be litigated in the second action are *substantially or in substance* the same as those that were litigated in the prior action. *See Montana v. United States*, 440 U.S. 147, 155 (1979) (the application of collateral estoppel necessitates an inquiry into whether the "issues presented . . .  are in substance the same as those resolved" in the prior action).

The Ninth Circuit considers four factors in determining whether an issue is identical to an issue previously litigated:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Steen v. John Hancock Life Ins. Co*., 106 F.3d 904, 912 (9th Cir. 1997); *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (*citing* RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. c); *see also Starker v. United States*, 602 F.2d at 1344.

Plaintiffs claim that Del Monte falsely marketed its Fruit Bowls, Fruit Naturals, Superfruit, and SunFresh food products as "fresh" with the intent to deceive consumers into believing that its preserved, pasteurized products were actually fresh fruit.  In the *Fresh Del Monte* action, the jury found that Del Monte did exactly this.

The plaintiff in *Fresh Del Monte* brought claims against Del Monte for breach of contract and violation of the Lanham Act. Plaintiffs *sub judice* bring their cause of action in violation of California Business and Professions Code § 17200. The Ninth Circuit has held that "actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." *Cleary v. News Corp*., 30 F.3d 1255, 1262-63 (9th Cir. 1994).  In finding a violation of the Lanham Act, the jury in the *Fresh Del Monte* trial found that the plaintiff had proven the elements required under the Lanham Act. To prevail on a false advertising claim under the § 43(a) of the Lanham Act, a plaintiff must establish the following elements:

1) in its ... advertisements, defendant made false statements of fact about its own product;

2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience;

3) such deception is material, in that it is likely to influence the purchasing decision;

4) defendant caused its falsely advertised goods to enter interstate commerce; and

5) plaintiff has been or is likely to be injured as a result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public.

1   *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service*, 911 F.2d 242, 244 (9th

2   Cir.1990). To demonstrate falsity, a claimant generally must show either: (1) that the statement is

3   literally false, or (2) that although literally true, the statement is likely to mislead, confuse, or

4   deceive consumers. *S.C. Johnson & Son, Inc. v. Clorox Co*., 241 F.3d 232, 238 (2d Cir. 2001);

5   *United Indus. Corp. v. Clorox Co*., 140 F.3d 1175, 1179 (8th Cir. 1998); *Southland Sod Farms v.*

6   *Stover Seed Co*., 108 F.3d 1134, 1139–40 (9th Cir. 1997).

7       Plaintiffs bring claims against Del Monte under identical federal and California statutes that

8   regulate the content of labels on packaged food and under Business and Professions Code § 17200,

9   *et seq*. for Del Monte's misbranding of its products. To prevail on a claim of violation of § 17200,

10  *et seq*., a plaintiff must establish one of the following elements:

11      1)  that the defendant engaged in an unlawful business act or practice, here, violation of
12          Health & Safety Code, § 109875 *et seq*., (the Sherman Law), which makes it
            unlawful to misbrand food products;

13      2)  that the defendant engaged in an unfair business act or practice; and

14      3)  that the defendant engaged in a fraudulent business act or practice.

15  *Klein v. Earth Elements, Inc*., 59 Cal.App.4th 965, 969-70 (Cal. App. 2007).

16      A jury has already determined that Del Monte's advertising is false based on its product

17  mislabeling. Del Monte's mislabeling is proof that it engaged in unlawful, unfair and fraudulent

18  business acts and practices. In fact, in accordance with the jury's verdict, Del Monte is changing its

19  products' labels to accurately reflect that its products contain "preservatives," are pasteurized, and

20  only need be "refrigerated for quality." Further, a Lanham Act violation is substantially the same as

21  a violation under California Business and Professions Code § 17200, *et seq.*, Accordingly, Del

22  Monte should not be given another opportunity to escape liability when a court of competent

23  jurisdiction has already found that Del Monte's actions were false and misleading.

24      The identity of issues factor is easily satisfied by the overwhelming overlap between the

25  elements that Plaintiffs must establish in the present litigation and the elements that Fresh Del

26  Monte proved in support of its Lanham Act claim. Moreover, the discovery and pretrial preparation

27  that Plaintiffs must undertake in this litigation relate to Del Monte's unlawful labeling of its food

28  products, and to issues that were already litigated in *Fresh Del Monte*. Testimony in the *Fresh Del*

1   *Monte* trial established that Del Monte had labeled its Fruit Bowl, Fruit Naturals, Superfruit and

2   SunFresh products as "Must Be Refrigerated," and failed to indicate that the products contained

3   preservatives and were pasteurized.

