WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
LISA A. WONGCHENKO (CA SBN 281782)
LWongchenko@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
DEL MONTE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL KOSTA and STEVE BATES, individuals, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEL MONTE CORPORATION,<br><br>Defendant. | Case No. C12-01722 YGR<br><br>**DEFENDANT DEL MONTE CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPLICATION OF COLLATERAL ESTOPPEL**<br><br>Hearing Date: March 19, 2013<br>Time:   2:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Action Filed: April 5, 2012 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii
STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. iii
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1
I.   INTRODUCTION AND SUMMARY OF ARGUMENT .............................................. 1
II.  FACTUAL BACKGROUND .......................................................................................... 1
     A.   The Current Litigation. ........................................................................................ 1
     B.   The New York Action. ......................................................................................... 2
     C.   The New York Jury's Findings. ........................................................................... 2
     D.   The Timing of the New York Verdict. ................................................................. 3
III. THE LEGAL STANDARD ............................................................................................. 3
IV.  ARGUMENT ................................................................................................................... 4
     A.   Plaintiffs' Motion is Premature and Procedurally Improper. ............................... 4
     B.   Offensive Non-Mutual Collateral Estoppel is Inapplicable to this Case. ............ 5
     C.   Plaintiffs Have Not Proven the Elements of Offensive Collateral Estoppel. ....... 6
          1.   The Sixteen Issues Were Not "Actually Decided" and Were Not
               "Critical" and "Necessary" to the New York Verdict. ............................... 6
          2.   Plaintiffs Have Not Shown That the Issues Are "Identical." ................... 10
V.   CONCLUSION .............................................................................................................. 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Artukovic v. Immigration & Naturalization Serv.*,
    693 F.2d 894 (9th Cir. 1982) .................................................................................................. 11

*Barnes v. Hodel*,
    819 F.2d 250 (9th Cir. 1987) .................................................................................................... 7

*Chew v. Gates*,
    27 F.3d 1432 (9th Cir. 1994) ........................................................................................ 3, 7, 8, 9

*Clark v. Bear Stearns & Co.*,
    966 F.2d 1318 (9th Cir. 1992) ............................................................................................. 3, 4

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) .................................................................................................... 5

*FDIC v. Cont'l Cas. Co.*,
    796 F. Supp. 1344 (D. Or. 1991) .............................................................................................. 9

*Fireside Bank v. Super. Ct.*,
    40 Cal. 4th 1069 (2007) ............................................................................................................ 4

*Fund for Animals, Inc. v. Lujan*,
    962 F.2d 1391 (9th Cir. 1992) ................................................................................................ 10

*Montana v. United States*,
    440 U.S. 147 (1979) .................................................................................................................. 3

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) .......................................................................................................... 3, 5, 6

*Pom Wonderful LLC v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) ................................................................................................ 11

*Schwarzschild v. Tse*,
    69 F.3d 293 (9th Cir. 1995) ...................................................................................................... 4

*Starker v. United States*,
    602 F.2d 1341 (9th Cir. 1979) ................................................................................................ 10

**OTHER AUTHORITIES**

18-132 *Moore's Federal Practice – Civil* § 132.03(3) (3rd ed. 2012) .......................................... 6

**STATEMENT OF THE ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Is it premature for a court to consider a "Motion for Application of Collateral Estoppel" before the court has had a chance to rule on defendant's motion to dismiss and before a class has been certified?

2. Is the application of *offensive* non-mutual collateral estoppel fair to Del Monte if there are factors that influenced the jury in the first action that have no relevance to the present case?

3. Have Plaintiffs established that the elements of collateral estoppel have been met even though they have failed to show that the sixteen issues that are the subject of their motion were actually and necessarily decided by the jury and that the sixteen issues are identical to the issues decided by the jury?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs in this consumer class action challenge the labels on various Del Monte products as not being in technical compliance with FDA regulations. Because of that, Plaintiffs say, everyone who bought these products since 2008 should get his or her money back. Del Monte moved to dismiss. (Dkt. No. 28.) That motion is under submission. (Dkt. No. 64.)

After Plaintiffs filed their Complaint, a New York jury found—in a dispute between two companies—that Del Monte breached its commercial contract and violated the federal Lanham Act. That case is called *Fresh Del Monte Produce Inc. v. Del Monte Foods Company*, Case No. 08-cv-8718 (S.D.N.Y.) ("*Fresh Del Monte*"). Now, in their "Motion for Application of Collateral Estoppel," Plaintiffs contend that 16 issues in this case "are among the findings of the jury" in the New York action and that this Court should find Del Monte collaterally estopped.

