1   Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone: (408) 369 0800
    Fax:  (408) 369-0752
4   pgore@prattattorneys.com

5   (Co-counsel listed on signature page)

6   *Attorneys for Plaintiff*

7

8                 IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11  MICHAEL KOSTA and STEVE BATES,        Case No.  cv 12-01722 YGR
    individually and on behalf of all others
12  similarly situated,
                                          **PLAINTIFFS' MOTION FOR CLASS
13                  Plaintiffs,           CERTIFICATION, FOR APPOINTMENT
                                          OF CLASS REPRESENTATIVES, AND
14  v.                                    FOR APPOINTMENT OF CLASS
                                          COUNSEL**
15  DEL MONTE COPORATION,

16                  Defendant.            Hearing Date:  July 22, 2014
                                          Time:          2:00 P.M.
17                                        Location:      Courtroom 5, 2nd Floor
                                          Judge:         Hon. Yvonne Gonzalez Rogers
18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on July 22, 2014, at 2:00 p.m. or as soon thereafter as

4

the matter may be heard, in Courtroom 5, 2nd Floor of the above-entitled Court, located at 1301

5

Clay Street, Oakland, California, Plaintiffs will, and hereby do, move for an order, pursuant to

6

Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action,

7

appointing them as class representatives, and appointing their counsel as class counsel.

8

Specifically, Plaintiffs will and hereby do move this Court for the following:

9

1.      To certify the following class:

10

**All persons in the United States who, from April 5, 2008, until the date of notice, purchased a Del Monte brand canned tomato product, a Del Monte FreshCut vegetable product or a Del Monte Fruit Naturals or SunFresh fruit product.**

11

12

The following persons are expressly excluded from the class:  (i) Defendant and its

13

subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the

14

Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

15

2.      To appoint Plaintiffs Michael Kosta and Steve Bates as class representatives;

16

3.      To appoint the firms of Pratt & Associates and Barrett Law Group, P.A. as counsel

17

for the class; and

18

4.      To order the parties to meet and confer and present to this Court, within fifteen

19

(15) days of an order granting class certification, proposed notice to the certified class.

20

This motion is based upon this Notice of Motion and Motion and Memorandum of Points

21

and Authorities, the accompanying Declarations of Dr. Oral Capps, Dr. Julie Caswell, Pierce

22

Gore, and Brian Herrington as well as the pleadings and papers on file in this action.

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3    TABLE OF AUTHORITIES ............................................................................................ V

4    STATEMENT OF THE ISSUES TO BE DECIDED.................................................... X

5    MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

6    INTRODUCTION ........................................................................................................ 1

7    FACTS COMMON TO THE CLASS ........................................................................ 1

8         A.    Canned Tomatoes.................................................................................... 1

9         B.    FreshCut Vegetables ............................................................................. 2

10        C.    Del Monte Refrigerated Fruit Products.................................................. 2

11   LEGAL STANDARDS............................................................................................... 3

12   ARGUMENT .............................................................................................................. 5

13   I.    Plaintiff Satisfies Rule 23(a)'s Requirements ..................................................... 5

14        A.    Defendant Has Stipulated the Class Is Sufficiently Numerous............... 5

15        B.    There Are Questions of Law and Fact Common to All Class Members ................. 6

16        C.    Plaintiffs' Claims Are Typical of All Class Members ........................... 9

17        D.    Plaintiffs Satisfy the Adequacy of Representation Requirement.......... 11

18              1.    The Representative Plaintiffs Have No Conflicts of Interest
19                    With Other Class Members ........................................................ 11

20              2.    The Representative Plaintiffs Will Vigorously Prosecute This
                      Action ........................................................................................ 12

21              3.    Plaintiffs' Counsel Will Continue to Vigorously Represent the
22                    Class .......................................................................................... 12

23   II.   This Case Satisfies Rule 23(b)(2)'s Requirements ........................................ 12

     III.  This Case Satisfies Rule 23(b)(3)'s Requirements ......................................... 14
24
          A.    Common Questions of Law or Fact Predominate................................. 14
25
          B.    UCL and FAL Claims ........................................................................... 15
26
          C.    CLRA Claim ......................................................................................... 15
27
          D.    Restitutionary Disgorgement Can Be Proven On A Classwide Basis ................. 16

28

E.    Damages And Comcast .................................................................. 19

F.    The Subject Products Are Legally Worthless Entitling Plaintiffs To A Damages Award Equal To The Purchase Price ..................................... 20

G.    Defendant cannot escape liability for restitution or damages by hiding behind a middleman ...................................................................... 21

H.    In The Alternative, The Court Can Certify A Class For Nominal Damages ........ 22

I.    Class Action Is Superior ............................................................... 24

    1.    Class Members Have No Interest In Pursing Individual Litigation ......................................................................... 24

    2.    There Are No Other Actions Pending ..................................... 24

    3.    This Court Is the Appropriate Forum For This Litigation ......................... 25

    4.    There Are No Manageability Issues ....................................... 25

CONCLUSION .......................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (S.Ct. 1997) ............................................................................................ 6

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (S.Ct. 2013) ....................................................................................... 5

*Arnold v. United Artists Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994) ................................................................................ 6

*Astiana v. Kashi,*
    291 F.R.D. 493 (C.D.Cal.2013) ................................................................................ 21

*Avina v. Spurlock,*
    28 Cal. App. 3d 1086 (1972) ..................................................................................... 29

*Ballard v. Equifax Check Servs., Inc.,*
    186 F.R.D. 589 (E.D. Cal. 1999) ................................................................................ 5

*Benson v. Kwikset Corporation,*
    152 Cal.App.4th 1254 (Ct. App 4th Dist. 2007) ...................................................... 11

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ..................................................................................... 19

*Brown v. Wal-Mart Stores, Inc.,*
    2012 WL 3672957 (N.D. Cal. Aug. 24, 2012) ........................................................... 6

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990) ................................................................................... 13

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ..................................................................................... 33

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (S.Ct. 1999) ...................................................................................... 8

*Chern v. Bank of Am.,*
    15 Cal. 3d 866 (S.Ct. 1976) ........................................................................................ 9

*Comcast Corp. v. Behrend,*
    133 S.Ct. 1426 (2013) ................................................................................... 19, 25, 26

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal. 3d 197 (S.Ct. 1983) ...................................................................................... 11

*Cortez v. Purolator Air Filtration Prods. Co.,*
    23 Cal. 4th 163 (S.Ct. 2000) ...................................................................................... 8

*County of San Bernardino v. Walsh,*
    158 Cal.App.4th 533 (2007) ...................................................................................... 23

*Duran v. Credit Bureau of Yuma, Inc.*,
      93 F.R.D. 607 (D. Ariz. 1982) ................................................................. 5

*Eisen v. Carlisle & Jacquelin*,
      417 U.S. 156 (S.Ct. 1974) .................................................................... 4

*Falk v. Gen. Motors Corp.*,
      496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................... 21

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
      2008 U.S. Dist. LEXIS 36595 (E.D. Cal. May 2, 2008).................... 23

*FTC v. Figgie Int'l*,
      994 F.2d 595 (9th Cir. Cal. 1993) ...................................................... 25

*FTC v. Publrs. Bus. Servs.*,
      2013 U.S. Dist. LEXIS 19336 (9th Cir. 2013) .................................. 24

*General Tel. Co. v. Falcon*,
      457 U.S. 147 (S.Ct. 1982) ...................................................... 13, 15

*Greenwood v. Compucredit Corp.*,
      2010 WL 291842 (N.D. Cal. Jan. 19, 2010) ................................ 20, 32

*Guido v. L'Oreal*,
      2013 U.S. Dist. LEXIS 94031 (C.D. Cal. 2013) .............................. 21

*Haley v. Medtronic, Inc.*,
      169 F.R.D. 643 (C.D. Cal. 1996) ...................................................... 4