4       Plaintiffs respectfully request that the Court grant preclusive effect to the issues already

5   determined in the *Fresh Del Monte* action relating to the common questions of law and fact which

6   will undoubtedly arise in this litigation, such as the conclusion (and underlying findings of fact in

7   support of said conclusion) that Del Monte misbranded its food by failing to label its products as

8   pasteurized, containing preservatives, and stating the product "Must Be Refrigerated" when

9   refrigeration was not required.

10          **4.      The issues were actually litigated in the prior action.**

11      An issue is actually litigated if "the prior determination of an issue is conclusive in a

12  subsequent suit between the same parties as to that issue and every matter which might have been

13  urged to sustain or defeat its determination."  *Pacific Mut. Life Ins. Co. v. McConnell*, 44 Cal.2d

14  715, 724-725 (Cal. 1955). Once an issue is litigated and determined, it is binding in a subsequent

15  action notwithstanding that a party may have omitted to raise matters for or against it which if

16  asserted might have produced a different outcome."  *Carroll v. Puritan Leasing Co.*, 77 Cal.App.3d

17  481, 490 (1978).  An issue is actually litigated "[w]hen [it] is properly raised, by the pleadings or

18  otherwise, and is submitted for determination, and is determined. . ."  RESTATEMENT (SECOND) OF

19  JUDGMENTS § 27, cmt. d, p. 255); *see also* 18-132 MOORE'S FEDERAL PRACTICE - CIVIL §

20  132.03(2)(a) ("The 'actually litigated' requirement simply requires the issue to have been raised,

21  contested by the parties, submitted for determination by the court, and determined.")

22      The issues sought to be precluded were actually litigated in the *Fresh Del Monte* case. This

23  is not a case where Del Monte may have ignored an issue or fact because they found it to be

24  irrelevant or unimportant.  Each element of Fresh Del Monte's action against Del Monte was

25  essential to its proving that Del Monte had violated the Lanham Act and engaged in a misbranding

26  campaign. With full knowledge of Fresh Del Monte's claims against them, Del Monte did its best

27  to litigate each and every factual allegation, but was ultimately unsuccessful, as the jury found Del

28  Monte had mislabeled its Fruit Bowl, Fruit Naturals, Superfruit and SunFresh products.

5.      **The determination of the issues in the prior litigation was a critical and necessary part of the judgment.**

A decision on the merits of the issue must have been "necessary" to the first judgment, in the sense that, without a decision on the issue, the court could not have rendered a judgment. *Segal v. American Tele. & Tele. Co*., 606 F.2d 842, 845 (9th Cir. 1979) (per curiam); RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. j.  However, "[w]here a judgment rests on alternative grounds it is conclusive on all such grounds in a later action."  *FDIC v. Continental Casualty Co*., 796 F. Supp. 1344, 1348 (D. Or. 1991); *In re Westgate-California Corp*., 642 F.2d 1174, 1176 (9th Cir. 1981) ("even though the court rests its judgment upon two or more grounds, the judgment concludes each adjudicated issue that is necessary to support any of the grounds upon which the judgment is rested").

The "issues precluded" set out above were derived from the issues as stated in the Joint Pretrial Order, the court's charge, and the verdict form.  They are the issues that the parties and the court in the *Fresh Del Monte* action determined that the jury needed to decide to reach the verdict it reached, and those issues were essential to the jury's finding that Del Monte had engaged in false advertising in violation of the Lanham Act.  In order to be successful on the Lanham Act claim at trial, Fresh Del Monte had to prove Del Monte's product labels were in fact false. Fresh Del Monte succeeded on its Lanham Act violation at trial. Thus, it was necessarily decided that Del Monte had in fact engaged in false labeling on its products.

The conclusions of law and findings of fact made by the jury in the *Fresh Del Monte* action, of which Plaintiffs seek preclusive effect, should all be given preclusive effect because these facts were central to the jury's ultimate finding that Del Monte violated the Lanham Act by engaging in false advertising by misbranding its food products.