The Court should deny Plaintiffs' "Motion for Application of Collateral Estoppel."

First, the motion is premature and procedurally improper. The pleadings in this case are still not settled. Until they are, it is anyone's guess whether the issues in the two cases will share the requisite identity. Moreover, this is a disguised motion for summary adjudication, but not brought as such. The Court should deny Plaintiffs' motion for these reasons alone.

Second, offensive collateral estoppel would result in unfairness to Del Monte.

Third, Plaintiffs have not shown that the 16 issues were "actually and necessarily" decided, or that the issues here are "identical" to those in the New York action. In fact, the 16 issues were not actually decided, and were not identical to the issues raised here.

## II.   FACTUAL BACKGROUND

### A.   The Current Litigation.

Plaintiffs in this case are consumers who have sued Del Monte based on alleged technical violations of FDA regulations and guidelines, claiming that Del Monte's labeling infractions render the products "legally worthless." Among Plaintiffs' various "misbranding" averments is the allegation that Del Monte's "fresh" claims—concerning its Fruit Bowls®, Fruit Naturals®, Superfruit®, and SunFresh® product lines—are misleading because: (1) the products are

1  packaged in glass or plastic containers, (2) they are not labeled "canned" or "pasteurized,"
2  (3) they state "must be refrigerated," (4) they are placed (by retailers) in the refrigerated sections
3  of the produce area, (5) they do not use the term "preservatives," and (6) the "sell-by" dates are
4  not conspicuous. (FAC ¶ 49.) Plaintiffs do not allege, however, that they saw any print or in-
5  store advertising materials, or any specific advertising campaigns. (FAC ¶ 69.) Notably,
6  Plaintiffs did not purchase any Superfruit® or Fruit Bowls® products.

### B. The New York Action.

The *Fresh Del Monte* trial, on the other hand, arose from a commercial dispute between defendant Del Monte and another company called "Fresh Del Monte." Both companies manufacture products to be sold in the refrigerated section of the grocery store. At issue in the *Fresh Del Monte* trial was a commercial licensing agreement whereby Del Monte granted to Fresh Del Monte the right to sell certain products using the "Del Monte" name. Fresh Del Monte asserted that it had the exclusive right to sell fresh fruit, as well as specific types of fruit whether fresh or processed, and that defendant Del Monte breached the agreement by selling products containing the types of fruit licensed to Fresh Del Monte and by selling non-fresh fruit in refrigerated produce areas. Fresh Del Monte also claimed that Del Monte violated the Lanham Act because the marketing, advertising, packaging, and labeling of five refrigerated product lines was false and misleading, alleging that the advertising conveyed the message that the products were fresh, as opposed to preserved fruit. The products at issue in the New York action were Orchard Select®, SunFresh®, Fruit Naturals®, Superfruit®, and Fruit Bowls®.[1]

### C. The New York Jury's Findings.

The *Fresh Del Monte* jury found that Del Monte's marketing of its refrigerated cut fruit products violated the Lanham Act with respect to the Fruit Bowls®, Fruit Naturals®, Superfruit®, and SunFresh® products, but not Orchard Select®, and that Del Monte violated the Lanham Act. For this, it awarded $7.2 million in damages. It also found that Del Monte's "Fruit

---

[1] Gore Decl., Ex. 7, Joint Pretrial Order, *Fresh Del Monte* Doc. 129 at 3. All page cites to Plaintiffs' exhibits refer to the ECF page number stamped by the *Fresh Del Monte* court.

1  Undressed" advertisements violated the Lanham Act.  Finally, it found that Del Monte violated
2  the licensing agreement by selling refrigerated products containing certain types of fruits and
3  awarded $5.95 million in damages.[2]

### D. The Timing of the New York Verdict.

Plaintiffs admit that they "had no knowledge of Fresh Del Monte's action against Del Monte until the jury verdict." (Mem., 9:19-20.)  Only after filing their complaint did Plaintiffs decide to embark on a short cut to proof of liability.

## III. THE LEGAL STANDARD

Collateral estoppel is an equitable doctrine designed to prevent relitigation of identical issues in a subsequent case.  "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153 (1979).  "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment."  *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1321 (9th Cir. 1992).  If there is doubt as to the scope of the prior proceeding, collateral estoppel will not be applied.  *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994).