*Hanlon v. Chrysler Corp.*,
      150 F.3d 1011 (9th Cir. 1998)................................................... passim

*Haynes v. Logan Furniture Mart, Inc.*,
      503 F.2d 1161 (7th Cir. 1974)............................................................ 33

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
      2006 WL 1530166 (N.D. Cal. June 5, 2006) .................................... 12

*In re High-Tech Employee Antitrust Litig.*,
      289 F.R.D. 555 (N.D. Cal April 5, 2013)......................................... 26

*In re Scrap Metal Antitrust Litig.*,
      527 F.3d 517 (6th Cir.2008)............................................................ 25

*In re Steroid Hormone Prod. Cases*,
      181 Cal. App. 4th 145 (Ct.App. 2nd Dist. 2010) ...................... 10, 11, 27

*In re THQ, Inc. Secs. Litig.*,
      2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ................................ 8

*In re Tobacco II Cases*,
      46 Cal. 4th 298 (S.Ct. 2009) ...................................................... 9, 10

*In re Visa Checks/MasterMoney Antitrust Litig.*,

280 F.3d 124 (2d Cir. 2001) .................................................................................. 19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013) ............................................ 25

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) ................................................................................ 6, 7, 14

*Juarez v. Arcadia Financial, LTD.*,
   152 Cal. App. 4th 889 (2007) ..................................................................................... 24

*Kasky v. Nike Inc.*,
   27 Cal. 4th 939 (2002) ............................................................................................ 9, 11

*Keilholtz v. Lennox Hearth Products Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) .................................................................................. 20

*Kluge v. O'Gara*
   227 Cal. App. 2d 207 (1964) .................................................................................. 29, 30

*Kohl v. Assoc. of Trial Lawyers of Am.*,
   183 F.R.D. 475 (D. Md. 1998) ...................................................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ............................................................................................ 21

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (Ct. App. 1st Dist. 2003) .......................................................... 9, 12

*Leoni v. State Bar*,
   39 Cal. 3d 609 (S.Ct. 1985) ........................................................................................ 11

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ................................................................................ 6, 32

*Lymburner v. U.S. Fin. Funds, Inc.*,
   263 F.R.D. 534 (N.D. Cal. 2010) ................................................................................. 32

*McCrary v. Elations Co., LLC*,
   2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ..................................................... 23

*Menagerie Productions v. Citysearch*,
   2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ................................................................... 33

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) .................................................................................. 16

*Moore v. Hughes Helicopters, Inc.*,
   708 F.2d 475 (9th Cir. 1983) ......................................................................................... 4

*Nagel v. Twin Laboratories, Inc.*,
   109 Cal. App. 4th 39 (Ct.App. 4th Dist. 2003) .................................................................. 9

*Negrete v. Allianz Life Ins. Co. of North America*,
   238 F.R.D. 482 (C.D. Cal. 2006) ................................................................................... 33

*Park v. Welch Foods, Inc.*,
   2014 U.S. Dist. LEXIS 37796 (N.D. Cal. Mar. 21, 2014) ................................................. 27

*Pickman v. Am. Express Co.*,
   2012 U.S. Dist. LEXIS 9662 (N.D. Cal. Jan. 27, 2012) ................................................... 31

*Plascencia v. Lending 1st Mortgage*,
   259 F.R.D. 437 (N.D. Cal. 2009) ...................................................................................... 4

*ProMex, LLC v. Hernandez*,
   781 F.Supp. 2d 1013 (C.D. Cal. 2011) ............................................................................. 30

*Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.*,
   2012 U.S. Dist. LEXIS 69853 (N.D. Cal. Nov. 27, 2012) ............................................... 17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (S.Ct. 2010) ................................................................................................. 4

*Shersher v. Superior Court*,
   154 Cal. App. 4th 1491 (2007) ......................................................................................... 28

*Siminoff v. Jas. H. Goodman & Co. Bank*
   18 Cal. App. 5 (1912) ........................................................................................................ 30

*Staples v. Hoefke*
   189 Cal. App. 3d 1397 (1987) ........................................................................................... 30

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................................... passim

*Sweet v. Johnson*,
   169 Cal. App. 2d 630 (1959) ....................................................................................... 30, 31

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (S.Ct. 2011) .............................................................................................. 8

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) ............................................................................................. 18

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ...................................................................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .......................................................................................... 13

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   74 Fed. R. Serv. 3d 459 (9th Cir. 2009) ............................................................................ 4

*Zeisel v. Diamond Foods, Inc.*,
   2011 WL 2221113 (N.D. Cal. 2011) .................................................................................. 7

**Statutes**

Cal. Bus. & Prof. Code § 17203 ................................................................................................ 8

Cal. Civ. Code § 3360 ........................................................................................................ 22

Cal. Health and Safety Code § 110760 ................................................................................ 7

**Rules**

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 5

Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 6

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 11

Fed. R. Civ. P. 23(b)(3)(A) ................................................................................................ 24

Fed. R. Civ. P. 23(b)(3)(B) ................................................................................................ 25

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................................ 12

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................................ 12

Fed. R. Civ. P. 23(g)(1)(c)(i) ............................................................................................. 12

**Treatises**

3 Alba Conte & Newberg, Newberg on Class Actions § 3.12 (4th ed. 2002) ............................... 10

3 Alba Conte & Newberg, Newberg on Class Actions § 7.20 (4th ed. 2002) ............................... 4

3 Alba Conte & Newberg, Newberg on Class Actions § 7.24 (3d ed. 1992) ............................... 12

5 Alba Conte & Newberg, Newberg on Class Actions § 24.25 (3d ed. 1992) ............................. 11

7A Wright & Miller, Federal Practice and Procedure § 1779 (2d ed. 1986) ................................ 24

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2

3

  Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a), 23(b)(2)

and 23(b)(3).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This is not a case of simple oversight of an arcane regulation. California law and FDA regulations provide that food labels cannot be unlawful or misleading.  Del Monte has intentionally misbranded its products in violation of federal and California law across three product lines. Plaintiffs have alleged, and the evidence presented in this motion shows, that the labels[1] on Del Monte's Tomato Product, FreshCut Vegetable Product and SunFresh/Fruit Naturals product include unlawful and misleading claims that the products: 1) are "fresh" 2) are "all natural" 3) are free of artificial ingredients 4) contain antioxidants, but actually fail to meet the minimal nutritional requirements to make that claim 5) are healthy 6) have "no sugar added" 7) are an excellent source of lycopene and lutein and 8) comply with the applicable standard of identity for its products.  Del Monte's Fruit Natural products also understate caloric value, sugar and carbohydrate content. Del Monte's conduct was systematic and uniform.  The labels at issue are alike, regardless of where the product was bought and regardless of the particular flavor of the product. This case is tailor-made for class certification under Rules 23(b)(2) and (b)(3).

## FACTS COMMON TO THE CLASS

### A.  Canned Tomatoes

Del Monte makes a line of canned tomatoes. Per Del Monte's website, the tomato product line includes "Diced Tomatoes," "Tomato Sauce," Stewed Tomatoes," and "No Salt Added," which appears to be a variation of its Diced and Stewed Tomato products, but with no salt added. http://www.delmonte.com/products/category.aspx?id=216.[2] The products come in different

---

[1] On a procedural history note, the labels of Del Monte's Tomato Products, FreshCut Vegetable Products and SunFresh and Fruit Natural products have been judicially noticed. *See* Defendant's Motion for Judicial Notice, Doc. No. 31, Exhibits B-G; *see also* Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Doc. No. 92 at 6-7 (granting Defendant's request for judicial notice as to the labels).