6.      **There was a full and fair opportunity to litigate the issues in the previous action.**

Although the party asserting issue preclusion has the burden of showing what issues were previously litigated, "the burden to show that there was no full and fair opportunity in a prior litigation rests on the party opposing issue preclusive effect."  18-132 MOORE'S FEDERAL PRACTICE - CIVIL § 132.05(1); *see also Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996) ("[I]ssue

1    preclusion would not block [plaintiff's] claims if he could show that he did not have a full and fair

2    opportunity to litigate the issues in the prior proceeding.").

3        The party resisting the application of collateral estoppel cannot show that the application of

4    collateral estoppel would be unfair based on an argument that the court in the prior proceeding "got

5    it wrong."  While the Ninth Circuit has implied that it might be unfair to impose collateral estoppel

6    where the earlier court "may have reached an erroneous conclusion," *Eureka Fed. Sav. & Loan*

7    *Ass'n v. American Casualty Co.*, 873 F.2d 229, 234 (9th Cir. 1989), it has also said that even though

8    a case may have been "decided incorrectly, this is an insufficient basis to defeat the application of

9    collateral estoppel," *Peck v. Commissioner*, 904 F.2d 525, 529 (9th Cir. 1990).  In *Bates v. Union*

10   *Oil Co.*, the court said that when it is claimed that there was legal error in the earlier judgment "the

11   way to correct that error was by appeal in the [earlier] case."  944 F.2d at 651 (ruling that it was not

12   unfair to apply offensive collateral estoppel to a prior judgment where the defendant settled the case

13   and dismissed its appeal "even though that judgment may not be free from legal error.").

14   Furthermore, "a fact, question or right distinctly adjudged in the original action cannot be disputed

15   in a subsequent action, even though the determination was reached upon an erroneous view or by an

16   erroneous application of the law." *Richey v. United States IRS*, 9 F.3d 1407, 1410 (9th Cir. 1993)

17   (quoting *Montana*, 440 U.S. at 162 (quoting *United States v. Moser*, 266 U.S. 236, 242 (1924))).

18       **7.    The issues were lost as a result of a final judgment in the previous**
         **action.**

19

20       To be "final" for issue preclusion purposes, a decision need not possess "finality" in the

21   sense of 28 U.S.C. § 1291.  *Syverson v. IBM*, 472 F.3d 1072, 1079 (9th Cir. 2007); *Luben Indus.,*

22   *Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).  Instead, the proper query is whether the

23   court's decision on the issue as to which preclusion is sought is final.  *Syverson*, 472 F.3d at 1079.

24   In order to satisfy the finality of earlier resolution category, it must be shown that the issues sought

25   to be precluded were determined by a valid and binding final judgment or order. "[F]or purposes of

26   issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action

27   that is determined to be sufficiently firm to be accorded conclusive effect." RESTATEMENT

28   (SECOND) OF JUDGMENTS § 13.  "'Finality' in the context [of issue preclusion] . . . may mean little

---

more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) (Friendly, J.).

Under this standard of finality, a jury verdict on liability can be final for collateral estoppel purposes even though there is not yet a final judgment. *See, e.g., RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1295 (5th Cir. 1995) (noting that "a final judgment is not a prerequisite for issue preclusion when a jury has rendered a conclusive verdict"); *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 563 (8th Cir. 1990) (jury's liability finding given preclusive effect even though damages had yet to be determined); *Davenport v. De Robertis*, 844 F.2d 1310, 1313-14 (7th Cir. 1988) (noting that the "jury's verdict would bind the judge under the doctrine of [issue preclusion] (thus demonstrating that the doctrine does not require a final judgment in the conventional sense)."); RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. g, illus. 3 (illustrating that jury verdict rendered before entry of final judgment is conclusive for purposes of issue preclusion).

The *Fresh Del Monte* jury did not just decide that Del Monte violated the Lanham Act. Rather, the jury's obligation as fact finder was to present to the appellate courts, the parties, and the public all the relevant facts which had been proven by a preponderance of the evidence, consisting of testimony and exhibits, so that the appellate courts would have before them all the factual determinations they need to decide the numerous legal issues which will unquestionably be raised.

Furthermore, Del Monte chose not to challenge the jury's verdict in the *Fresh Del Monte* action. There will be no appeal on the merits of the case and the jury's verdict is now final.[20] Thus, the *Fresh Del Monte* action was final, valid, and binding.

### 8. The person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

Del Monte Corporation was a named defendant in the *Fresh Del Monte* action, and remained a party throughout the *Fresh Del Monte* action. Therefore, this factor is satisfied.