Courts have allowed offensive non-mutual collateral estoppel—where a plaintiff seeks to prevent a defendant from relitigating issues it previously lost against a different plaintiff—in only limited situations.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).  In determining whether offensive collateral estoppel should be applied, courts must be mindful that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does," and that "it may be unfair to a defendant."  *Id.* at 329-30.  Thus, to consider these factors, trial courts have broad discretion to determine when the doctrine should be applied.  *Id.* at 331.

If offensive use of collateral estoppel is deemed appropriate and fair, a plaintiff must establish that: (i) the issue at stake is identical to the one alleged in the prior litigation; (ii) the issue was actually litigated in the prior litigation; and (iii) the determination of the issue in the

---

[2] Gore Decl., Ex. 1, Verdict Form, *Fresh Del Monte* Doc. 168-1 at 2-3.

prior litigation was a critical and necessary part of the judgment in the earlier action. *Clark*, 966 F.2d at 1320-21.

## IV. ARGUMENT

### A. Plaintiffs' Motion is Premature and Procedurally Improper.

Plaintiffs' motion is both premature and procedurally improper. It is premature because application of collateral estoppel requires a comparison of the issues in the two cases. In this case, however, the pleadings are still unsettled; Del Monte's motion to dismiss the First Amended Complaint ("FAC") is under submission. This affects the calculus of collateral estoppel because Del Monte has challenged numerous defects in the FAC, including the fact that Plaintiffs do not claim to have bought any Superfruit® or Fruit Bowls® products—two of the four products for which they seek a finding of collateral estoppel. Until the Court rules on the motion to dismiss, it should not entertain this motion.

The motion is also procedurally improper. Plaintiffs seek by their motion to have certain facts established as a matter of law. This raises two problems.

The first problem is "one way intervention." Plaintiffs' motion seeks a "merits" ruling. Such a motion may not be heard prior to class certification. The California Supreme Court has said: "A largely settled feature of state and federal procedure is that trial courts in class action proceedings should decide whether a class is proper and, if so, order class notice *before* ruling on the substantive merits of the action." *Fireside Bank v. Super. Ct.*, 40 Cal. 4th 1069, 1074 (2007) (emphasis added). The rule "stands as a barrier against 'one-way intervention,' whereby not-yet-bound absent plaintiffs may elect to stay in a class after favorable merits rulings but opt out after unfavorable ones." *Id.* "Absent a finding of a compelling justification, . . . for the trial court to refuse [a] defendant's request to resolve class issues before merits issues is an abuse of discretion." *Id.* at 1084. The Ninth Circuit agrees: "[D]istrict courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified. The purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the action well *before* the merits of the case are adjudicated." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995).

1   The second problem is that this is a disguised motion for summary adjudication. As such, it should have been brought pursuant to Rule 56. Had it been, Del Monte would have invoked Rule 56(d) and asked for a continuance to "allow time to obtain affidavits or declarations or to take discovery" to examine whether, in fact, grounds exist for the invocation of collateral estoppel. Del Monte respectfully asks this Court to treat this Opposition as, in effect, a "Rule 56(d)" affidavit, and to defer ruling on this motion until discovery can be taken on the issue.

The Court should deny or defer ruling on Plaintiffs' motion.

### B.   Offensive Non-Mutual Collateral Estoppel is Inapplicable to this Case.

Offensive non-mutual collateral estoppel does not promote judicial economy in the same way that defensive collateral estoppel does. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 881 (9th Cir. 2007). Unlike defensive collateral estoppel, offensive use of collateral estoppel allows a plaintiff to use the doctrine as a sword to prevent a defendant from relitigating issues it has lost. Consequently, offensive use poses great risks of unfairness to the defendant. *Id.* at 882.

This case poses just such risks. The *Fresh Del Monte* action was a dispute between two corporations. The trial involved a fight between two commercial entities over grocery store "territory," in particular, which company gets to sell their fruit products in the "refrigerated" section of the store. This action, on the other hand, seeks recovery for a class of individual consumers based on alleged noncompliance with FDA rules and allegedly misleading labeling practices. The New York jury's determination that Fresh Del Monte prevailed in the "territorial" fight says nothing about whether an individual customer was deceived or should get a refund for having bought Del Monte products.

Plaintiffs address four discrete issues of fairness but ignore the manifest unfairness that permeates their motion. (Mem., 10:7-11:17.) Here, the jury's decision on the Lanham Act claim may very well have been influenced by the outcome of the contract dispute. That claim has no analogue in this case. It would be unfair to inject that potential prejudice into the present suit.