[2] Since the filing of this lawsuit, Del Monte has changed its website to only show pictures of the cans without the unlawful labels.

flavors or iterations. For example, Del Monte sells "Diced Tomatoes with Garlic and Onion" and "Diced Tomatoes with Mushroom and Garlic." The variation in flavor is a distinction without a difference because the labels are misbranded in exactly the same ways.  Plaintiff Kosta and Plaintiff Bates both purchased Del Monte Diced Tomatoes and Del Monte Tomato Sauce. Additionally, Plaintiff Bates purchased Del Monte Stewed Tomatoes in multiple flavors as well as No Salt Added. Thus, Plaintiffs bought at least one product in each product line. Stated another way, Plaintiffs bought at least one product bearing the challenged unlawful label statements encompassed by the putative class.

Del Monte's Tomato Products violate the Sherman Law in many respects outlined in Plaintiffs' Consolidated Complaint. (Doc. No. 96, ¶¶ 130, 154, 166.)[3] For example, the Diced Tomato labels make unlawful nutrient content claims by stating that the products are a "Natural Source of Antioxidants" and touting the nutrient lycopene for which there is no daily value. Other Del Monte Tomato Products are touted as all natural, but actually contain artificial chemical ingredients. The Sherman Law prohibits these label statements.[4]

### B.      FreshCut Vegetables.

Del Monte makes a canned vegetable product that it calls "FreshCut." Plaintiff Kosta purchased FreshCut Sliced Carrots. Plaintiff Bates purchased numerous FreshCut variations such as French Style Green Beans and FreshCut Lima Beans. The labels on the FreshCut product contain the statement, "No preservatives." This claim is unlawful and misleading because Del Monte's FreshCut vegetable products are chemically preserved, thermally processed, and contain chemical preservatives like calcium chloride, sodium benzoate, potassium sorbate, citric acid and ascorbic acid. Regardless of whether the particular can is FreshCut Sliced Carrots or FreshCut Lima Beans, the unlawful label statements are the same.

### C.      Del Monte Refrigerated Fruit Products.

Del Monte makes fruit products called Fruit Naturals and SunFresh. Plaintiff Kosta purchased more than one Fruit Naturals flavor. Plaintiff Bates purchased several SunFresh and

---

[3] Plaintiffs' allegations are incorporated herein by reference.

[4] Del Monte also makes unlawful health claims on its website about its canned tomato products.

Fruit Naturals flavors. These products are canned fruit that are sold in the refrigerated produce section in order to make them appear like fresh fruit to consumers. Two years ago, a New York jury found that Del Monte knowingly misled consumers regarding its Fruit Naturals and SunFresh fruit products. The jury verdict form is attached to Plaintiffs' motion for collateral estoppel, (Doc. No. 50, as Ex. 1.) In order to increase profits, Del Monte took thermally treated, pasteurized, and chemically preserved canned fruit products and packed them in glass and plastic containers in a manner similar to fresh cut fruit. Del Monte failed to correctly identify or label such canned fruit products as canned or pasteurized as required by law and placed a false "must be refrigerated" statement on shelf stable canned fruit in violation of FDA labeling guidance. Del Monte failed to disclose that certain ingredients in these products served as preservatives as required by law and placed sell by dates in nonconspicuous spots such as the bottom of the container to prevent consumers from noticing that the sell by dates were up to 21 months later. Del Monte's labeling that these canned products "must be refrigerated" is false and misleading and violates 21 C.F.R. § 101.95 because these products are not fresh and do not require refrigeration. These products also contain chemical preservatives and are not all natural. Del Monte also misbrands its fruit products by labeling its Red Grapefruit (No Sugar Added) but failing to include the required "not a low calorie food" disclaimer. Del Monte also utilizes unlawful serving sizes to mislead consumers into believing its fruit products caloric value is lower.

If one label on, say, a can of Diced Tomatoes in unlawful, then all labels on Diced Tomatoes are unlawful, and it doesn't matter whether the Diced Tomatoes have garlic or mushrooms. The same applies to labels on FreshCut vegetables and Fruit Naturals/SunFresh products. Whether it's Del Monte's FreshCut corn or FreshCut Carrots or Fruit Naturals Red Grapefruit or Fruit Naturals Cherry with Mixed Fruit, all of the products contain the same unlawful label statements.

## LEGAL STANDARDS

Rule 23 of the Federal Rules of Civil Procedure states, "'A class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a)

1    (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit

2    into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs.,*

3    *P.A. v. Allstate Ins. Co*., 559 U.S. 393, 394 (S.Ct. 2010) (quoting Fed. R. Civ. P. 23).

4            The decision regarding whether to certify a class is committed to the discretion of the

5    district court. *See Yokoyama v. Midland Nat'l Life Ins. Co*., 74 Fed. R. Serv. 3d 459 (9th Cir.

6    2009).  Although the Plaintiff bears the burden of satisfying the elements of Rule 23, the

7    requirements of Rule 23 "should be liberally construed." *See* 3 Alba Conte & Newberg, Newberg

8    on Class Actions § 7.20 (4th ed. 2002). "Although some inquiry into the substance of a case may

9    be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule

10    23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v.*

11    *Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (citing *Eisen v. Carlisle & Jacquelin*,

12    417 U.S. 156, 177-78 (S.Ct. 1974)); *see also Plascencia v. Lending 1st Mortgage*, 259 F.R.D.

13    437, 442 (N.D. Cal. 2009) ("In making this determination, the court may not consider the merits

14    of the plaintiff's claims."). The Supreme Court recently affirmed this position stating:

15            Although we have cautioned that a court's class-certification analysis must be
16    "rigorous" and may "entail some overlap with the merits of the plaintiff's
        underlying claim," Rule 23 grants courts no license to engage in free-ranging
17    merits inquiries at the certification stage. Merits questions may be considered to
        the extent — but only to the extent —that they are relevant to determining whether
18    the Rule 23 prerequisites for class certification are satisfied.

19    *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (S.Ct. 2013)

20    (internal quotes and citations omitted).

21            Class actions in the Ninth Circuit are favored, and are particularly appropriate in instances

22    where, like here, individual damages are small. *See, e.g., Ballard v. Equifax Check Servs., Inc*.,

23    186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with

24    consumer protection laws are 'desirable and should be encouraged.'") (quoting *Duran v. Credit*

25    *Bureau of Yuma, Inc*., 93 F.R.D. 607, 610 (D. Ariz. 1982)); *Hanlon v. Chrysler Corp*., 150 F.3d

26    1011, 1023 (9th Cir. 1998) (holding that class certification by district court was appropriate

27    because litigation costs would dwarf potential recovery by members of class if forced to pursue

28    actions individually.).

As the Supreme Court has observed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (S.Ct. 1997); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover").

## ARGUMENT

### I.     Plaintiff Satisfies Rule 23(a)'s Requirements

#### A.     Defendant Has Stipulated the Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). "The numerosity requirement does not mean that the class must be so numerous that joinder is impossible but rather simply that joinder of the class is impracticable." *Brown v. Wal-Mart Stores, Inc.*, No. 5:09–CV–03339 EJD, 2012 WL 3672957, at *9 (N.D. Cal. Aug. 24, 2012) (citing *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994)); *see also Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *7 (N.D. Cal. 2011) (inferring "there are thousands of potential class members" from number of labels at issue). "Where a class is large in numbers, joinder will usually be impracticable." *Jordan*, 669 F.2d at 1319 (9th Cir. 1982).

Here, Defendant cannot seriously contest numerosity. Indeed, in its responses to Plaintiffs' requests for admissions, Defendant admitted that the number of consumers who purchased the challenged products exceeds 10,000. *See* Exhibit 1, Defendant's Responses to Requests for Admission Number 4.

### B.  There Are Questions of Law and Fact Common to All Class Members

Rule 23(a)(2) requires a showing of commonality that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Like all Rule 23(a) elements, this requirement is to be construed permissively. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* (*quoting Hanlon*, 150 F.3d at 1019-1020 (9th Cir. 1998)).

Here, there is a "common core" of fact that binds the entire class: all class members purchased one of Defendant's tomato, vegetable, or fruit products bearing the same unlawful statements. Defendant's labels will be the same for each class member as Defendant does not use different labels in different areas of the country.