---

[20] In its response to Fresh Del Monte's motion for a permanent injunction, Del Monte represented to the court, "There is no need for an injunction. Del Monte has chosen not to challenge the jury's verdict. Instead, Del Monte will pay the entirety of the jury's verdict." *See* Gore Decl. Exhibit 4, Del Monte's opposition to motion for permanent injunction, *Fresh Del Monte* Document 167 at 1.

9.      **There are no applicable exceptions that would preclude application of collateral estoppel in this case.**

The Ninth Circuit has indicated that the possible application of the limited exceptions to the doctrine of collateral estoppel requires three inquiries:

> The Court established that determining when to apply collateral estoppel requires three inquiries: (1) whether the issues presented are in substance the same in the present and prior litigation; (2) whether controlling facts or legal principles have changed significantly since the prior judgment; and (3) whether "other special circumstances warrant an exception to the normal rules of preclusion."

*Steen v. John Hancock Life Ins. Co*., 106 F.3d at 913 (quoting *Richey v. United States IRS*, 9 F.3d 1407, 1410 (9th Cir. 1993) (quoting *Montana v. United States*, 440 U.S. at 155)).  As discussed above, the issues presented in this case are in substance the same as those presented in the *Fresh Del Monte* case.  There have been no significant changes in controlling facts or legal principals in the short interval between the *Fresh Del Monte* verdict and the filing of this motion.  And finally, there are no other "special circumstances" that would warrant a departure from the normal rule.

Once a party is afforded a hearing on an issue that comports with due process, the court will further question the hearing's fairness for the purposes of applying collateral estoppel only in certain categories of cases where fairness concerns are especially pronounced.   *Avitia v. Metropolitan Club*, 924 F.2d 689, 691 (7th Cir. 1991).  Traditionally, the courts have been receptive to claims of unfairness when (1) the series of proceedings raising the issue preclusion question involved different forums that afforded litigants disparate measures of procedural protection; (2) the prevailing party concealed material information in the first case, or (3) the issue was not clearly relevant to the initial litigation, and so the party being estopped had no incentive to vigorously litigate the question in the first instance.  *Id*.  None of those is present here.

V.      **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court apply collateral estoppel to the findings of fact and conclusions of law identified by Plaintiffs herein, and grant such other relief the Court deems just and appropriate.

Dated:  November 5, 2012

Respectfully submitted,

/s/ Ben F. Pierce Gore
Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
pgore@prattattorneys.com

Jay Nelkin
Carol Nelkin
Stuart Nelkin
NELKIN & NELKIN, P.C.
5417 Chaucer
Houston, Texas 77005
Telephone:  (713) 526-4500
Facsimile:  (281) 825-4161
jnelkin@nelkinpc.com
cnelkin@nelkinpc.com
snelkin@nelkinpc.com

Don Barrett
David McMullan, Jr.
Brian Herrington
Katherine B. Riley
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
donbarrettpa@yahoo.com
bherrington@barrettlawgroup.com
@barrettlawgroup.com
kbriphone@yahoo.com
dmcmullan@barrettlawgroup.com

Charles Barrett
CHARLES BARRETT, P.C.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
Telephone: (615) 515-3393
Fax: (615) 515-3395
charles@cfbfirm.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Richard Barrett
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: (662) 380-5018
Fax: (866) 430-5459
rrb@rrblawfirm.net

J. Price Coleman
Coleman Law Firm
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

Dewitt M. Lovelace
Alex Peet
LOVELACE LAW FIRM P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

David Shelton
Attorney at Law
1223 Jackson Avenue East, Suite 202
Oxford, MS 38655
Telephone: (662) 281-1212
Fax: (662) 281-1312
david@davidsheltonpllc.com

Keith M. Fleischman
Frank Karam
Ananda N. Chaudhuri
FLEISCHMAN LAW FIRM
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: 212-880-9571
keith@fleischmanlawfirm.com
frank@fkaramlaw.com
achaudhuri@fleischmanlawfirm.com

Zona Jones
Darren Brown
PROVOST UMPHREY LAW FIRM LLP
490 Park Street
P.O. Box 4905
Beaumont, TX 77704
Telephone: (409) 299-5178
zjones@provostumphrey.com
dbrown@provostumphrey.com

*Attorneys for Plaintiffs*