Moreover, courts have recognized that application of offensive collateral estoppel would be unfair "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane Hosiery Co.*, 439 U.S. at

330-31.  Plaintiffs' brief discussion omits any consideration of procedure, instead simply concluding that Del Monte had "three and a half years to introduce all theories, evidence, and arguments in the *Fresh Del Monte* action." (Mem., 11:15-16.)  Here, procedure matters.  The second suit is a class action.  Plaintiffs claim that Del Monte foisted "worthless" products on class members and should be forced to disgorge four years of revenue, nationwide. (FAC ¶¶ 1, 327.) The monetary stakes in this case dwarf what was at issue in New York.

Moreover, numerous defenses available here were simply not available in the New York case.  For one thing, the New York action was not a class action.  This case is, and Del Monte intends to contest class certification.  For another, there is the business of standing—the named plaintiffs in this case lack standing to sue over products they did not buy and advertising they did not see.  (*See* Dkt. No. 28, 12:11-16:18.)  That defense was not available in New York.  Yet, through this motion, Plaintiffs would gain a windfall, i.e., a finding of liability over products they did not buy and advertising they never saw.

No matter, say Plaintiffs; let's skip all that and jump to liability.  It is hard to imagine greater unfairness than this.

**C.      Plaintiffs Have Not Proven the Elements of Offensive Collateral Estoppel.**

**1.     The Sixteen Issues Were Not "Actually Decided" and Were Not "Critical" and "Necessary" to the New York Verdict.**

Plaintiffs have not shown that the *Fresh Del Monte* jury actually decided the 16 issues. That precludes the application of collateral estoppel.  *See Parklane Hosiery Co*, 439 U.S. at 327 n.5 (precluded issues must be "necessary to the outcome" of the first action); 18-132 *Moore's Federal Practice – Civil* § 132.03(3) (3rd ed. 2012) ("the determination of that issue must have been actually decided, that is, distinctly put in issue and *directly determined*") (emphasis added).

In lieu of analysis, Plaintiffs simply conclude that the 16 issues they list "are the issues that the parties and the court in the *Fresh Del Monte* action determined that the jury needed to decide to reach the verdict it reached, and those issues were essential to the jury's finding that Del Monte had engaged in false advertising…" (Mem., 15:12-16.)  This is simply not true.

It does not follow that because the jury found against Del Monte on the Lanham Act claim that it necessarily decided the 16 specific sub-issues. To so assume ignores established case law holding that a decision that fails to mention the specific issues to be precluded is too vague to afford preclusive effect. *See Barnes v. Hodel*, 819 F.2d 250 (9th Cir. 1987) (prior decision regarding two million acres of land did not specify the lots in issue in the second suit and thus was not afforded preclusive effect). Furthermore, general jury verdicts create special difficulty in determining what issues were actually decided and necessary to the final decision. "Where the prior judgment was based on a general verdict, the inquiry is whether rational jurors must necessarily have determined the issues as to which estoppel is sought." *Chew*, 27 F.3d at 1438. Plaintiffs have failed to meet their burden.

The jury verdict form states exactly what the jury *did* find: that the marketing of five of the six products at issue, including the "Fruit Undressed" advertisements, violated the Lanham Act.[3] But rather than attempt to determine what the jury must have decided, Plaintiffs created a list of 16 issues, partially derived (they claim) from the Pretrial Order and the court's charge. They now claim, without support, that "those issues were essential to the jury's finding." (Mem., 15:14-15.) They are wrong. While the Pretrial Order might reveal which issues were *litigated*, it does not establish which issues were *decided*.

Plaintiffs cannot support their claim that the 16 issues were actually and necessarily decided. These are a few examples showing why it is perilous to so conclude:

- Plaintiffs assert that specific labels and packaging were found to be false or misleading. Yet, the jury verdict only presents a general conclusion. The verdict form asks, "Did Del Monte Corporation's marketing (*which includes advertising, marketing, packaging, and/or labeling*) of its refrigerated cut fruit products violate the Lanham Act…?" (emphasis added).[4] But the parenthetical (in italics) reveals that the jury's answer could have been based on evidence that is not at issue in this case. Even

---

[3] Gore Decl., Ex. 1, Verdict Form, *Fresh Del Monte* Doc. 168-1 at 1.