The commonality requirement may be satisfied if the claims of the prospective class have even one significant issue common to the class. *See, e.g., Hanlon*, 150 F.3d at 1019-1020. *See also In re THQ, Inc. Secs. Litig.*, No. CV 00–1783AHM (EX), 2002 WL 1832145, at *11 (C.D. Cal. Mar. 22, 2002).  To satisfy this provision, a common question "must be of such a nature that it is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (S.Ct. 2011). In *Dukes*, Justice Scalia emphasized that Rule 23(a)(2)'s commonality requirement remains distinct from the predominance analysis of Rule 23(b)(3) (discussed below), and that "for purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556 (internal quotation and alterations omitted).

There are numerous common questions of law and fact, the answers to which will resolve the claims of all of the class members in one stroke.  First, the key common question regarding Plaintiff's UCL, FAL, CLRA and unjust enrichment claims is whether the challenged label statements are unlawful, unfair, deceptive, or misleading to reasonable consumers. *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (S.Ct. 1999) (UCL prohibits conduct that is unfair or deceptive, even if it is not unlawful); *Cortez v. Purolator Air Filtration*

1  *Prods. Co*., 23 Cal. 4th 163, 181 (S.Ct. 2000) (UCL does not require intent to injure); *Lavie v.*

2  *Procter & Gamble Co*., 105 Cal. App. 4th 496, 506-07 (Ct. App. 1st Dist. 2003) (advertisement

3  "is judged by the effect it would have on a reasonable consumer"); *Nagel v. Twin Laboratories,*

4  *Inc*., 109 Cal. App. 4th 39, 54 (Ct. App. 4th Dist. 2003) (conduct that is "likely to mislead a

5  reasonable consumer" violates the CLRA); *Chern v. Bank of Am.,* 15 Cal. 3d 866, 876 (S.Ct.

6  1976) ("statement is false or misleading if members of the public are likely to be deceived. Intent

7  of the disseminator and knowledge of the customer are both irrelevant.").  If Defendant's

8  products are misbranded, then the products are misbranded nationwide and in their entirety. If the

9  label statements are unlawful and misleading with regard to one of Defendant's products it is

10  unlawful as to all of the class products.

11      Second, the question of "unlawfulness" under the Sherman Law is a separate common

12  question that can be resolved on a class-wide basis.  If Defendant's products are "misbranded"

13  under the Sherman law, Defendant could not lawfully sell the products. Cal. Health and Safety

14  Code § 110760.

15      Third, the question of "deceptiveness" under the UCL is common to all members of the

16  class because it asks whether "members of the public are likely to be deceived." *Kasky v. Nike*

17  *Inc.,* 27 Cal. 4th 939, 951 (2002).  As long as Plaintiffs relied on the misrepresentations or

18  omissions (which they did), it is not necessary to show reliance by absent class members. *See In*

19  *re Tobacco II Cases*, 46 Cal. 4th 298, 306, 313 (S.Ct. 2009). In *Tobacco II,* the California

20  Supreme Court reversed decertification of a class of cigarette purchasers where plaintiffs alleged

21  that the defendant manufacturers had engaged in a "campaign of deceptive advertising and

22  misleading statements about the addictive nature of nicotine and the relationship between tobacco

23  use and disease." *Id.* at 306. The trial court reached this decision despite the fact that a "myriad of

24  distinct issues exist[ed] as to each class member's exposure to the alleged deceptive marketing,

25  reliance thereon, whether same was a causal factor of the person's smoking and whether each

26  class member sustained injury." *Id.* at 309.

27      The California Supreme Court held that these issues were not relevant.  "The class, as

28  certified, consists of members of the public who were exposed to defendants' allegedly deceptive

1   advertisements and misrepresentations and who were also consumers of defendants' products

2   during a specific period of time. The nature of the claim is the same--the right to be protected

3   against defendants' alleged deceit--and the remedies remain the same--injunctive relief and

4   restitution." *Id.* at 324; *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (Ct.App.

5   2nd Dist. 2010) (ordering certification of UCL claim against manufacturer of products that

6   contained a controlled substance; holding that there were common questions of "(1) whether

7   GNC's sale of androstenediol products was unlawful; and if so, (2) the amount of money GNC

8   'may have ... acquired by means of' those sales that must be restored to the class") (quoting Cal.

9   Bus. & Prof. Code § 17203).

10      Fourth, for reasons similar to Plaintiffs' UCL claims, Plaintiffs' FAL claim also raises a

11   common question: whether Defendant's label statements are likely to deceive the public.  The

12   California Supreme Court "has recognized that '[a]ny violation of the false advertising law ...

13   necessarily violates' the UCL." *Kasky*, 27 Cal. 4th at 950 (quoting *Committee on Children's*

14   *Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197, 210 (S.Ct. 1983)). These laws prohibit

15   "not only advertising which is false, but also advertising which [,] although true, is either actually

16   misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."

17   *Kasky*, 27 Cal. 4th at 951 (quoting *Leoni v. State Bar,* 39 Cal. 3d 609, 626 (S.Ct. 1985)). "Thus,

18   to state a claim under either the UCL or the false advertising law, based on false advertising or

19   promotional practices, 'it is necessary only to show that members of the public are likely to be

20   deceived.'" *Kasky*, 27 Cal. 4th 951 (quoting *Committee on Children's Television, Inc. v. General*

21   *Foods Corp.,* 35 Cal. 3d at 211).

22      Fifth, the question of materiality – how a reasonable person would perceive the labeling –

23   creates another issue that is common for all class members.  Regarding Plaintiffs' CLRA claim,

24   although it is necessary to show reliance by the class, such reliance may be presumed when the

25   alleged misrepresentations and omissions were material. *In re Steroid Hormone Prod. Cases,* 181

26   Cal. App. 4th at 156-57 (Ct.App. 2nd Dist. 2010).  Materiality, in turn, is demonstrated by

27   showing that "a reasonable man would attach importance to its existence or nonexistence in

28   determining his choice of action in the transaction in question, and as such materiality is generally

a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* at 157 (citations omitted). This is a common question for all class members. *See, e.g., Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254 (Ct. App 4th Dist. 2007) (holding that trial courts "must view the labeling from the perspective of those consumers for whom the geographic designation is important…[F]or some people country of origin labeling is a critical factor when making a purchasing decision."); *Lavie v. Procter & Gamble Co., et al*, 105 Cal. App. 4th at 506 (Ct. App. 1st Dist. 2003) (stating "where advertising is aimed at a particularly susceptible audience ..., its truthfulness must be measured by the impact it will likely have on members of that group, not others to whom it was not primarily directed."). Undoubtedly, a reasonable consumer would attach significance to the challenged label statement. *See* Exhibit 2, Declaration of Dr. Julie Caswell. Certainly Defendant believes the challenged statements are material or it (1) would not have changed it labels to include the statements and (2) would not have made the claims so prominent on their labels.

### C.  Plaintiffs' Claims Are Typical of All Class Members

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  As recently recognized by the Ninth Circuit, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019-1020 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Rather, typicality results if the representative plaintiffs' claims "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* M 02-1486 PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (citations omitted). The typicality standard requires only that the named plaintiffs' claims be "reasonably coextensive with those of absent class members[,] not substantially identical." *Staton*, 327 F.3d at 957; *Cal. Rural Legal Assistance, Inc. v. Legal Servs.*

1  *Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (Rule 23 "does not require the named plaintiffs to be

2  identically situated with all other class members. It is enough if their situations share a 'common

3  issue of law or fact' and are 'sufficiently parallel to insure a vigorous and full presentation of all

4  claims for relief.'") (citations omitted). It suffices that the class representatives are "part of the

5  class and possess the same interest and suffer the same injury as the class members." *General Tel.*

6  *Co. v. Falcon*, 457 U.S. 147, 156 (S.Ct. 1982) (quotation marks omitted). Any factual variations

7  do not defeat typicality where, as here, the underlying claims rely on the same legal or remedial

8  theory. *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (reversing

9  district court's denial of class certification in breach of warranty case). "The fact that Class

10  Members must individually demonstrate their right to recover, or that they may suffer varying

11  degrees of injury, will not bar a class action, nor is a class action precluded by the presence of

12  individual defenses against class plaintiffs." 3 Alba Conte & Newberg, Newberg on Class Actions

13  § 3.12 (4th ed. 2002). Thus, the typicality requirement is satisfied even if there are factual

14  distinctions between the claims of the named plaintiff and those of other class members.