[4] Gore Decl., Ex. 1, Verdict Form, *Fresh Del Monte* Doc. 168-1 at 2-3.

if it was, there is no way to determine which specific label statements or advertisements the New York jury might have found misleading.

- The *Fresh Del Monte* trial concerned advertisements never mentioned by Mr. Kosta or Mr. Bates, such as the Fruit Undressed® advertising campaign.

- The jury's finding that the marketing of Orchard Select® products did not violate the Lanham Act undermines Plaintiffs' assertions that those issues were actually decided by the jury. As Plaintiffs correctly note, the Orchard Select® products, which are not at issue in the lawsuit at hand, did not state "must be refrigerated," but they did contain other labeling characteristics that Plaintiffs do allege are unlawful. (Mem., 6 n.19.) Still, the jury found that *nothing* about the product was offensive, including the transparent container, placement of the sell by date, and other labeling characteristics. Given this, it is unreasonable to conclude that the jury found that "the labels on Del Monte's [products at issue] are literally false by not stating the products contain 'preservatives'" or that Del Monte's use of transparent containers conveyed to consumers a false impression of freshness, for example. (Notice of Mot. at vi.) The verdict form impliedly contradicts these assertions.

- Many of Plaintiffs' 16 issues state that Del Monte "falsely" labeled products or that certain statements are "literally false." (Notice of Mot. at vi-vii.) But the jury never concluded that *any* labeling was false. In fact, the court's charge explains in detail that the jury may determine Del Monte's conduct was misleading or false.[5]

In short, there is nothing about the New York verdict that would enable this Court to conclude that *any* of the 16 issues were "actually decided" and "necessary" to the judgment. At best, the verdict is a muddle. But that leaves the Court with no meaningful basis upon which to anchor the 16 issues to a specific finding in the New York verdict. As such, the Ninth Circuit's observation in *Chew v. Gates* applies here: "[W]e can only speculate as to which injury or injuries underlay the verdict, and speculation will not support the application of collateral

---

[5] Gore Decl., Ex. 8, Transcript, *Fresh Del Monte* Doc. 161 at 88-90.

estoppel." 27 F.3d at 1438 (citing *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir. 1985)).

Plaintiffs impermissibly attempt to rely on the "alternative grounds" theory, as described in *FDIC v. Continental Casualty Co.*, 796 F. Supp. 1344, 1348 (D. Or. 1991) ("[w]here a judgment rests on alternative grounds it is conclusive on all such grounds in a later action"). Yet in *FDIC*, the issues in the two proceedings were in fact identical. *Id.* (the first court construed the same policy, issued to the same insureds, with the same terms, and the same three grounds were at issue). Here, as described above, the *Fresh Del Monte* jury could have relied on grounds that are not at issue in the current dispute. The various theories advocated by Fresh Del Monte highlight why this case is different.

Ignoring the evidence concerning what the jury actually decided, Plaintiffs claim to describe what was "established" at trial by misrepresenting the record and citing Fresh Del Monte's advocacy as conclusive of what the jury found. For example, Plaintiffs contend that evidence at trial established that "Del Monte is not troubled that consumers thought Del Monte's 'fresh' fruit was fresh when actually, it is not fresh." (Mem., 3:4-5.) Not so. The trial transcript reveals something else, i.e., that a witness (commenting on a consumer survey) said that consumers felt that the products *looked like* fresh fruit, not that consumers were confused into thinking the products were actually fresh.[6] The difference is critical. The owner of a cubic zirconia ring may be pleased that it sparkles like a diamond, and the owner of a faux fur jacket may be pleased that it resembles real fur, but that doesn't mean they are confused into thinking the items are something they are not. This anecdote merely reflects nothing more than consumer satisfaction with the product's appearance. In any event, extracting a few lines of trial testimony from a two-week trial is not a measure of what was "actually and necessarily decided." After all, the jury was instructed, "Now you decide what weight, if any, to give to any of the testimony."[7]

---

[6] Gore Decl., Ex. 2, Transcript, *Fresh Del Monte* Doc. 149 at 44.

[7] Gore Dec., Ex. 8, Transcript, *Fresh Del Monte* Doc. 161 at 72. Throughout their brief, Plaintiffs cite excerpts from Fresh's trial examinations and from Fresh's motion for a permanent injunction, but they exaggerate the sources. (*See, e.g.*, Mem. 3:11-13 (embellishing Fresh Del Monte's own description of Del Monte's consumer research).)