15  *Armstrong v. Davis,* 275 F.3d 869 (9th Cir. 2001). Typicality is satisfied so long as the named

16  plaintiff's claims stem from the same event, practice, or course of conduct that forms the base of

17  the class claims and is based upon the same legal remedial theory. *See Jordan*, 669 F.2d at 1321.

18      In *Hanlon v. Chrysler Corp.*, the Ninth Circuit reviewed a district court's certification of a

19  nationwide class in a case involving a variety of products.  In affirming the lower court's finding

20  of typicality, the Court stated that "[u]nder the rule's permissive standards, representative claims

21  are 'typical' if they are reasonably coextensive with those of absent class members; they need not

22  be substantially identical." *Hanlon*, 150 F.3d at 1020.  The Rule's text only requires Plaintiffs'

23  claims be "typical" of the rest of the class, in other words, "reasonably coextensive." *Id.*  They do

24  not need to be identical or even "substantially identical."  This requirement is a "permissive" one.

25  *Id.*  The *Hanlon* Court noted that "the broad composition of the representative parties vitiates any

26  challenge founded on atypicality" emphasizing the "narrow focus" of the relief sought.  *Id.*

27      The Ninth Circuit, in *Staton*, affirmed the district court's decision to certify an

28  employment class action holding that the district acted within its discretion regarding the Rule 23

1    requirements of numerosity, commonality, typicality, and adequacy.  The court found named

2    plaintiffs satisfied typicality with respect to fifteen thousand putative class members, even though

3    plaintiffs did not represent "various sub-groups" of the class. *Staton*, 327 F.3d at 957.  In *Staton*,

4    class counsel did not provide clear documentation that each job category had a class

5    representative for each type of discrimination claim alleged. *Id.* at 957.  The court, focusing on

6    the typicality requirement under Rule 23(a)(3), addressed the lack of documentation for each type

7    of discrimination by stating, "[such a] level of specificity is not necessary for class representatives

8    to satisfy the typicality requirement." *Id.*  The court further stated, "[t]ypicality 'does not mean

9    that the claims of the class representative[s] must be identical or substantially identical to those of

10   the absent class members.'" *Id.* (quoting 5 Alba Conte & Newberg, Newberg on Class Actions §

11   24.25 at 24–105 (3d ed. 1992)).

12         Plaintiffs' claims are typical of those of the putative class. The claims are centered on

13   Defendant's products that are misbranded in the same way. Plaintiffs purchased at least one

14   product from each of the 3 challenged product lines. Therefore, Plaintiffs and class members have

15   been exposed to the exact same label statements.

16         **D.  Plaintiffs Satisfy the Adequacy of Representation Requirement**

17         Rule 23(a)(4) requires that the class representative "fairly and adequately protect the

18   interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has established a two-prong

19   test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts

20   of interest with other class members, and (2) will the representative plaintiffs and their counsel

21   prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

22         **1.     The Representative Plaintiffs Have No Conflicts of Interest With
                     Other Class Members**

23

24         Because adequacy is closely related to typicality, where, as here, the claims of the class

25   members and the class representative are reasonably co-extensive, there is no conflict. *See*

26   *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-158 n. 13 (S.Ct. 1982).  Moreover, if there are any

27   doubts as to the adequacy of representation or potential conflicts, they should be resolved in favor

28   of upholding the class, subject to later possible reconsideration. *See* 3 Alba Conte & Newberg,

Newberg on Class Actions § 7.24 (3d ed. 1992).  Here, the proposed class representatives have no interests that are in conflict with the interests of the members of the proposed class.

### 2.   The Representative Plaintiffs Will Vigorously Prosecute This Action

"It is not necessary that a class representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim." *Moeller v. Taco Bell Corp*., 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citations and internal quotes omitted). To date, the class representatives' participation in this litigation has been exemplary. They have stayed up-to-date on all of the proceedings, communicated with counsel throughout this litigation, and will soon be deposed by defense counsel.  They have demonstrated their willingness to prosecute this action vigorously.

### 3.   Plaintiffs' Counsel Will Continue to Vigorously Represent the Class

When a court certifies a class, the court must also appoint class counsel unless a specific statute provides otherwise. Fed. R. Civ. P. 23(g)(1)(A). The basic requirement for appointment as class counsel is that counsel must fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B). In appointing class counsel, the court considers "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class…." Fed. R. Civ. P. 23(g)(1)(c)(i).

Plaintiffs' counsel are well qualified for appointment as class counsel. Plaintiffs' counsel have considerable experience in complex litigation and with consumer class actions. Plaintiffs' counsel have no conflicts that would prevent them from adequately representing the interests of the class. (Exhibit 3, Declaration of Pierce Gore; Exhibit 4, Declaration of Brian Herrington). Plaintiffs' proposed class counsel were appointed to serve as class counsel by Judge Whyte in *Lanovaz v. Twinings North America*, No. 5:12-cv-02646 (April 24, 2014 N.D. Cal.)

## II.   This Case Satisfies Rule 23(b)(2)'s Requirements

Class certification requires that Plaintiffs show that the requirements of Rule 23(a) and one of the three subsections of Rule 23(b) are met. Plaintiffs seek certification of their claim for

injunctive relief under Rule 23(b)(2). Certification of this claim under Rule 23(b)(2) does ***not***
require a showing of predominance of common questions of law or fact over individualized ones,
but instead requires that Plaintiffs show that Defendant "has acted or refused to act on grounds
generally applicable to the class, thereby making appropriate final injunctive relief or
corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).
Plaintiffs can make this showing. The challenged label statements are uniform across the class
and they are unlawful in precisely the same way.

   Plaintiff's FAL and restitution claims, too, are ripe for certification:

> [V]ariation among class members in their motivation for purchasing the product,
> the factual circumstances behind their purchase, or the price that they paid does
> not defeat the relatively "minimal" showing required to establish commonality.
> *Hanlon*, 150 F.3d at 1020. Moreover, it is immaterial for purposes of plaintiffs'
> state law claims: injunctive and restitutionary relief under the UCL and FAL "is
> available without individualized proof of deception, reliance, and injury."

*Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co*., 2012 U.S. Dist. LEXIS 69853 (N.D.
Cal. Nov. 27, 2012) (citing *Tobacco II*, 46 Cal. 4th at 320).

   Certification under Rule 23(b)(2) is entirely appropriate. Plaintiffs seek declaratory
judgment and an injunction to stop Defendant from continuing to misbrand and sell its products in
the same way it has done so during the class period.  Defendant has chosen to mislabel its
products in exactly the same manner, which affects all class members in exactly the same way.

   There could not be a clearer example of a defendant "act[ing] or refus[ing] to act on
grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). In fact, the Advisory
Committee envisioned just this type of case when it stated that Rule 23(b)(2) certification is
appropriate where "settling the legality of the behavior with respect to a class as a whole is
appropriate."  Fed. R. Civ. P. 23 is appropriate "[w]hen a suit seeks to define the relationship
between the defendant(s) and the world at large."  *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d
Cir. 1984). Defendant's conduct is applicable to the class as a whole, making this case perfectly
suited for class certification under Rule 23(b)(2).  *See Kohl v. Assoc. of Trial Lawyers of Am.*, 183
F.R.D. 475, 486 (D. Md. 1998) ("Since Defendants have acted in a consistent manner toward the
putative Class members, and Plaintiff is seeking injunctive relief.…the prerequisite of Rule

1  23(b)(2) has been satisfied.").  The Court should certify the injunctive and restitution claims

2  under Rule 23(b)(2).