1         In sum, Plaintiffs have failed to establish that the 16 issues were actually and necessarily
2  decided.  They ignore the content of the jury verdict form and instead attempt to establish what
3  was decided through creative reporting of the trial and speculation about what the jury must have
4  decided.  The Court should deny Plaintiffs' motion.

### 2. Plaintiffs Have Not Shown That the Issues Are "Identical."

6         Plaintiffs have also failed to establish that the 16 issues are identical to the issues decided
7  in the *Fresh Del Monte* action.  Instead, they claim that the "identical" requirement "does not
8  necessarily mean that the issues of law and fact sought to be precluded have to be identical."
9  (Mem., 11:19-22.)  But Ninth Circuit law is clear: "The doctrine of collateral estoppel applies
10 only when the issues presented in each matter are identical.  The doctrine is inapplicable if the
11 issues are merely similar." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).
12        First, as described above, it is premature to determine whether the evidence and arguments
13 in the second proceeding are identical because it has not yet been settled which issues are at stake
14 in this matter.  Del Monte's motion to dismiss is currently pending, so the Court is unable to
15 determine at this stage whether the evidence and arguments are sufficiently similar.  *See*
16 *Starker v. United States*, 602 F.2d 1341, 1344-45 (9th Cir. 1979) (allowing collateral estoppel
17 after finding that "the government's evidence and argument in his case are quite similar to those
18 presented in" the prior case).
19        Second, the issues are not identical because the New York case involved marketing not at
20 issue in this case, for example, the Fruit Undressed® advertising campaign.  Mr. Kosta and Mr.
21 Bates claim generally to have read Del Monte's labels and website, but not other advertising
22 campaigns or print materials.  The scope of their allegations is narrower than in the New York
23 case, yet they seek to rely on a jury verdict that considered additional and different evidence.  We
24 have no way of determining which arguments the jury found persuasive and to what extent the
25 jury's decision was influenced by evidence concerning the non-label advertising campaigns.
26 Plaintiffs should not be permitted to profit from uncertainty.
27        Third, the present case does not involve the application of the same rule of law as that
28 involved in the *Fresh Del Monte* dispute.  Plaintiffs' complaint alleges violations of the UCL,

1  CLRA, and FAL in addition to claims of unjust enrichment and breach of express warranty under
2  the MMWA and Song-Beverly. The *Fresh Del Monte* case, on the other hand, addressed alleged
3  federal Lanham Act violations and breach of contract. Plaintiffs assert that the UCL and Lanham
4  Act are substantially the same. (Mem., 13:20-23.) A key difference, however, is that their
5  "unlawful" prong UCL claims are based entirely on alleged violations of FDA regulations, not on
6  actual deception. Their theory is that alleged regulatory violations render the products "legally
7  worthless." (*See* FAC ¶ 70 (Plaintiffs allege in reference to their "fresh" claims, "Defendant
8  falsely represented that its products were free of artificial ingredients . . . *as required by*
9  *California and federal law*") (emphasis added).) The Lanham Act, on the other hand, concerns
10 advertising that *deceives* consumers, not that simply contains technical violations.

11       <u>Fourth</u>, intervening changes in law preclude application of this doctrine. After the jury's
12 decision in the *Fresh Del Monte* trial, the Ninth Circuit decided *Pom Wonderful LLC v. Coca-*
13 *Cola Co.*, 679 F.3d 1170 (9th Cir. 2012). As described in Del Monte's motion to dismiss, the
14 Ninth Circuit has established that a private plaintiff may not bring suit to enforce FDA regulations
15 or create additional label regulations in spite of comprehensive regulation by FDA. (Dkt. No. 28,
16 4:11-5:11.) Del Monte was unable to use this new line of authority to defend itself in the *Fresh*
17 *Del Monte* trial, but it should not be foreclosed from doing so now. *See Artukovic v. Immigration*
18 *& Naturalization Serv.*, 693 F.2d 894, 898 (9th Cir. 1982) (collateral estoppel does not apply
19 "where there has been an intervening change in the governing law").

20 **V.   CONCLUSION**
21       For all the foregoing reasons, Del Monte respectfully requests that the Court deny
22 Plaintiffs' Motion for Application of Collateral Estoppel.

Dated: January 17, 2013

WILLIAM L. STERN
CLAUDIA M. VETESI
LISA A. WONGCHENKO
MORRISON & FOERSTER LLP

By: /s/ *William L. Stern*
      William L. Stern

Attorneys for Defendant
DEL MONTE CORPORATION