3  **III.**      **This Case Satisfies Rule 23(b)(3)'s Requirements**

4          In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the

5  requirements of Rule 23(b)(3) because common questions of law or fact predominate over any

6  purported individual questions, and a class action is the superior method – indeed, the only

7  method – for the fair and efficient adjudication of this controversy.

8          **A.**      **Common Questions of Law or Fact Predominate**

9          "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not

10  that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc.*, 133 S. Ct.

11  at 1191 (emphasis in original). Questions that are common to the class predominate over

12  individual questions where a plaintiff alleges a common course of conduct of misrepresentations,

13  omissions, and other wrongdoing that affected all the class members in the same or similar

14  manner. *See Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975), *cert. denied*, 429 U.S.

15  816 (1976). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are

16  sufficiently cohesive to warrant adjudication by representation." *In re Visa Checks/MasterMoney*

17  *Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). This criterion is normally satisfied when there

18  is an essential common factual link between all class members and the defendant for which the

19  law provides a remedy. *Id.* at 136.

20          Here, each class member purchased Defendant's misbranded products. Each class member

21  was subject to the same challenged label statements. Each class member accordingly proffers the

22  same legal theories and the same theories of recovery. A finding of Defendant's culpability for a

23  single class member will yield the same result for all. Inasmuch as the claims against Defendant

24  arise out of the same labels and are premised on the same legal theories, the predominance of

25  common questions of law and fact is clear.[5]

---

26  [5] Differences among class members concerning the amount of their individual damages, which
27  are unavoidable in class action litigation, do not prevent a suit from proceeding as a class action.
    *Blackie*, 524 F.2d at 905. Remedies, whether they be in the form of restitution or damages, can be
28  proven on a class-wide basis which is consistent with the Supreme Court's order in *Comcast
    Corp. v. Behrend*, 133 S.Ct. 1426 (2013). *See* Exhibit 4, Capps Declaration.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM      14
CASE NO. 12-CV-01722 YGR

1    As previously discussed, the overriding, cohesive force behind the putative class is the

2    identical misleading and misbranded label statements on Defendant's products. The facts, as well

3    as the law, cohere around these unlawful labels and Defendant's wrongdoing.  The predominant

4    issue is whether those labels are misbranded as alleged under California law. Defendant's label

5    statements and ingredients on a given product are the same, everywhere in the country. All

6    consumers would have seen the same labels as Plaintiffs.  Further, there are no individual reliance

7    components (individual issues) for Plaintiffs' UCL, FAL, CLRA and unjust enrichment claims.

8         **B.      UCL and FAL Claims**

9         California law is now well-settled that class-wide reliance is not required for UCL and

10   FAL claims. *See, e.g., Greenwood v. Compucredit Corp*., 2010 WL 291842 (N.D. Cal. Jan. 19,

11   2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27; *Steroid Hormone Product Cases*, 181 Cal.

12   App. 4th at 155 (Ct.App. 2nd Dist. 2010). Indeed, the *Steroid Hormone Product Cases* are

13   indistinguishable from this case. Plaintiffs' claim under the "unlawful" prong focuses directly on

14   Defendant's actions. If Defendant's labels violate the unlawful prong of the UCL, the inquiry

15   ends there and whether unnamed class members relied on the relevant statement is not an issue

16   before the Court.

17        **C.      CLRA Claim**

18        There are no individual reliance issues on the CLRA claim because class-wide reliance is

19   presumed when the misrepresentations or omissions would have been material to "reasonable

20   persons." *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156-57 (Ct.App. 2nd Dist. 2010).

21   Regualted label statements are material as a matter of California law. *See Hinojos v. Kohl's*

22   *Corp*., 718 F.3d 1098, 1106-07 (9th Cir. 2013). As the court in *Keilholtz v. Lennox Hearth*

23   *Products Inc*., 268 F.R.D. 330, 343 (N.D. Cal. 2010) held:

24        > [T]he causation required by the [CLRA] does not make plaintiffs' claims
        > unsuitable for class treatment. Causation as to each class member is commonly
25        > proved more likely than not by materiality. That showing will undoubtedly be
        > conclusive as to most of the class. As noted above, common questions
26        > predominate even if Defendant can defeat the showing of causation as to a few
        > individual class members. As long as Plaintiff can show that material
27        > misrepresentations were made to the class members, an inference of reliance
        > arises as to the entire class.
28

1  *See also, Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

2  ### D.  Restitutionary Disgorgement Can Be Proven On A Classwide Basis

3  Plaintiffs seek restitution per their UCL, FAL, CLRA, and unjust enrichment claims.

4  Plaintiffs seek damages per their CLRA claim only. Restitution and damages are not the same.

5

6  They are two distinct remedies. Restitutionary relief has two purposes: "returning money unjustly

7  taken from the class, and deterring the defendant from engaging in future violations of the law."

8  *Guido v. L'Oreal*, 2013 U.S. Dist. LEXIS 94031, at *36 (C.D. Cal. 2013); *see also Korea Supply*

9  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)

10  (the purpose of restitution is "to restore the status quo by returning to the plaintiff funds in which

11  he or she has an ownership interest."). "A court awarding restitution under the California

12  consumer protection laws has 'very broad' discretion to determine an appropriate remedy award

13  as long as it is supported by the evidence and is consistent with the purpose of restoring to the

14  plaintiff the amount that the defendant wrongfully acquired.'" *Astiana v. Kashi*, 291 F.R.D. 493,

15

16  506 (C.D.Cal.2013) (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670-71 (C.D. Cal. 2009)).

17  Because Del Monte manufactured the misbranded products and sold them to wholesalers,

18  who in turn, sold to retailers, the loss suffered (amounts paid for retail) is greater than the amount

19  of benefit received (amounts received in sale to wholesalers) Plaintiffs suggest that equity

20  supports an award of restitutionary disgorgement equal to the amounts received by Del Monte for

21  the sale of the misbranded products. Common issues predominate in the analysis of disgorgement

22  because the Court need review only the transactions between Del Monte and its wholesaler(s).

23  Whatever amount Del Monte made from those transactions equals the amount of disgorgement.

24  There are no individualized issues for the Court consider. This measure of disgorgement has

25  ample support in case law.

26  In a class action involving Elations' joint-pain product advertised as "clinically proven,"

27

28

the plaintiffs brought suit for mislabeled products under the UCL, FAL, and CLRA—just as

Plaintiffs do here.  There, as here, the plaintiff sought full restitution or disgorgement, and

defendant claimed such was insufficient at the class certification stage.  The court rejected

defendant's argument about restitution and certified the class:

> **Plaintiff seeks full restitution of the retail price or disgorgement of Elations' net profits.** (MCC Reply at 9.) Plaintiff contends that he will be able to prove the proper amount of restitution by relying on documents produced by Defendant relating to net sales, profits, costs, and the retail price of Elations. **Defendant counters that return of the full purchase price violates restitutionary principles because Elations provided some value to consumers and that value must be deducted from the price putative members paid.** Courts agree with Defendant and hold that "[w]hile Plaintiffs, should they prevail, are likely not entitled to a full refund of the purchase price, having obtained some benefit from the products purchased even if they were not as advertised, Plaintiffs may seek some amount representing the disparity between their expected and received value." *Astiana*, 291 F.R.D. at 506.  **This reduction in allowable damages, however, is not fatal to class certification.** *See Chavez*, 268 F.R.D. at 379 ("At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.") (internal quotations and citation omitted). **At this stage, the Court does not require Plaintiff to identify a comparable "clinically-proven" product which could serve to offset damages.** *See Wiener*, 255 F.R.D. at 670 (finding plaintiff sufficient alleged damages where she stated they "can be calculated by subtracting the value of the product without the claimed health benefit, a uniform value to be determined based on the evidence presented at trial, from the price the particular class member is able to prove he or she paid").

*McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, 49-50 (C.D. Cal. Jan. 13, 2014).

Just as the court in *McCrary* embraced plaintiff's restitution model based on the

defendant's net sales, profits, costs, and retail price of the product for certification, so,

respectfully, should this Court.  *See Foster Poultry Farms, Inc. v. SunTrust Bank,* 2008 U.S. Dist.

LEXIS 36595 (E.D. Cal. May 2, 2008) (holding that "net profit, [is] the generally accepted

measure for the equitable remedy of disgorgement damages"); *County of San Bernardino v.*

*Walsh*, 158 Cal.App.4th 533, 542 (2007) ("It is not essential that money be paid directly to the

recipient by the party seeking restitution.  The emphasis is on the wrongdoer's enrichment, not

the victim's loss. In particular, a person acting in conscious disregard of the rights of another

should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. Disgorgement may include a restitutionary element, but it 'may compel a defendant to surrender all money obtained through an unfair business practice . . . regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice. Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct.").

Further, restitution is not limited to the difference between what the plaintiff received versus what he or she paid. As one California appellate court stated:

> The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest. *Id.* at 1148; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2010)(restitution available under the FAL**). Restitution is, however, "broader than simply the return of money that was once in the possession of the person from whom it was taken** . . ." *Juarez v. Arcadia Financial, LTD.*, 152 Cal. App. 4th 889, 915 (2007). "Ordinarily, the measure of restitution is the amount of enrichment received ..., but as stated in Comment *e,* if the loss suffered differs from the amount of benefit received, **the measure of restitution may be more or less than the loss suffered or more or less than the enrichment**." (internal citation omitted).

*Juarez v. Arcadia Financial, LTD.*, 152 Cal. App. 4th 889, 915 (2007) (emphasis added).

California law is consistent with Comment "e" to the Restatement of Restitution:

> **In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust. In such cases, the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched.**

Rest., Restitution, § 1, Com. e, p. 14 (emphasis added). The Ninth Circuit agrees:

> As the Ninth Circuit explained in *Figgie*, once a defendant is found liable for deceptive acts or practices [w]e would not limit their recovery to the difference between what they paid and a fair price for [the product]. The seller's misrepresentations tainted the customers' purchasing decisions. If they had been told the truth, perhaps they would not have bought [the product] at all or only some.

*FTC v. Publrs. Bus. Servs.*, 2013 U.S. Dist. LEXIS 19336 at *34 (9th Cir. 2013)(citing *FTC v.*

*Figgie Int'l*, 994 F.2d 595, 606-607 (9th Cir. Cal. 1993)).

### E.     Damages And Comcast

Plaintiffs seek damages per their CLRA claim. In *Comcast*, the United States Supreme Court stated that a "plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013). Thus, a plaintiff may not offer a damages model based on, say, a fraud analysis in a simple breach of contract case. Fraud damages do not flow from simple breach of contract. *Comcast* stands for nothing greater or lesser than that. In the present context, Plaintiffs' damages models are viable models that calculate damages that would flow directly from Plaintiffs' CLRA claims. Therefore, Plaintiffs' damages models as discussed in Dr. Capps' declaration are fully compliant with *Comcast*.

In *In re: Cathode Ray Tube (CRT) Antitrust Litig*., 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013), Judge Conti discussed *Comcast* and the role of a damages expert at the class certification stage:

> Courts "have never required a precise mathematical calculation of damages before deeming a class worthy of certification." *In re Scrap Metal Antitrust Litig*., 527 F.3d 517, 535 (6th Cir.2008); *see also LCDs*, 267 F.R.D. at 606 (*quoting* SRAM, 2008 U.S. Dist. LEXIS 107523, 2008 WL 447592, at *6 ("In price-fixing cases, '[p]laintiffs are not required to supply a precise damage formula at the certification stage.")). Thus, the fact that Dr. Netz did not actually calculate the "but-for" prices paid by consumers using any one of her methodologies is not dispositive of plaintiffs' motion for certification. This conclusion is not precluded by the Supreme Court's recent *Comcast* decision. Indeed, *Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage. Instead, it merely rejected plaintiffs' expert's damage model, which addressed impact based on four impact theories, because the expert had not isolated damages resulting from the single theory of antitrust impact that the district court had accepted. *Comcast*, 133 S.Ct. at 1431. The Supreme Court held that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory."

*Id.*, at pp.137-38. Other courts agree. For example, in *In re High-Tech Employee Antitrust Litig*., 289 F.R.D. 555, 2013 WL 1352016, *28-29 (N.D. Cal April 5, 2013), after discussing the

*Comcast* decision, the court did not require plaintiffs' expert to have performed a damage calculation at the class certification stage.  In fact, the court granted class certification despite the fact that plaintiffs' expert only proposed a "plausible" model for calculating damages. *Id*. (quoting *Comcast*, 133 S.Ct. at 1426 for proposition that damages "[c]alculations need not be exact, but at the class-certification stage (as at trial) any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation").

  As other courts have recognized, "[T]he issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of damages through generalized proof." *EPDM*, 256 F.R.D. at 100. Plaintiffs are not required to "prove the merits of their case-in-chief at the class certification stage. They need not demonstrate that their multiple regression analysis captures all the proper variables and thus reaches the 'right' answer, as the defendants would require them to.... It is unnecessary to delve further into the merits by going point-by-point through each expert's theory to decide who has designed the 'better' multiple regression equation." *Id*. at 101.

**F. The Subject Products Are Legally Worthless Entitling Plaintiffs To A Damages Award Equal To The Purchase Price**

  Defendant's sale of misbranded foods is a violation of criminal law—implicating Plaintiffs (at their own expense, no less) with violation of that criminal law. In another food misbranding case, Judge Grewal held that:

> The fact remains, however, that in California, "[i]t is unlawful for any person to…hold or offer for sale any food that is misbranded," and the statute establishing that is subject to the punishments described above.  That means that Plaintiffs could, in fact, be arrested and prosecuted for unlawful possession of misbranded goods.

*Park v. Welch Foods, Inc*., 2014 U.S. Dist. LEXIS 37796, 5-6 (N.D. Cal. Mar. 21, 2014).

Valuation is not even an issue in this case—Defendant sold the Plaintiff a product that was illegal

to sell or possess.  No reasonable consumer would select a specific tomato, vegetable, or fruit product over another (at a premium price, no less) for the knowing privilege of committing a criminal act—not when merely selecting the one right next to it without the misbranding would avoid that risk entirely. Yet, that's precisely what happened here.  There is no re-sale of these misbranded products, nor reasonable market for them, because they cannot be legally sold or possessed, let alone re-sold.  Full refund of the entire purchase price is, respectfully, the only viable option. "In this case [the plaintiff] does not put valuation at issue when he alleges that he bought a product that was illegal to sell or possess. *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 159-160 (Cal. App. 2d Dist. 2010).  Assuming the Court rejects Plaintiffs' proposed, expert methodologies as even "plausible," the fact remains, as it did in *Steroid Hormone Products*, that valuation is not at issue in a case where, as here, the Plaintiff is sold an illegal product that was and is worthless. Using such a metric, individual issues do not come into play. Even if there were individual issues, they do not predominate over common issues.

### G.    Defendant cannot escape liability for restitution or damages by hiding behind a middleman

Upon information and belief, Defendant sells its products to wholesalers/distributors who, in turn, sell to retailers who, in turn, sell to Plaintiffs and class members. Merely because Defendant does not set the retail prices that class members pay does not mean there can be no workable classwide damages model. In *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 65 Cal. Rptr. 3d 634 (2007), plaintiff purchased wireless computer router products built by Microsoft Corp. These products contained statements on their packaging indicating that they were capable of wireless data transmission of either 11 Megabits per second or 54 Megabits per second, although the packaging did not reveal that the actual transmission speeds of these products were lower. Plaintiff brought suit for himself and other similar consumers under the unfair competition statute and related statutes based on these alleged false advertisements and misrepresentations,

seeking, among other remedies, restitution under the unfair competition statute. Microsoft moved to strike the claim for restitution on the basis that the California Supreme Court had stated in *Korea Supply* that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." Because plaintiff had purchased through a retailer, rather than directly from Microsoft, Microsoft argued that recovery of revenue it derived from the sale of the wireless products would not be restitutionary as the revenue was not derived *directly* from plaintiff and the members of his class. The trial court agreed and struck the claim for restitution. Plaintiff filed a petition for writ of mandate.

The appellate court granted the writ and ordered the trial court to reinstate the restitution claim. The court concluded that the trial court had read the Supreme Court's statement in *Korea Supply* too broadly, and that the proper lesson to be learned from that case was that "restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it" (154 Cal. App. 4th 1491, 1497). However, the Court of Appeal read nothing in that case to suggest that consumers would be precluded from seeking the return of money that they paid for a product that was not as represented by the manufacturer. The court noted that plaintiff and other members of the putative class clearly had held an ownership interest in the money sought to be recovered, even though the products were purchased from a retailer rather than directly from Microsoft. *Id*. at 1491, 1498-1500.

### H.     In The Alternative, The Court Can Certify A Class For Nominal Damages

A person may recover nominal damages when a breach of duty has caused no appreciable detriment to him or her.  Cal. Civ. Code § 3360. Courts allow the recovery of nominal damages in only limited circumstances. First, they may be recovered if no loss or injury has resulted from an act but the law recognizes a technical invasion of a plaintiff's rights or a breach of duty by a

defendant. *Avina v. Spurlock*, 28 Cal. App. 3d 1086, 1088, 105 Cal. Rptr.198 (1972). In this circumstance, the award of nominal damages compensates for the invasion of the right and, therefore, constitutes a recognition of that right and an admonition that it cannot be invaded with impunity, see *Kluge v. O'Gara* (1964) 227 Cal. App. 2d 207, 210, 38 Cal. Rptr. 607; *Siminoff v. Jas. H. Goodman & Co. Bank* (1912) 18 Cal. App. 5, 15, 121 P. 939].

The second circumstance in which nominal damages may be recovered is if real, actual injury has occurred and damages have been suffered, but the extent and amount of the injury and damages cannot be determined from the evidence presented. *Avina*, 28 Cal. App. 3d at 1088; *see also ProMex, LLC v. Hernandez*, 781 F.Supp. 2d 1013, 1019 (C.D. Cal. 2011) (holding plaintiff entitled to recover nominal damages where there was a legal wrong without appreciable damages). In an appropriate case, punitive damages may be awarded in addition to nominal damages of this type since actual damages are shown. *Kluge v. O'Gara*, 227 Cal. App. 2d 207, 210, 38 Cal. Rptr. 607 (1964).

Further, if a judgment awarding nominal damages would entitle the prevailing party to an award of costs, the failure to award nominal damages can constitute reversible error. *Sweet v. Johnson*, 169 Cal. App. 2d 630, 633, 337 P.2d 499 (1959); *cf. Staples v. Hoefke* (1987) 189 Cal. App. 3d 1397, 1406, 235 Cal. Rptr. 165 (1987) (failure to award nominal damages not reversible when costs award would be discretionary under Code Civ. Proc. § 1032(d))]. Moreover, if the object of the action is to determine some question of permanent right, the fact that a party can only recover nominal damages will not prevent a reversal. *Sweet v. Johnson* (1959) 169 Cal. App. 2d 630, 633, 337 P.2d 499]. Thus, the plain legal wrong committed by Defendant allows the recovery of nominal damages.

Similarly, because the CLRA expressly provides for minimum statutory damages that all Class members would be entitled to, damages can be determined on a classwide basis. As recently

held by Judge Alsup in *Pickman v. Am. Express Co.*, 2012 U.S. Dist. LEXIS 9662 at *6, 2012

WL 258842 (N.D. Cal. Jan. 27, 2012), the CLRA provides for minimum statutory penalties of

$1000 per violation:

> Plaintiff seeks relief on behalf of a putative class — members of the California public who are American Express cardholders. The amount in controversy is satisfied by multiplying the minimum amount of damages to be sought under the CLRA ($1,000) by the number of alleged violations (5,001). …Plaintiff counters that her claim is not an attempted class action so that the amount in controversy is a mere $8,000 — the minimum amount of damages allowable under the CLRA multiplied by the number of statutory violations. Yet if plaintiff is seeking relief on behalf of others, as she purports to do, she fails to take into account the damages of other cardholders or callers.

Such statutory damages are automatically awarded once liability is established and thus

individualized determinations are unnecessary.

## I.      Class Action Is Superior

The test for superiority of the class action mechanism merely requires "determination of

whether the objectives of the particular class action procedure will be achieved in the particular

case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute

resolution." *Hanlon*, 150 F.3d at 1023, *citing* 7A Wright & Miller, Federal Practice and Procedure

§ 1779 (2d ed. 1986). *See also Lymburner v. U.S. Fin. Funds, Inc*., 263 F.R.D. 534 (N.D. Cal.

2010); *Greenwood*, 2010 WL 291842 (N.D. Cal. Jan. 19, 2010).

### 1.      Class Members Have No Interest In Pursing Individual Litigation

The first factor to be considered is the interest of each class member in "individually

controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Here, as

in *Hanlon*, the alternative mechanism would be individual claims for relatively small amounts of

damages, literally a few dollars per transaction. Bringing individual claims would not only burden

the court system that would be deciding the same legal issues in a number of small cases, but

would also not make economic sense for litigants or lawyers. It is clear that in many, if not most,

individual cases, "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023; *see

also Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (9th Cir. 2001).

### 2.      There Are No Other Actions Pending

The second factor to be considered, "the extent and nature of any litigation concerning the controversy already commenced," Fed. R. Civ. P. 23(b)(3)(B), by members of the class, also supports proceeding with certification in this action. Plaintiffs are not aware of any other individual or class litigation concerning the claims alleged in this case on behalf of the class.

### 3.   This Court Is the Appropriate Forum For This Litigation

The third factor, the desirability of concentrating the litigation in this forum, equally supports superiority of maintaining this class action.  There are currently other cases pending in the Northern District of California where the courts are familiar with the legal issues involving misbranding.  Moreover, Plaintiffs reside in this forum and Defendant's headquarters is located in California.

### 4.   There Are No Manageability Issues

Prosecution of the claims of the putative class members in a single class action would not create more management problems than the alternative (*i.e.*, the prosecution of hundreds or thousands of separate lawsuits by each class member). Significantly, it is proper for a court, in deciding the "best" available method, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

A determination that one label is misbranded is a determination that all such labels are misbranded. Moreover, it is well accepted that "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also Menagerie Productions v. Citysearch*, CV 08-4263 CASFMO, 2009 WL 3770668, at *16 (C.D. Cal. Nov. 9, 2009) (*citing Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 495-96 (C.D. Cal. 2006)).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to certify this case as a class action, appoint him as class representative, and appoint class counsel.

1

Dated:  May 6, 2014.

Respectfully submitted,

2

3

*s/ Brian Herrington*
Brian Herrington (*pro hac vice*)
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square N.
Lexington, MS 39095
(662) 834-2488
bherrington@barrettlawgroup.com

4

5

6

7

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
(408) 429-6506

8

9

10

pgore@prattattorneys.com *Attorneys for Plaintiff*

11

**CERTIFICATE OF SERVICE**

12

I, Brian Herrington, hereby certify that a true and complete copy of the foregoing was

13

served to all counsel of record via the ECF filing system on May 6, 2014.

14

15

*/s/  Brian Herrington*
Brian Herrington

16

17

18

19

20

21

22

23

24

25

26

27

28