1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
3  LISA A. WONGCHENKO (CA SBN 281782)
   LWongchenko@mofo.com
4  ALEXANDRA LAKS (CA SBN 291861)
   ALaks@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  Attorneys for Defendant
   DEL MONTE FOODS, INC.
9

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          OAKLAND DIVISION

14

15  MICHAEL KOSTA and STEVE BATES,          Case No. CV12-01722-YGR
    individuals, on their own behalf and on behalf of
16  all others similarly situated,          **DEFENDANT DEL MONTE FOODS,
                                            INC.'S OPPOSITION TO
17                    Plaintiffs,            PLAINTIFFS' MOTION FOR CLASS
                                            CERTIFICATION, FOR
18          v.                              APPOINTMENT OF CLASS
                                            REPRESENTATIVE, AND FOR
19  DEL MONTE FOODS, INC.,                   APPOINTMENT OF CLASS
                                            COUNSEL**
20                    Defendant.
                                            Hearing Date:   February 10, 2015
21                                          Time:           2:00 p.m.
                                            Judge:          Hon. Gonzalez Rogers
22                                          Action Filed:   April 5, 2012

23

24

25

26

27

28

DEL MONTE'S OPPOSITION TO CLASS CERTIFICATION
CASE NO. CV12-01722-YGR
sf-3479771

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

STATEMENT OF THE ISSUES TO BE DECIDED..................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.      INTRODUCTION ........................................................................................................1

II.     THE LEGAL STANDARD ...........................................................................................2

III.    ARGUMENT ...............................................................................................................2

    A.      Plaintiffs Lack Standing and Are Not "Typical." ...............................................2

    B.      Plaintiffs Have Not Shown "Ascertainability." ..................................................5

        1.      The Absence of Consumer Records and Variations in
                Labeling Preclude a Finding of Ascertainability. ......................................5

        2.      The Class Includes Consumers Who Did Not Rely or Were
                Not Misled.................................................................................................8

    C.      "Commonality" And "Predominance" Are Lacking as to Liability......................9

        1.      There is No Common Evidence of "Exposure." .........................................9

            a.      The Challenged Statements Have No Single
                    Meaning. ..........................................................................................9

            b.      Materiality, Causation, and Reliance Raise
                    Individual Issues............................................................................10

        2.      Plaintiffs' "Unlawful" Theory Raises Myriad Individual
                Issues.......................................................................................................14

        3.      The Actual Evidence, Unrebutted, Refutes Materiality and
                Deception. ...............................................................................................15

    D.      Plaintiffs Cannot Show Classwide Entitlement to Monetary Relief....................16

        1.      Judges Koh, Whyte, and Breyer Have Rejected Dr. Capps'
                Models......................................................................................................16

        2.      Plaintiffs' Three Damages Models Are All Deeply Flawed. ....................18

            a.      "Disgorgement" Is Not Permitted as a Matter of
                    Law..................................................................................................18

            b.      "Full Refund" Is Not Permitted as a Matter of Law. ...................18

            c.      Dr. Capps' Failure to Perform His Regressions is
                    Fatal...............................................................................................19

            d.      Dr. Capps' Regression Model Suffers From The
                    Same Flaws That Judge Koh Identified in *Brazil III*. .................19

        3.      Dr. Capps' Models Violate *Duran v. U.S. Bank*. ....................................23

        4.      Plaintiffs' "Nominal Damages" Theory Also Fails. .................................23

    E.      The Court Should Deny Plaintiffs' "Rule 23(b)(2)" Injunction
            Class.......................................................................................................................24

IV.     CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) ................................................................................... 5, 24, 25

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. 10-cv-04387 PJH, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ............... 16, 21

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ............................................................................................ 2, 9

*Brazil v. Dole Food Co.*,
  No. 12-cv-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ............................... 14

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-cv-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ("*Brazil I*") ........ 17, 19

*Brazil, v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 WL 2738179 (N.D. Cal. June 16, 2014) ("*Brazil II*") ........... 17

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ("*Brazil III*") .... *passim*

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 WL 6893715 (N.D. Cal. Dec. 8, 2014) ("*Brazil IV*") ............ 17

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831-LHK, 2014 WL 6901867 (N.D. Cal. Dec. 8, 2014) ("*Brazil V*") ............. 12

*Brewer v. Gen. Nutrition Corp.*,
  No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) ................................... 3

*Bruton v. Gerber Prods. Co.*,
  No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ................................... 14

*Bruton v. Gerber Prods.Co.*,
  No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 86581 (N.D. Cal. June 23, 2014) ........... 6, 8

*Caldera v. J.M. Smucker Co.*,
  No. CV 12-4936-GHK, 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15, 2014) ............... 21

*Caro v. Procter & Gamble Co.*,
  18 Cal. App. 4th 644 (1993) ............................................................................................... 13

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ................................................................................................. 5

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
　　169 F. Supp. 2d 1119 (N.D. Cal. 2000) ................................................................. 14

*Colgan v. Leatherman Tool Grp., Inc.*,
　　135 Cal. App. 4th 663 (2006) ................................................................................. 18

*Comcast Corp. v. Behrend*,
　　133 S. Ct. 1426 (2013) ................................................................................... *passim*

*Diacakis v. Comcast Corp.*,
　　No. 11-3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2012) ........................... 9

*Duran v. U.S. Bank Nat'l Ass'n*,
　　59 Cal. 4th 1 (2014) ............................................................................................... 23

*Ellis v. Costco Wholesale Corp.*,
　　657 F.3d 970 (9th Cir. 2011).................................................................................... 2

*Fairbanks v. Farmers New World Life Ins. Co.*,
　　197 Cal. App. 4th 544 (2011) ............................................................................... 11

*Faulk v. Sears Roebuck & Co.*,
　　No. 11-CV-02159 YGR, 2013 U.S. Dist. LEXIS 57430 (N.D. Cal. Apr. 19, 2013) ....... *passim*

*Figy v. Amy's Kitchen*,
　　No. CV 13-03816 SI, 2013 U.S. Dist. LEXIS 167723 (N.D. Cal. Nov. 25, 2013) ............... 14

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
　　No. 13-CV-05222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ................... 25

*Gitson v. Trader Joe's Co.*,
　　No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 (N.D. Cal. Oct. 4, 2013).............. 13

*Gonzalez v. Proctor & Gamble Co.*,
　　247 F.R.D. 616 (S.D. Cal. 2007)............................................................................ 13

*Halvorson v. Auto-Owners Ins. Co.*,
　　718 F.3d 773 (8th Cir. 2013)................................................................................. 23

*Haskell v. Time, Inc.*,
　　965 F. Supp. 1398 (E.D. Cal. 1997)....................................................................... 14

*Heighley v. J.C. Penney Life Ins. Co.*,
　　257 F. Supp. 2d 1241 (C.D. Cal. 2003) ................................................................. 14

*Hinojos v. Kohl's Corp.*,
　　718 F.3d 1098 (9th Cir. 2013)................................................................................ 12

*Hodes v. Van's Int'l Foods*,
　　No. CV 09-1530 RGK, 2009 WL 2424214 (C.D. Cal. July 23, 2009).............. 5, 11

*In re Actimmune Mkt. Litig.*,
   No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1, 2010),
   *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ................................................................ 14

*In re Clorox Consumer Litig.*,
   301 F.R.D. 436 (N.D. Cal. 2014) ........................................................................... 5

*In re POM Wonderful LLC*,
   No. 10–2199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................. 5

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ................................................................................ 13

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .................................................................................... 10, 13

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ................................................................................ 13

*Jones v. Conagra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) ......... *passim*

*Jou v. Kimberly-Clark Inc.*,
   No. C-13-3075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ...................... 25

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) ................................................................ 13

*Kane v. Chobani, Inc.*,
   No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ...................... 14

*Karhu v. Vital Pharm., Inc.*,
   No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014) ............................. 5

*Kotteras v. Whole Foods Mkt., Inc.*,
   281 F.R.D. 16 (D.D.C. 2012) ................................................................. 17, 19, 23

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................... 18

*Lanovaz v. Twinings N. Am., Inc.*,
   No. 12-cv-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014)............. 16, 17, 18, 19

*Mahfood v. QVC, Inc.*,
   No. SACV 06-0659-AG(ANx), 2008 WL 5381088 (C.D. Cal. Sept. 22, 2008) ................... 11

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012).............................................................................. 2, 19

*McCrary v. Elations Co.*,
No. EDCV 13-00242 JGB (OPx),
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ....................................................... 18

*Meister v. Mensinger*,
230 Cal. App. 4th 381 (2014) .............................................................................................. 18

*Moheb v. Nutramax Labs. Inc.*,
No. 12-3633, 2012 WL 6951904 (C.D. Cal. Sept. 4, 2012) ..................................................... 9

*Morgan v. Wallaby Yogurt Co.*,
No. 13-CV-00296-WHO, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ............................. 25

*NBL Flooring, Inc. v. Trumbull Ins. Co.*,
No. 10-4398, 2014 WL 615967 (E.D. Pa. Feb. 12, 2014) ..................................................... 24

*Ogden v. Bumble Bee Foods, LLC*,
No. 5:12-CV-01828, LHK, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014)..... 14, 17, 18

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006)................................................................................................... 8

*Pardini v. Unilever U.S., Inc.*,
961 F. Supp. 2d 1048 (N.D. Cal. 2013) ............................................................................... 14

*Rahman v. Mott's LLP*,
No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ............................... *passim*

*Red v. Kraft Foods, Inc.*,
No. CV 10-1028-GW, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012)...................................... 5

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003).................................................................................................. 4

*Samet v. Procter & Gamble Co.*,
No. 5:12-cv-01891-PSG, 2013 WL 6491143 (N.D. Cal. Dec. 10, 2013) ............................. 15

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................................... 9

*Sethavanish v. ZonePerfect Nutrition Co.*,
No. 12-2907-SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ............................................... 5

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011).......................................................................................... 9, 13

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .................................................................................................... 2, 24

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013)........................................................................... 24

*Webb v. Carter's, Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) ................................................................... 13

*Weiner v. Snapple Beverage Corp.*,
   No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)................................... 5

*Werdebaugh v. Blue Diamond Growers*,
   No. 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014).......................... 17, 21

*Wilens v. TD Waterhouse Grp., Inc.*,
   120 Cal. App. 4th 746 (2003) ......................................................................... 24

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ........................................................ 14

*Xavier v. Philip Morris USA, Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......................................................... 5

## STATEMENT OF THE ISSUES TO BE DECIDED

Plaintiffs' motion raises the following six issues:

1. **Standing/typicality.**  Do Plaintiffs have standing/typicality given that they repudiate in their depositions the key averments of the Complaint?

2. **Ascertainability.**  Have Plaintiffs shown "by a preponderance of the evidence" that their class is ascertainable where there are no records to identify consumer purchases, and where there are significant product and label variations such that a majority of the labels are non-actionable?

3. **Commonality and Predominance as to Liability.**  Have Plaintiffs shown "by a preponderance of the evidence" that they can prove their claims by common evidence and that common questions predominate where (i) there were material differences in the challenged labels throughout the class period, (ii) Plaintiffs' theory of deception raises individual issues of reliance and materiality, (iii) Plaintiffs ascribe differing meanings to the allegedly misleading label terms, and (iv) Del Monte's unrebutted consumer survey evidence refutes classwide evidence of materiality and deception?

4. **Commonality and Predominance as to Damages.**  Have Plaintiffs shown "by a preponderance of the evidence" that damages can be proven on a classwide basis where they rely on a five-time discredited damages expert who offers no damages model consistent with *Comcast v. Behrend*?

5. **Rule 23(b)(2) Class.**  Have Plaintiffs shown "by a preponderance of the evidence" that their purported "injunctive relief" class can be certified where their monetary damages claims are not "merely incidental" to their injunctive relief remedy and Plaintiffs fail to adequately allege future injury?

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3

Class counsel is prosecuting 48 food misbranding class action cases in this District.

4

Denying class certification would put this Court in good company.

5

This is Plaintiffs' second class certification motion.  The first time, they narrowed their

6

claims the morning of the hearing, which caused a misfit between theory and evidence.  The

7

Court said they needed to present "a clearer evidentiary record addressed to [their] more limited

8

set of claims."  That hasn't happened.  Instead, Plaintiffs have largely refiled their old brief.  If

9

anything, the gulf has widened between Plaintiffs' reach and their evidence.

10

Plaintiffs define the class as all purchasers of the challenged products.  Their motion

11

hinges on the contention that all Del Monte labels are the same.  There is just one problem.  They

12

are not.  Plaintiffs' narrowed claims now span two theories: (i) Fruit products that are allegedly

13

misbranded because they have a "Must be refrigerated" or "Refrigerate for quality" statement,

14

and (ii) canned tomato products that are allegedly misbranded because they say "Natural Source

15

of Antioxidants," "Natural Source of Vitamins A & C and Lycopene, a powerful antioxidant,"

16

and "No artificial flavors or preservatives."  But this is simply theory.  What about evidence?

17

Of the 48 fruit product labels, 29 are found on products that are not shelf-stable and

18

therefore require refrigeration.  Thus, 60% of the fruit product labels are non-actionable even by

19

Plaintiffs' reckoning.  As for the 61 tomato product labels, 72% do not have an antioxidant "flag"

20

on their front label, 47% do not contain "high fructose corn syrup," and one entire product line

21

(tomato sauce) never contained calcium chloride.  Purchase alone does not equal "exposure."

22

Facts matter.  Without classwide proof of exposure, ascertainability is lacking.  And

23

without "exposure," there can be no classwide reliance, materiality, causation, or damage.

24

There is more.  Judge Koh denied certification on "ascertainability" grounds in class

25

counsel's case called *Bruton v. Gerber*.  The same disabilities arise here.  Judges Whyte, Breyer,

26

and Koh denied certification in class counsel's cases against Twinings, Conagra, and Bumble Bee

27

because their damages expert, Dr. Oral Capps, was incapable of presenting a *Comcast*-compliant

28

damages model.  Then, a few weeks ago, Judge Koh decertified the damages class in *Brazil v.*

1    *Dole* that she had initially certified, also because Dr. Capps' model was found wanting.

2    Plaintiffs' moving papers reveal none of this.  Yet, they offer the same damages model here.

3         The same flaws in those cases are evident here, and then some.  As in *Faulk v. Sears*

4    *Roebuck & Co.*, No. 11-CV-02159 YGR, 2013 U.S. Dist. LEXIS 57430 (N.D. Cal. Apr. 19,

5    2013), reliance and materiality pose individual issues and, consequently, preclude "commonality"

6    and "predominance."  Finally, an injunction class under Rule 2(b)(2) is precluded because this

7    action is primarily about money and not injunction, and because Plaintiffs say they will not

8    purchase Del Monte products again, which means they lack Article III standing.

9         For all of the foregoing reasons, this Court should deny Plaintiffs' motion.

10   **II.   THE LEGAL STANDARD**

11        "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine

12   whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am.*

13   *Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).  That will

14   frequently "entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*

15   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d

16   970, 980 (9th Cir. 2011).  The party seeking class certification bears the burden of affirmatively

17   demonstrating that the class meets the requirements of Fed. R. Civ. P. 23.  *Wal-Mart*, 131 S. Ct.

18   at 2551.  Plaintiffs must do more than identify common *questions*; they must show that litigation

19   will produce a classwide *answer* to the common question.  *Id.*  Courts may certify a class under

20   Rule 23(b)(3) only if there is "evidentiary proof" showing a classwide method of awarding relief

21   that is consistent with the plaintiff's theory of liability.  *Comcast Corp. v. Behrend*, 133 S. Ct.

22   1426, 1432 (2013).

23   **III.   ARGUMENT**

24        **A.   Plaintiffs Lack Standing and Are Not "Typical."**

25        Rule 23(a)(2) requires that Plaintiffs "suffer the same injury as the class members." *Wal-*

26   *Mart*, 131 S. Ct. at 2550-51.  A class representative must be part of the class he represents.

27   *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).  That can't happen here.

28   In deposition, Plaintiffs denied they were "exposed" to many of the offending statements and

1  deny also that they relied, thereby repudiating key averments of the Consolidated Complaint, Dkt.

2  No. 96 ("Compl.").

3       This happened before.  In another of class counsel's cases, plaintiff attacked the same

4  label statement on Hunt's canned tomatoes:  "Free of artificial flavors and preservatives."

5  *Jones v. Conagra Foods, Inc.*, No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292, at *4 (N.D.

6  Cal. June 13, 2014).  *Jones* also challenged the antioxidant statement on Swiss Miss hot cocoa.

7  But the Swiss Miss class representative testified that she did not find the label statement, "natural

8  antioxidants are found in cocoa," to be misleading, hence Judge Breyer found that she lacked

9  standing.  *Id.*, at *23-24.

10       Likewise, in *Faulk*, the named plaintiff's deposition testimony "cast doubt on whether

11  Faulk himself found the alleged omissions material," further suggesting that materiality might not

12  be capable of determination by common proof.  2013 U.S. Dist. LEXIS 57430, at *30.  Other

13  cases concur.  *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695, at

14  *12 (N.D. Cal. Nov. 12, 2014) (deposition testimony demonstrated variety of purchase behavior

15  and raised individual issues); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at

16  *6 (N.D. Cal. Oct. 15, 2014).

17       The same disconnect between theory and fact is present here.  Plaintiffs challenge two

18  product categories, canned tomato products and fruit products, the latter appearing under the Fruit

19  Naturals® and SunFresh® labels.  (*See* Order Granting Stipulation Narrowing Scope of Claims,

20  2:1-5 (Dkt. No. 156).)  For tomatoes, they challenge the statements "Natural Source of

21  Antioxidants,"[1] "Natural Source of Vitamins A & C and Lycopene, a powerful antioxidant, "and

22  "No artificial flavors or preservatives."   For fruit, they challenge "Must be Refrigerated" and

23  "Refrigerate for Quality" as well as "conduct" relating to the refrigeration of the products.  (*Id.*,

24

25       [1]This statement appears on the front label as a "blue flag" on just seven of 16 flavors of diced tomato labels, three of five stewed tomato flavors, and none of the three tomato sauce

26  flavors.  (Declaration of Liam Farrell in Support of Defendant Del Monte Foods,  Inc.'s Opposition To Plaintiffs' Motion For Class Certification, For Appointment Of Class Representative, And For Appointment Of Class Counsel ("Farrell Decl.") ¶ 8.) This means that

27  for 14 of the 24 tomato flavors sold during the class period—close to 60% of the tomato products

28  in issue—the offending statement appears inconspicuously only on the back label.

2:5-12.)  Plaintiffs allege they "read and relied" on these statements and "would likely not have purchased…had they known the products were misbranded."  (Plaintiffs' Motion for Class Certification, for Appointment of Class Representatives, and for Appointment of Class Counsel ("Mot."), 3:4-6 (Dkt. No. 174).)  Their depositions, however, tell a different story:

- **Antioxidants.**  Mr. Kosta could not say if he saw either antioxidant statement prior to purchase.  (Deposition of Michael Kosta ("Kosta Dep."), 64:16-25, 50:12-20.)  Mr. Bates never saw the back-panel statement.  (Deposition of Steven Bates ("Bates Dep."), 12:20-25.)[2]  Mr. Bates could not say that the presence or absence of the antioxidant statements would have changed his purchase decision.  (Bates Dep., 39:23-41:1.)

- **Refrigeration.**  Neither Plaintiff read the refrigeration statements on the fruit products.  (Kosta Dep., 146:9-14; Bates Dep., 124:1-3, 208:14-16.)  Mr. Bates believed the SunFresh® products were not sold in the refrigerated section of the store.  (Bates Dep., 208:14-16.)

- **"No artificial flavors or preservatives" statement**:  Mr. Bates did not see these statements and did not think they were misleading.  (Bates Dep., 12:7-13.)  Mr. Kosta wasn't sure.  (Kosta Dep., 79:6-22.)

You can't rely on something you didn't see.  *See Rice v. Fox Broad. Co*., 330 F.3d 1170, 1181-82 (9th Cir. 2003) (product statement that plaintiff did not see until after purchase cannot be material.  Plaintiffs may as well sue Del Monte over a puddle in which they *didn't* slip and fall.[3]

Moreover, the Complaint alleges that the antioxidant statements amount to a representation that the products contained 10% of the recommended daily intake.  (Compl. ¶ 144.)  Plaintiffs beg to differ.  Mr. Bates offered four *other* meanings (Bates Dep., 21:5-17, 27:7-12, 32:1-7, 33:23-34:5) while Mr. Kosta thought it meant the products contained the entire

---

[2]The cited pages to Mr. Kosta's and Mr. Bates' depositions are attached Exhibits A and B, respectively, to the Declaration of Lisa A. Wongchenko.

[3]Even though the "website" claims that neither Plaintiff read were dropped, Plaintiffs continue to mutter about Del Monte's website.  (*Cf.* Mot., 2:28.)

1   RDI for antioxidants or had "significantly more" lycopene than other products.  (Kosta Dep.,

2   51:7-11, 57:19-24, 71:22-72:10.)  As for preservatives, Mr. Kosta offered the illogical meaning

3   that "no artificial flavors or preservatives" meant canned tomatoes were "fresh."  (*Id.*, 16:9-14.)

4   With regard to refrigeration, Mr. Bates cared only about the word "Fresh" in the brand name

5   SunFresh® and *not* the refrigeration statement or the attendant "conduct."  (Bates Dep., 88:4-9.)

6        This discrepancy robs Plaintiffs of standing.  Alternatively, the Court could treat this as

7   lack of typicality, as Judge Breyer did.  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *23-24.

8        **B.    Plaintiffs Have Not Shown "Ascertainability."**

9        "[T]he party seeking certification must demonstrate that an identifiable and ascertainable

10  class exists."  *Xavier v. Philip Morris USA, Inc*., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *In*

11  *re Clorox Consumer Litig.*, 301 F.R.D. 436, 440 (N.D. Cal. 2014).  Class members must be

12  identifiable by objective criteria "without extensive and individualized fact-finding or mini-

13  trials."  *Carrera v. Bayer Corp*., 727 F.3d 300, 303-04 (3d Cir. 2013) (quotation marks omitted).

14       Plaintiffs contend that all Del Monte products "bear[] the same unlawful statements"

15  (Mot., 6:3-7; 5:9-12), hence, the class is ascertainable because it is defined as all persons who

16  purchased one of the challenged tomato or fruit products.  (*Id.*, 4:24-5:15.)  They are mistaken.

17            **1.    The Absence of Consumer Records and Variations in Labeling**
                      **Preclude a Finding of Ascertainability.**
18

19       First, no one knows who the purchasers are.  Many courts, citing *Carrera*, deny

20  certification where the defendant is a wholesale manufacturer with no records to identify

21  purchasers.  For these courts, self-identification by affidavit won't work.  *Jones*, 2014 U.S. Dist.

22  LEXIS 81292, at *35-36; *accord Clorox*, 301 F.R.D. at 441; *Xavier*, 787 F. Supp. 2d at 1089.[4]

23       ---

24          [4]*See also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 456 (S.D. Cal. 2014) ("[c]ases
        where self-identification alone has been deemed sufficient generally involve situations where
        consumers are likely to retain receipts"); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx),
25      2012 WL 8019257, at *5-6 (C.D. Cal. Apr. 12, 2012); *Sethavanish v. ZonePerfect Nutrition Co.*,
        No. 12-2907-SC, 2014 WL 580696, at *5 (N.D. Cal. Feb. 13, 2014) ("Court finds the reasoning
26      of *Carrera* and *Xavier* more persuasive"); *In re POM Wonderful LLC*, No. 10-2199, 2014 WL
        1225184, at *6 (C.D. Cal. Mar. 25, 2014); *Hodes v. Van's Int'l Foods*, No. CV 09-1530 RGK
27      (FFMx), 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009); *Weiner v. Snapple Beverage Corp.*,
        No. 07 Civ. 8742 (DLC), 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010); *Karhu v. Vital*
28      *Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014).

1     Del Monte does not have records of consumer purchasers.  (Farrell Decl. ¶ 19.)  Mr. Bates

2     kept no receipts back to 2008.  (Bates Dep., 174:7-25.)  It is highly unlikely anyone else did.

3         <u>Second</u>, even courts that accept "self-identification by affidavit" will deny class

4     certification on ascertainability grounds if class members are required to recall more than just "I

5     bought."  In *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS

6     86581 (N.D. Cal. June 23, 2014), for example, plaintiffs bought eight Gerber baby food products

7     whose labels changed during the class period, but sought to certify a class of purchasers of 69

8     products.  The court denied certification.  It is too much to expect class members to remember the

9     product packaging, whether the purchase was one of the qualifying flavors, and whether the label

10    contained a challenged statement versus something benign.  *Id.*, at *25-28.

11        The same patchwork exists here.  For fruit products, Plaintiffs insist that all "refrigeration"

12    statements on FruitNaturals® and SunFresh® products are misbranded because these products are

13    shelf-stable and need no refrigeration.  (Mot., 2:9-25.)  They are wrong.  Fifteen of the 25

14    representative FruitNaturals® labels (60%) and 14 of the 23 SunFresh® labels (60%) are packaged

15    in Mexico and are not shelf-stable; they *require* refrigeration.  (Farrell Decl. ¶ 14 and Exs. S and

16    T; Stern Decl., Ex. B (Deposition of Janine Peery ), 37:4-15[5]; Wongchenko Decl., Ex. C

17    (Deposition of Jackie Curtis ("Curtis Dep.)), 35:18-36:15; 47:15-24; 48:25-50:8; *see also*

18    Declaration of Dr. Thomas Montville ("Montville Decl.") ¶ 14.)  The refrigeration statements are

19    truthful.

20        As for the canned tomato products, of the 61 representative labels in issue, 44 (72%) do

21    not have an antioxidant "flag" on the front.  (Farrell Decl. ¶ 8 (Table 1) and Ex. A.)[6]  In *Bruton*,

22    ascertainability was lacking because "some statements printed on the labels were moved from the

23    front of the package to less prominent places on the product."  2014 U.S. Dist. LEXIS 86581, at

24    *27.  Moreover, only 32 of the 61 tomato labels contain the offending ingredient "high fructose

25
_____

26        [5]Plaintiffs mis-cite Ms. Peery's testimony (Mot., 14:3-8), who never said the labels were
      the same.  She simply noted that either refrigeration statement was lawful.  (Dkt. No. 174-8,
      27:23-28:1.)

27
        [6]Conspicuity matters.  Messrs. Kosta and Bates both admit that the "flag" on the front
28    panel is more noticeable.  (*Cf.* Kosta Dep., 66:16-67:4; Bates Dep., 30:7-13.)

1    corn syrup," and tomato sauce never contained calcium chloride (Farrell Decl. ¶ 9)—two

2    ingredients that Plaintiffs assail as "artificial flavors" and "preservatives," respectively.  (*Cf.*

3    Compl. ¶¶ 115, 124.)

4           Not only are the labels different, they changed.  In 2012, Del Monte changed the labels on

5    the shelf-stable fruit products to "Refrigerate for Quality" (Farrell Decl. ¶ 13; Curtis Dep., 67:8-

6    16)—a perfectly truthful statement.  (Montville Decl. ¶ 15.)  Most of the challenged statements on

7    some canned tomato products were removed or changed in 2013.  (Farrell Decl. ¶¶ 8-9.)  Today,

8    one can find challenged Del Monte tomato products positioned side-by-side on the grocer's shelf

9    with labels on products defined as being "within the class" but that Plaintiffs do not challenge.

10   (Farrell Decl. ¶ 15; Stern Decl., Ex. D (Declaration of Dr. Keith Ugone ("Ugone Decl.")), ¶ 34.)[7]

11          The "memory test" is daunting.  To be "exposed," a consumer of Del Monte canned

12   tomatoes would have to state by affidavit that (1) he purchased a Del Monte canned tomato

13   product (and not a competitor product); (2) of a qualifying variety (diced, stewed, or tomato

14   sauce) and not one of the seven other Del Monte tomato products (Farrell Decl. ¶ 3); (3) the label

15   had an antioxidant statement on either the front or back panels plus a "no artificial flavors or

16   preservative statement" on the back panel; (4) the product included less than 10% of the RDI of

17   both Vitamins A and C; and (5) contained citric acid, calcium chloride, and high fructose corn

18   syrup (HFCS).

19          For fruit products, the "memory test" demands:  (1) purchase of a Del Monte fruit product

20   (and not a competitor product); (2) from the refrigerated section (rather than one of three other

21   Del Monte fruit products sold in the center-store) (Farrell Decl. ¶ 4); (3) in a qualifying product

22   line (rather than one of two other Del Monte refrigerated product lines excluded from this

23   challenge) (*id.*);  (4) packaged outside of Mexico; and (5) including a label stating "Must be

24

25          [7]Notably, in their recently-filed appeal in *Jones*, the same class counsel seek to downplay
     the label differences in Hunt's canned tomatoes, claiming fewer than one half of one percent of
26   the tomato products in issue failed to have an allegedly actionable label.  (*See, e.g.*, Brief of
     Appellant Levi Jones at 16, *Jones v. Conagra Foods, Inc.* (9th Cir., filed Nov.21, 2014) (No. 14-
27   16327) Dkt. No. 21.)  If that is so, it only sinks them here, where fully 72% of representative
     canned tomatoes do not contain the front-label antioxidant statement and 60% of representative
28   fruit products are non-actionable.

1    Refrigerated" and not "Refrigerate for Quality."

2         Will self-identification by affidavit work?  Consider this: Neither Plaintiff  remembered

3    the specifics of his purchases.  (*Cf.* Kosta Dep., 50:12-20, 64:15-23, 160:17-23; Bates Dep.,

4    29:13-17, 31:18-25, 175:11-24.)

5         As Judge Breyer observed in denying certification of claims challenging Hunt's canned

6    diced tomatoes:  "[I]t is hard to imagine that [class members] would be able to remember which

7    particular Hunt's products they purchased from 2008 to the present, and whether those products

8    bore the challenged statements."  In this case, as with Hunt's, "there were 'literally dozens of

9    varieties with different can sizes, ingredients, and labeling over time' and 'some Hunt's cans

10   included the challenged language, while others included no such language at all."  *Jones*,

11   2012 U.S. Dist. LEXIS 81292, at *35-36.  As Judge Koh put it, given the variations in labeling,

12   ingredients, packaging, and retail placement, there is no "'precise, objective, and presently

13   ascertainable [method] that it is administratively feasible to determine whether a particular person

14   is a class member.'"  *See, e.g.*, *Bruton*, 2014 U.S. Dist. LEXIS 86581, at *25, *28-30, *32-33.[8]

15   Ascertainability is lacking.

16        Sadly, Plaintiffs know better.  Del Monte submitted a letter brief (Dkt. No. 158) outlining

17   these label differences.  The Court told Plaintiffs to fix the evidentiary record (Dkt. No. 159), but

18   they didn't.  After deposing Del Monte's person most knowledgeable, who confirmed these label

19   variations, Plaintiffs never mention Ms. Curtis' testimony.  Instead, unburdened by fact, Plaintiffs

20   persist in saying that "all labels are the same."

21             **2.    The Class Includes Consumers Who Did Not Rely or Were Not Misled.**

22        The class is improperly defined as all purchasers of the products, including those who

23   were not misled.  These people could not have been injured.  Courts routinely reject such

24   overbroad classes.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (class

25   defined as all purchasers "could include millions who were not deceived [by the alleged

26

27        [8]Plaintiffs embrace *Brazil* (Mot., 5:2-8) but there, Judge Koh found that all Dole products
     "bore the [same] labeling claim[] during the revised class period."  *Brazil v. Dole Packaged
     *Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014)

28   ("*Brazil III*").  That was not true in *Jones* and *Bruton*, and neither is it true here.

misrepresentations] and thus have no grievance"); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (class defined as all purchasers "necessarily includes … individuals who either did not see or were not deceived by [defendant's] advertisements, and individuals who suffered no damages").  Judge Breyer denied certification for this reason in *Jones*.  2014 U.S. Dist. LEXIS 81292, at *54.[9]  This Court should too.[10]

### C.    "Commonality" And "Predominance" Are Lacking as to Liability.

Plaintiffs contend that commonality and predominance are met because: (i) "all class members purchased one of Defendant's tomato or fruit products bearing the same unlawful statements" (Mot., 6:3-5); (ii) whether the labels were misbranded presents a common legal question (*id.*, 7:5-8); and (iii) whether the labels were misleading is common, as "it asks whether 'members of the public are likely to be deceived.'"  (*Id.*, 7:13-14 (citation omitted).)  Plaintiffs are wrong.

### 1.    There is No Common Evidence of "Exposure."

As noted, more than half the challenged labels are not actionable, even by Plaintiffs' reckoning.  Thus, purchase alone doesn't equate to class membership, which means there is "no cohesion among the members because they were exposed to quite disparate information." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Berger*, 741 F.3d at 1069 (variations in tool rental agreements "over time and among the different Home Depot locations" raise individual issues).  Plaintiffs' "Deception" Theory Raises Myriad Individual Issues.

### a.    The Challenged Statements Have No Single Meaning.

With just two Plaintiffs, the Court is presented with five different meanings for the antioxidant statement—and not one matches the Complaint. (*See* Section III A., above.)  If the

---

[9]*See also Diacakis v. Comcast Corp.*, No. 11-3002 SBA, 2013 WL 1878921, at *4 (N.D. Cal. May 3, 2012) (class improperly included all buyers "irrespective of whether he or she was deceived by Comcast"); *Moheb v. Nutramax Labs. Inc.*, No. 12-3633, 2012 WL 6951904, at *3 (C.D. Cal. Sept. 4, 2012) (class improperly included all buyers because it would "include members who derived benefit from [the product] and are satisfied users").

[10]Indeed, Del Monte's damages expert would be a class member, using Plaintiffs' definition, because his assistant purchased offending products a few weeks ago knowing full well the nature of the claims asserted.  (Ugone Decl. ¶ 70.)

1   depositions of Messrs. Kosta and Bates teach us anything, it is that purchasers who saw the label

2   statements have multiple interpretations to choose from (many benign and perfectly truthful).

3   Thus, to draw any conclusions about exposure, materiality, reliance, and deception will require

4   individual examinations.[11]  They also teach us that the Plaintiffs themselves did not rely, which

5   means they lack even individual claims.  *Cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

6   And if they didn't rely, that suggests that other class members may not have relied either.  At the

7   very least, it shows why reliance requires individual inquires.

8                    **b.       Materiality, Causation, and Reliance Raise Individual Issues.**

9          Plaintiffs must demonstrate that materiality, causation, and reliance are subject to common

10  evidence.  *Cf. Faulk*, 2013 U.S. Dist. LEXIS 57430, at *28.  They fail to do so.  Instead, they

11  argue that the Court must *presume* all class members' reliance because all label statements were

12  the same and all were material.  (Mot., 15:13.)  But Judge Breyer rejected class counsel's "*ipse*

13  *dixit*" where, as here, materiality and reliance were not subject to common proof.  *Jones*,

14  2012 U.S. Dist. LEXIS 81292, at *56-63.  And in *Faulk*, without any more evidence than

15  Plaintiffs offer here, this Court rejected similar conclusory statements.  2013 U.S. Dist. LEXIS

16  57430, at *29.

17         As Judge Breyer said of Hunt's canned tomatoes:  "Here, there is a lack of cohesion

18  among the class members, both because consumers were exposed to label statements that varied

19  by can size, variety, and time period (and the challenged ingredients also differed), but more

20  important because even if the challenged statements were *facially* uniform, consumers'

21  *understanding* of those representations would not be."  *Jones*, 2014 U.S. Dist. LEXIS 81292,

22  at *54.  If anything, this motion has even less to commend it, because there are more Del Monte

23  products than *Jones*, and more than half of the labels are non-actionable.

24         As Judge Breyer observed, consumers buy canned tomatoes for a variety of reasons.  *Id.*

25  They choose Del Monte largely because of its consistent quality and brand reputation.  (Farrell

26

27         _____

                 [11]Plaintiffs may argue that these multiple meanings prove the labels are deceptive.  How
28  so?  The question is whether the statements are subject to a *common* understanding such that
     "consumers are likely to be deceived" in the same way.

1   Decl. ¶ 23.)  Mr. Kosta certainly did; he chose Del Monte because of the name brand.  (Kosta

2   Dep., 14:22-15:10.)  He acknowledged that, in choosing a product, "[i]t's not one single

3   component" that drives his purchasing.  (*Id.,* 82:15-83:1.)  Mr. Bates also cared that Del Monte is

4   a name brand.  (Bates Dep., 25:2-23.)[12]

5        Where, as here, individual purchasing decisions vary, courts find predominance unmet.

6   *See, e.g., Jones*, 2014 U.S. Dist. LEXIS 81292, at *63 (no predominance because "individualized

7   purchasing inquiries will be required to determine how many and which kind of [] products each

8   class member bought"); *Hodes*, 2009 WL 2424214, at *4 ("individualized purchasing inquiries"

9   preclude predominance); *Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG(ANx), 2008 WL

10  5381088, at *4-5 (C.D. Cal. Sept. 22, 2008) (finding "there exists far too much variation in

11  individual purchasing experiences"); *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal.

12  App. 4th 544, 565 (2011) (materiality not subject to common proof because class members

13  purchased the insurance policy for many different reasons).

14       Not so fast, Plaintiffs will say, citing Dr. Caswell, who tells us that labels are

15  "undoubtedly" material.  (Mot., 9:6-7.)  But "undoubtedly" is an adverb, not evidence.  Judge

16  Breyer rejected Dr. Caswell's declaration because she never explained how the statements

17  affected purchase decisions, conducted no study, and admitted that some people would not have

18  cared about or even noticed the label statements.  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *56-60.

19       Plaintiffs fixed none of Judge Breyer's criticisms.[13]  Dr. Caswell's declaration is a clone

20
    _____

21       [12]Dr. Caswell agrees that causation, materiality, and reliance raise individual questions:
    "[W]hen making buying decisions consumers consider a range of food quality attributes for
22  which the amount and timing of the information they have available to make their decisions
    varies."(Declaration of Julie A. Caswell ("Caswell Decl.) ¶ 21 (Dkt. No. 174-3).)  And
23  "[c]onsumers receive product quality indicators and cues from a broad range of extrinsic sources,
    including, for example, from labeling, price, and brand name."  (*Id.* ¶ 22.)  In fact, when she was
24  deposed in one of Plaintiffs' counsel's other cases, she admitted that there is variance from
    consumer to consumer regarding which label elements, if any, factor into the purchase decision,
25  and that any combination of factors (e.g., purchase price or brand name) may be material to a
    single consumer's decision to purchase.  (*See Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-
26  CV-03067-EJD (N.D. Cal.), Dkt. 33-4, Newman Decl. Ex. B, ("Caswell Dep."), 100:10-25;
    146:4-147:20.)

27       [13]Dr. Oral Capps opines that "it is *likely* that customers would not have purchased the
    subject products in question but for the claims made on the labels."  (Declaration of Dr. Oral
28  Capps In Support of Plaintiffs' Motion for Class Certification ("Capps Decl.") ¶ 7 (Dkt. No. 173-
    3) (emphasis added).)  But he is a damages expert, not a survey expert.  And in deposition he

1    of *Jones*.[14]

2         Next, Plaintiffs ask the Court to find materiality because Del Monte would not have

3    "(1) changed [the] labels to include statements and (2) would not have made the claims so

4    prominent on their labels."  (Mot., 9:9-10.)  In *Faulk*, this Court rejected a similar argument that

5    the evidence would focus on Sears' conduct rather than individual class members' reliance.

6    2013 U.S. Dist. LEXIS 57430, at *29.  Moreover, Plaintiffs are wrong.  Neither the refrigeration

7    nor the preservative statements are "prominent."  Both are in small print, on the back.  And these

8    statements were either removed or changed during the class period.  (Farrell Decl. ¶¶ 9, 13.)[15]

9         Plaintiffs resort to anecdote: Because they thought these statements were material, surely

10   everyone did.  (Mot., 9:10-12.)  The problem is, they weren't material.  Plaintiffs are impeached

11   by their deposition testimony.  In any event, anecdotal evidence "is not sufficient to draw a

12   conclusion as to whether a reasonable consumer would have been similarly misled."  *Rahman*,

13   2014 WL 5282106, at *9; *Brazil V*, 2014 WL 6901867, at 5.[16]

14        In the end, say Plaintiffs, evidence doesn't even matter because the Court should presume

15   classwide reliance.  But class counsel asked Judge Breyer to do this in *Jones* and he declined:

16   _____

17   admitted he had no basis to make that statement.  (Stern Decl., Ex. A (Deposition of Dr. Oral
     Capps ("Capps Dep.")), 78:21-80:5.)  Now, he cites surveys he claims demonstrate "labels matter

18   to consumers."  (Capps Decl. ¶ 7.)  But none of these surveys concern *these* challenged
     statements.  *Cf. Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL

19   6901867, at *6 (N.D. Cal. Dec. 8, 2014) ("*Brazil V*") (rejecting plaintiffs' proffer of consumer
     surveys about how consumer perceive "All Natural" that did not test the challenged Dole

20   products).

21   [14]*Compare* Caswell Decl. ¶ 27 ("In my experience with labeling statements and consumer
     choice, it is my opinion that the statements listed in Paragraph 25 would be material to a

22   reasonable consumer") *with* Declaration of Julie Caswell (Hunt's), ¶ 27 (*Jones*, Dkt. No. 189-5)
     ("In my experience with labeling statements and consumer choice, it is my opinion that the
     statements made in Paragraph 25 would be material to a reasonable consumer.").

23   [15]Plaintiffs cite Mr. Farrell's testimony that "labels are the primary way that Defendant
     communicates with consumers."(Mot., 15:13-14.)  Mr. Farrell didn't say that.  (*Cf.* Stern Decl.,

24   Ex. C (Deposition of Liam Farrell) ("Farrell Dep."), 27:3-5 (discussing document retention
     policy).)  In fact, Del Monte's Dawn Thomas testified  that "lycopene" (an antioxidant found in

25   tomatoes) is not something consumers care much about.  (Deposition of Dawn Thomas, 33:6-8,
     attached as Exhibit D to the Wongchenko Declaration.)

26   [16]Plaintiffs also claim that "[r]egulated label statements are material as a matter of
     California law," citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106-07 (9th Cir. 2013).(Mot.,

27   15:4-5.)  Not so.  *Hinojos* was a pleadings case.  It held that the district court should not have

28   granted dismissal after finding the plaintiff received the "benefit of the bargain."

1   "[T]here are numerous reasons a customer might buy Hunt's tomatoes, and there is a lack of

2   evidence demonstrating the impact of the challenged label statements."  *Jones*, 2014 U.S. Dist.

3   LEXIS 81292, at *59-62.

4        Judge Breyer was right.  A presumption of reliance requires that Plaintiffs show "common

5   evidence as to what consumers perceived or what they would find material."  *In re Vioxx Class*

6   *Cases*, 180 Cal. App. 4th 116, 133 (2009).  But "[i]f the misrepresentation or omission is not

7   material as to all class members, the issue of reliance 'would vary from consumer to consumer'

8   and the class should not be certified."  *Stearns*, 655 F.3d at 1022-23; *Jones*, 2014 U.S. Dist.

9   LEXIS 81292, at *60; *accord Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624-26 (S.D.

10  Cal. 2007) (no presumed reliance if some class members may not have seen or relied upon the

11  alleged misrepresentations); *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011);

12  *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667-68 (1993).

13       Plaintiffs cite *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) (Mot.,

14  7:28-8:7) as "indistinguishable."  (Mot., 14:20-22.)  But *Steroid Hormone* involved a product that

15  contained undisclosed androstenediol, a "Schedule III controlled substance," which is illegal to

16  possess without a prescription.  Few would argue against the proposition that slipping an illegal

17  drug undisclosed into a nutrition supplement is material.  That is quite different than labeling that

18  truthfully identifies the presence of lycopene, for example.  To date, no court has accepted

19  Plaintiff's analogy to *Steroid Hormone*.  *Cf. Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1131

20  (N.D. Cal. 2014); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS

21  144917, at *19-20 (N.D. Cal. Oct. 4, 2013); *Jones,* 2014 U.S. Dist. LEXIS 81292, at *67-68.

22       Plaintiffs also argue that their UCL and FAL claims do not require reliance.  (Mot., 14:17-

23  18.)  Wrong again.  Proof of actual reliance is required for Plaintiffs' UCL claims.  *In re Tobacco*

24  *II Cases*, 46 Cal. 4th at 306; *Faulk*, 2013 U.S. Dist. LEXIS 57430, at *34 ("like the CLRA, to

25  recover under the UCL, a plaintiff must establish reliance, which Faulk has not shown can be

26  done on a classwide basis"); *Rahman*, 2014 WL 5282106, at *7.  Indeed, they must show that this

27  by common evidence, such as a consumer survey.  *Id.*, at *10 (plaintiff failed to demonstrate

28

1    likely deception without survey evidence.[17]

2         Plaintiffs agree that they must prove the labels are "likely to deceive." (Mot., 7:14.)  In the

3    end, they repeat the canard that all labels are the same.  (*Id.*, 13:18-19.)  They have no evidence.

4              **2.    Plaintiffs' "Unlawful" Theory Raises Myriad Individual Issues.**

5         Plaintiffs contend that reliance is irrelevant for their "unlawful" claim: "If Defendant's

6    labels violate the unlawful prong of the UCL, the inquiry ends there and whether unnamed class

7    members relied on the relevant statement is not an issue before the court."  (Mot., 14:23-25.)Not

8    so.  This is just the start of the proof.[18]

9         Plaintiffs' argument that reliance is suspended for "unlawful" claims has been forcefully

10   rejected every time class counsel raised it.  To suspend reliance, Judge Conti said, "would be an

11   affront to state and federal standing rules," because  "[i]gnoring these basic legal rules would

12   invite lawsuits by all manner of plaintiffs who could simply troll grocery stores and the Internet

13   looking for any food product that might form the basis of a class-action lawsuit."  *Wilson v. Frito-*

14   *Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1143 (N.D. Cal. 2013).  Judge Breyer agrees:  "An

15   unlawful theory will not solve Plaintiffs' reliance problem."  *Jones*, 2014 U.S. Dist. LEXIS

16   81292*, at *55 n.27.  So does this Court: "[L]ike the CLRA, to recover under the UCL, a plaintiff

17   must establish reliance, which Faulk has not shown can be done on a classwide basis."  *Faulk*,

18   2013 U.S. Dist. LEXIS 57430, at *34.  Other courts concur.[19]

19   ──────────────

20        [17]*See also Churchill Vill., L.L.C. v. Gen. Elec. Co*., 169 F. Supp. 2d 1119, 1130-31 (N.D.
     Cal. 2000); *Heighley v. J.C. Penney Life Ins. Co*., 257 F. Supp. 2d 1241, 1260-61 (C.D. Cal.

21   2003); *Haskell v. Time, Inc*., 965 F. Supp. 1398, 1407-08 (E.D. Cal. 1997) (consumer surveys
     needed to prove UCL deception).

22        [18]What is more, Plaintiffs' refrigeration claims are not based on any statutory or
     regulatory violations and therefore cannot be brought under the "unlawful" prong of the UCL.

23        [19]*See Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *9

24   (N.D. Cal. Jan. 15, 2014) ("actual reliance and injury are required to establish statutory standing
     under the UCL's unlawful prong whenever the underlying alleged misconduct is deceptive or

25   fraudulent"); *Figy v. Amy's Kitchen*, No. CV 13-03816 SI, 2013 U.S. Dist. LEXIS 167723, at *9-
     11 (N.D. Cal. Nov. 25, 2013) (reliance required to state unlawful prong claim regarding alleged
     label misrepresentation); *Kane v. Chobani, Inc.*, No. 12-cv-02425, 2013 U.S. Dist. LEXIS

26   134385, at *20, *33 (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, No. 12-cv-01831-LHK,
     2013 WL 5312418, at *8-9 (N.D. Cal. Sept. 23, 2013); *In re Actimmune Mkt. Litig.*, No. C 08-

27   02376 MHP, 2010 U.S. Dist. LEXIS 90480, at *23 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x
     651 (9th Cir. 2011); *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013);

28   *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828, LHK, 2014 U.S. Dist. LEXIS 565, at

1

3.      **The Actual Evidence, Unrebutted, Refutes Materiality and Deception.**

2      Rather than guess, Del Monte decided to find out how actual customers perceive its labels.

3  It retained Dr. Kent Van Liere to conduct a consumer survey and test Plaintiffs' hypothesis.  Two

4  groups of putative class members were shown canned tomato and FreshCut® vegetable

5  products,[20] some with the offending statements (test group) and others without (control group).

6  (Declaration of Dr. Kent Van Liere ("Van Liere Decl.") (Dkt. No. 131-26, Ex. A).)

7      Dr. Van Liere's survey destroys materiality and deception:

8      • **Conspicuity Matters.**  Respondents noticed statements on the front label more

9          than they noticed statements on the back.  Having the antioxidant statement on

10         the front led to an increased number of people believing the product contains

11         antioxidants.[21]  However, statements on the back of the label did not have the

12         same effect.  For example, respondents said the product contained artificial

13         flavors at the same rate whether they saw the label that said "no artificial

14         flavors" on the back or not. (*Id.* Ex. A ¶ 47.)

15     • **No materiality/causation.**  The "no preservatives" statements had no impact

16         on whether respondents believed tomato products contained preservatives,

17         artificial additives, citric acid, or calcium chloride.  (*Id.*)  In fact, respondents

18         in the test group (who saw the labels that said "no preservatives") reported that

19         the tomatoes contained calcium chloride at a higher rate than those in the

20         control group.  (51% vs. 39%.)  (*Id.*, Ex. A Table 5.)

21     • **No Substantial factor.**  The majority of respondents reported that the presence

22         of the challenged ingredients would *not* make them less likely to purchase the

23

24  *23-24 (N.D. Cal. Jan. 2, 2014); *Samet v. Procter & Gamble Co.*, No. 5:12-cv-01891-PSG, 2013
   WL 6491143, at *4 (N.D. Cal. Dec. 10, 2013).

25      [20]FreshCut® products are no longer part of this case. Dr. Van Liere did not conduct a
   similar survey for refrigeration statements because Plaintiffs' "conduct" allegations—challenging

26  the products' placement in the produce section, etc.—made the concept impossible to test in a
   simulated shopping environment.

27      [21]72% of respondents in the test group were aware that the product contained anti-

28  oxidants, versus just 39% in the control group. (*Id.* Ex. A ¶ 46.)

1    products.[22]  (*Id.* Ex. A, Table 6.)  For those who did report that the challenged

2    ingredients made them less likely to purchase, the labeling was not the cause—

3    the results were nearly the same in the test and control groups.  (*Id.* Ex. A ¶

4    49.)

5        In denying class certification in other food misbranding cases, Judges Hamilton and

6    Illston cited other consumer surveys performed by Dr. Van Liere.  *See Astiana v. Ben & Jerry's*

7    *Homemade, Inc*., No. 10-cv-04387 PJH, 2014 U.S. Dist. LEXIS 1640, at *19 (N.D. Cal. Jan. 7,

8    2014); *Rahman*, 2014 WL 5282106, at *9.[23]

9        **D.    Plaintiffs Cannot Show Classwide Entitlement to Monetary Relief.**

10       Plaintiffs must provide a model for calculating remedies that comports with substantive

11   law and is "susceptible of measurement across the entire class for Rule 23(b)(3) purposes."

12   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  To be *Comcast*-compliant, any such

13   damages model must "'measure only those damages attributable to [defendant's conduct].'"

14   *Brazil III*, 2014 WL 5794873, at *13 (citation omitted).  Plaintiffs offer three models:

15   (i) disgorgement; (ii) "full refund"; and (iii) hedonic regression.  None satisfies *Comcast*.

16       **1.    Judges Koh, Whyte, and Breyer Have Rejected Dr. Capps' Models.**

17       Plaintiffs offer Dr. Capps, but the science he practices is junk.  Judges Whyte and Breyer

18   declined to certify other food misbranding class actions brought by class counsel that relied on

19   essentially the same Capps report.  *See Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646-

20   RMW, 2014 WL 1652338, at *6 (N.D. Cal. Apr. 24, 2014); *Jones*, 2014 U.S. Dist. LEXIS 81292,

21   at *77-78 ("Capps does not provide a clearly defined list of variables, he has not determined

22   whether the data related to any or all of his proposed control variables exists, and he has not

23

24       [22]For example, only 5% in the test group (and 7% in the control group) would be less
         likely to purchase based on the presence of high fructose corn syrup. (*Id.* Ex. A Table 6.)

25

26       [23]Plaintiffs have no consumer survey of their own, and will likely tender a reply
         declaration attacking Dr. Van Liere.  In the *Rahman* case, however, Judge Illston rejected a
27       rebuttal declaration attacking a survey (concerning "No Sugar Added") by Dr. Van Liere where,
         as here, plaintiff had done no survey: "[C]riticizing the methodology of a survey that tends to
         show a reasonable consumer would not be deceived," she held, "is no substitute for introducing
28       evidence which arrives at the opposite conclusion."  *Rahman*, 2014 WL 5282106, at *10.

determined, or shown how he would determine, which competing and complementary products he would use.")  Judge Koh joined the chorus in *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 U.S. Dist. LEXIS 565, at *52-53 (N.D. Cal. Jan. 2, 2014).

In class counsel's *Brazil v. Dole* litigation, Judge Koh issued four orders addressing Dr. Capps.  In *Brazil I*, she rejected his first two models but accepted regression and certified a "(b)(3)" class.  *Brazil v. Dole Packaged Foods, LLC*, No. 5:12-cv-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014).  In *Brazil II*, she noted that Dr. Capps offered "contradictory testimony" (between the *Dole* and *Twinings* cases) and invited Dole to move for decertification. *Brazil,* 2014 WL 2738179, at *3 (N.D. Cal. June 16, 2014).  Dole did, and in *Brazil III*, Judge Koh ordered the "(b)(3)" class decertified.  In doing so, Judge Koh provided a stinging criticism of Dr. Capps' work.  2014 WL 5794873, at *14.[24] Notably, Plaintiffs never mention these courts' rejections of Dr. Capps' models in *Brazil III, Lanovaz*, *Jones*, or *Ogden*.  In *Brazil IV*, she denied plaintiff's motion for reconsideration of *Brazil III*.  2014 WL 6893715, at *2 (N.D. Cal. Dec. 8, 2014).[25]  Plaintiffs mention none of these rulings.  No wonder.

Equally damning, in class counsel's other case called *Werdebaugh v. Blue Diamond Growers*[26]—the only other case to accept Dr. Capps' regression model—Dr. Capps tried to address the criticisms identified in *Brazil III* by submitting a new declaration in opposition to Blue Diamond's motion to decertify.  And in her opposing papers, plaintiff confessed to "incorrect assumptions" in Dr. Capps' earlier model.  (*See, e.g.*, Plaintiff's Memorandum in Opposition to Defendant's Motion to Decertify, 2:15-18 (*Werdebaugh*, Dkt. No. 175).)

That didn't happen here.  Dr. Capps' latest report hardly differs from the one he filed in May 2014.  (*Compare* Dkt. No. 173-3 *with* Dkt. 122-5.)  The "incorrect assumptions" remain.

---

[24]In *Brazil III*, Judge Koh returned to the contradiction between Dr. Capps' opinion in that cases versus his opinion in the *Twinings* case and found it "troubling."  *Id*., at *13.  "This is not the first time the Court has expressed unease with regards to [Dr. Capps'] apparently contradictory opinion…."  *Id.*

[25]In *Kotteras v. Whole Foods Market, Inc.*, 281 F.R.D. 16, 18 (D.D.C. 2012), the district court dismissed Dr. Capps' opinion as "too vague for the Court to rigorously analyze."

[26]*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *26 (N.D. Cal. May 23, 2014).

1        **2.      Plaintiffs' Three Damages Models Are All Deeply Flawed.**

2            **a.      "Disgorgement" Is Not Permitted as a Matter of Law.**

3        Dr. Capps' first model, disgorgement, is the "return of the Defendant's net sales or gross

4   profits from the sale of the subject products." (Capps Decl. ¶ 10.) No court has accepted that. It

5   is the wrong measure. The proper measure is "price premium." *Kwikset Corp. v. Super. Ct.*, 51

6   Cal. 4th 310, 330 (2011); *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 700

7   (2006).

8        Every judge presiding over class counsel's other food misbranding cases agrees. *See, e.g.,*

9   *Brazil III*, 2014 WL 5794873, at *5 ("Restitution is [] determined by taking the difference

10  between the market price actually paid by consumers and the true market price that reflects the

11  impact of the unlawful, unfair, or fraudulent business practices."); *Jones*, 2014 U.S. Dist. LEXIS

12  81292, at *72 ("[t]he difference between what the plaintiff paid and the value of what the plaintiff

13  received is a proper measure of restitution") (citations omitted); *Lanovaz*, 2014 WL 1652338, at

14  *6 ("plaintiff must provide *substantial evidence* showing the price premium attributable to

15  Twinings use of the label [statement]"); *Ogden*, 2014 U.S. Dist. LEXIS 565, at *51 ("restitution

16  requires that Ogden also present evidence of the difference in value between what she spent and

17  what she received").[27]

18       Arrayed against Plaintiffs is an unbroken line of rulings from courts in this District

19  rejecting Dr. Capps' disgorgement model. This Court should not be the first to depart.

20           **b.      "Full Refund" Is Not Permitted as a Matter of Law.**

21       Dr. Capps' second restitution model is "full refund." (Mot., 21:17-28; Capps Decl. ¶¶ 10,

22  13.) It too is unavailable: "Return of the full retail or wholesale prices is not a proper measure of

23  restitution, as it fails to take into account the value class members received by purchasing the

24  _____

25       [27]*McCrary v. Elations Co.*, No. EDCV 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS
    8443, at *49-50 (C.D. Cal. Jan. 13, 2014) is not to the contrary. (*See* Mot., 18:3-20.) There, the
26  court agreed that plaintiffs could only receive the difference between the value and expected
    value. Plaintiffs' other cases pre-date *Comcast*, so the notion that "restitution may be more or
    less than the loss suffered" has been discredited. (*See* Mot., 19:6-15 (citing *Juarez v. Arcadia*
27  *Fin., LTD.*, 152 Cal. App. 4th 889, 915 (2007)).) As for *Meister v. Mensinger*, 230 Cal. App. 4th
    381, 401 (2014), that was a breach of fiduciary duty case and does not stand for the proposition
28  that disgorgement is proper in a false advertising case.

1  products." *Jones*, 2014 U.S. Dist. LEXIS 81292, at *15; *accord Lanovaz*, 2014 WL 1652338, at

2  *6; *Brazil I*, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014).  Even Mr. Bates knows:  "Q:

3  Do you think you should have gotten to eat [the Del Monte products] for free?  A: Only in my

4  dreams."  (Bates Dep., 182:22-24; *see also* Kosta Dep., 195:15-22.)[28]

5              **c.        Dr. Capps' Failure to Perform His Regressions is Fatal.**

6         Dr. Capps' third model is hedonic regression.  He promises to deploy multiple regression

7  to "isolate the consequence of the alleged misrepresentation by controlling for all other factors

8  that may affect the price and/or volume sold of challenged products."  (Capps Decl. ¶ 19.)

9         In *Brazil I*, Dr. Capps made the same boast, and at class certification, before he actually

10  performed his calculations, Judge Koh accepted it.  But after discovery closed and Dr. Capps

11  performed the actual regressions, Judge Koh saw through his fog, as will be discussed.

12         Here too, discovery has closed.  Dr. Capps has all the data he will ever have.  (*See* Capps

13  Decl. ¶ 29.)  But unlike *Brazil III*, Dr. Capps has performed no regressions.  He simply imagines

14  the hypothetical regressions he *might* run.  (Capps Decl. ¶ 31.)  This is curious, given that the

15  *Kottaras* court rejected his model precisely because he had "not yet performed a single

16  regression."  281 F.R.D. at 25-27; *accord Brazil III*, 2014 WL 5794873, at *2 (excusing Dr.

17  Capps' failure to run regressions initially because he did not have the necessary data).

18         This Court might rightly wonder why Dr. Capps failed to perform any actual regressions.

19  Unfortunately, he never says.  "Trust me" isn't enough.  *Cf.  Mazza v. Am. Honda Motor Co.*, 666

20  F.3d 581, 588 (9th Cir. 2012) (district court must conduct a "rigorous analysis" under Rule 23.)

21              **d.        Dr. Capps' Regression Model Suffers From The Same Flaws**
              **That Judge Koh Identified in *Brazil III*.**

22

23         Dr. Capps contends that he can isolate the price-premium that is due solely to the

24  antioxidant and refrigeration statements (as opposed to any other factor) utilizing eight factors:

25

26         [28]Dr. Capps admitted in *Jones* that a "full refund" model has "no correlation to any
   economic injury attributable to the challenge [sic] [label statement]."  (No. 12-cv-01633-CRB,

27  Dkt. 151-5, 102:8-15.)  He proposed it because class counsel told him told him that misbranded
   food products are "legally worthless," though he disagreed that a label infraction renders the

28  product worthless.  (*Id.*, 91:5-92:17.)  (*See also* Capps Dep., 92:4-10.)

1   (i) price, (ii) package size, (iii) seasonality, (iv) year, (v) label (whether it has or doesn't have the

2   offending statement); (vi) brand, (vii) "product characteristic," and (viii) consumer price index.

3   (Capps Decl. ¶ 32.)  No, he can't.  Regression fails here for the same reasons it did in *Brazil III.*

4        First, Dr. Capps fails to identify a single comparator product against which he would

5   measure the price difference.  All he says is that he has "ascertained that there are

6   comparable[s]."  (*Id.* ¶ 29.)  What are they?  And when does he plan to reveal them?

7        Dr. Capps knows from *Jones* that he ought to have disclosed his comparables.  There,

8   Judge Breyer declined to certify a class against Hunt's, in part, because Dr. Capps "has not

9   determined, or shown how he would determine, which competing and complementary products

10  he would use."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *77-78.  By not revealing his

11  comparables, Dr. Capps is asking this Court to approve his regression model on faith.

12       This omission is not innocent.  Dr. Capps knows that an obvious competitor for Del

13  Monte's canned tomato products would be Hunt's canned tomatoes.  (Farrell Decl. ¶ 27; Ugone

14  Decl. ¶ 83.)  And an obvious competitor for the fruit products would be Dole packaged fruits.

15  (*Id.*)  Indeed, in *Brazil III,* Dr. Capps asserted that Del Monte was "Dole's chief competitor."

16  *Brazil III*, 2014 WL 5794873, at *12.  But to admit this would expose an awkward fact:  Class

17  counsel sued Hunt's and Dole for label violations over the very products that, in this case, Dr.

18  Capps would use as part of the "control group" to prove Del Monte's price-premium.

19       Not only that, Judges Breyer and Koh found Dr. Capps' regression model wanting in

20  *Jones* and *Brazil*—cases in which Dr. Capps' would have used *Del Monte's challenged products*

21  as comparators for calculating the supposed price-premium that Hunt's (canned tomatoes) and

22  Dole (fruit products) supposedly exacted due to those defendants' alleged label infractions.  In

23  that respect, this case presents a feature that no other case in class counsel's portfolio has: Two of

24  the challenged products that would go into the data set here were part of Dr. Capps' regression

25  models that two judges have already determined to be inadequate for measuring price differences.

26       Second, not only should Dr. Capps have revealed his comparables, he needed to confirm

27  that those "comparable" products were not misbranded.  *Brazil III*, 2014 WL 5794873, at *12.  In

28  *Brazil III*, Judge Koh expressed "concern" that "many of Dr. Capps' assumptions about the

1  competing products upon which his model relies are either false or untested." *Id.*  In fact, she

2  found that "Dr. Capps *chose* not to corroborate many assumption he made about the regional and

3  private brands he included [as comparables] in the model" (*id.* (emphasis added)), and that his

4  failure to fact-check rendered his model unreliable:

> [I]f the model is unsure whether the non-Dole products actually made an "All Natural" labeling claim, then how can the Court know whether the price premium the model generates is based on Dole's labeling claim rather than on some other factor?  Put simply, it cannot. For if another brand's label makes the claim, and Dole indicates that some of them do, see Mot. at 15, then whatever price difference exists between that brand's product and Dole's cannot be attributed to the "All Natural Fruit" claim.

10  *Id.*  Fact-checking will not excuse Dr. Capps' work here because, as noted above, the Hunt's and

11  Dole comparables are themselves the subject of class counsels' other misbranding adventures.

12  (*See, e.g.*, Ugone Decl. ¶ 83.)

13       Next, there is the issue of private brands.  Are they "comparables" or not?  Dr. Capps

14  omitted private labels from his revised *Blue Diamond* analysis.  (*Werdebaugh*, Dkt. No. 175,

15  15:23-25.)  Yet, he appears to regard them here as potential comparators.  (Capps Decl. ¶ 22.)

16       Private brands are not comparable.  Del Monte's higher price (Capps Decl. ¶ 22) is due to

17  superior quality and brand recognition.  (Farrell Decl. ¶¶ 32-33.)  Even Plaintiffs agree.  (Kosta

18  Dep., 14:22-15:10; Bates Dep., 25:21-23.)  So does Judge Breyer: Because "'Hunt's is a market

19  leader that has spent decades building a brand synonymous with canned tomatoes' ... [o]ne cannot

20  assume that the entire price difference between the Hunt's and Safeway cans [used in Dr. Capps'

21  analysis] is attributable to the alleged misstatements."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at

22  *76.

23       The absence of real comparables is fatal.  *Cf. Astiana*, 2014 U.S. Dist. LEXIS 1640, at

24  *30-31.  It is also irreparable.  As Judge Klaussner noted in denying a Rule 23(b)(3) damages

25  class in another food class action, "[i]n reality, the true value of the products to consumers likely

26  varies depending on individual consumer's motivation for purchasing the products at issue."

27  *Caldera v. J.M. Smucker Co.*, No. CV 12-4936-GHK (VBKx), 2014 U.S. Dist. LEXIS 53912, at

28  *12 (C.D. Cal. Apr. 15, 2014).

1    Third, Dr. Capps does not account for advertising expenses.  (Capps Decl. ¶ 32.)  He

2    excuses his omission by saying he lacks data but that "discovery is ongoing …."  (*Id*.)  No, it's

3    not.  Fact discovery closed.  In *Brazil III*, he admitted that weekly advertising data do not likely

4    exist.  2014 WL 5794873, at *11.  Judge Koh concluded that "insufficient data only favors a

5    finding that the Regression model is incapable of accomplishing its objective."  *Id.*

6    Fourth, Judge Koh found "[e]qually concerning" the fact that the model does not "account

7    for the possibility that some products might make multiple labeling claims."  *Id*., at *12.  As she

8    put it, if a Dole label said both "All Natural" and "No Sugar Added" and is matched with a

9    comparable that "that makes no claim whatsoever, then how can the Court know how much of the

10   resulting price premium derives from which labeling claim?  Brazil provides no answer."  *Id*.

11   The same problem of "confounding factors" weighs heavily here.  If anything, the

12   problem is worse because of the claims that Plaintiffs dropped.  Consider the Fruit Naturals®/"No

13   Sugar Added" products.  Plaintiffs originally attacked them on four grounds, including "no-sugar

14   added."  (Compl. ¶ 167.)  Now that Plaintiffs limit them only to "refrigeration statements," how

15   can the Court know if a higher price was due to refrigeration statements as opposed to the many

16   other claims that not long ago Plaintiffs assailed as offensive?

17   Fifth, Judge Koh found that Dr. Capps' model "overlooks differences in how the products

18   are packaged."  *Brazil III*, 2014 WL 5794873, at *12.  In that case, Dr. Capps controlled only for

19   "size" but not "packaging."  Thus, he "treats a 'four-pack [of packaged fruit] as equal to a 16-oz.

20   can."  *Id*.  But "[a]s anyone who has ever packed school lunches can attest, a 4–pack of products

21   that are 4 ounces each is quite different than a single 20–ounce multiple serving can."  *Id*.  The

22   same is true here.  Del Monte offers some tomato products and fruit in multi-packs.  (Farrell Decl.

23   ¶¶ 3, 4.)  As Judge Koh noted, "consumers might be willing to pay a premium for fruit products

24   packaged in a certain way."  *Brazil III*, 2014 WL 5794873, at *12.  Dr. Capps' model doesn't

25   control for packaging.

26   Any damages model has to ensure that Del Monte will not be taxed for factors having

27   nothing to do with the label infractions.  *Comcast*, 133 S. Ct. at 1433.  Dr. Capps' regression

28   model does not do that.  Nor does it account for reliance, materiality, or exposure.  (Capps Dep.,

74:5-10.)  Judge Koh's concluding words in *Brazil III* could apply here as well:  Dr. Capps' regression model inherently fails to "'measure only those damages attributable to [defendant's conduct].'"  *Brazil III*, 2014 WL 5794873, at *13.

### 3.    Dr. Capps' Models Violate *Duran v. U.S. Bank*.

Dr. Capps' regression model violates the California Supreme Court's recent holding in *Duran v. U.S. Bank National Ass'n*, 59 Cal. 4th 1 (2014).  The *Duran* court rejected a damages model in which plaintiff's expert calculated damages by multiplying the average hours of overtime worked per class member times all class members, where, as here, some class members have no claim.  People who have no claim must be subtracted.  *Id.* at 21-23, 40-41.

Dr. Capps' regression model flunks *Duran.*  Under his model, Plaintiffs do not have to prove that anyone was exposed, relied, or deemed the label statement material.  (Capps Dep., 70:22-71:7, 74:5-10.)  They only have to show that Del Monte sold "X" units of product at "Y" average price.  Dr. Capps will handle the rest—multiply "X" times "Y" to yield aggregate classwide damages.  In Dr. Capps' universe, everyone gets money simply by the fact of purchase.

"A class cannot be certified if it contains members who lack standing."  *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013) (applying *Comcast* and reversing certification where plaintiff failed to identify common evidence of a class-wide injury) (citation omitted); *accord Kotteras*, 281 F.R.D. at 23 ("a class should not be certified if it is apparent it contains a great many persons who have suffered no injury at the hands of the defendant") (citation omitted).

### 4.    Plaintiffs' "Nominal Damages" Theory Also Fails.

Plaintiffs assert that nominal or statutory damages are available, either under California Civil Code § 3360 or under the CLRA.  (Mot., 22:14-23:14.)  They are wrong.

First, Judge Breyer rejected this theory in *Jones:*  "Plaintiffs' CLRA claim has nothing to do with a breach of duty … Nor do Plaintiffs point to any CLRA case permitting nominal damages, let alone a CLRA class action."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *86 (citing *Stilson v. Reader's Digest Ass'n*, 28 Cal. App. 3d 270, 274 (1972)).  Moreover, that will not avoid individual issues.  Their damages model must only compensate those who have been injured.  *See*

1    *NBL Flooring, Inc. v. Trumbull Ins. Co.*, No. 10-4398, 2014 WL 615967, at *6 (E.D. Pa. Feb. 12,

2    2014) (nominal damages theory does not satisfy predominance requirement because

3    individualized proof is still required to prove a breach of contract).

4         Second, Plaintiffs contend that all class members are entitled to $1000 in statutory

5    damages under the CLRA.  (Mot., 23:3-14.)  But that is for the entire class, not each class

6    member.  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *86-87.  "Relief under the CLRA is

7    specifically limited to those who suffer damage, making causation a necessary element of proof."

8    *Id*; *accord Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003).

9         Third, Plaintiffs still need to describe how they will arrive at a damages amount and how

10   it is tied to class members' injuries under *Comcast*.  They offer no explanation.

11        **E.       The Court Should Deny Plaintiffs' "Rule 23(b)(2)" Injunction Class.**

12        Plaintiffs also seek an injunction-only class.  (Mot., 12:10-28.)  But that is available only

13   if monetary relief is merely "incidental to the injunctive or declaratory relief."  *Wal-Mart Stores,*

14   *Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).  Rule 23(b)(2) "does not authorize class certification

15   when each class member would be entitled to an individualized award of monetary damages."

16   *Id.*; *accord Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) (reversing

17   certification of a (b)(2) class because monetary claims under (b)(2) cannot stand in light of *Wal-*

18   *Mart*); *Faulk*, 2013 U.S. Dist. LEXIS 57430, at *15 n.4 (monetary damages claim was not

19   secondary to injunctive relief claim, and each class member would be entitled to individualized

20   damages); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458-59 (S.D. Cal. 2014) (same).  Here, if

21   Plaintiffs prevail, "each class member would be entitled to an individualized award of monetary

22   damages."  Plaintiffs cannot escape this; it is the task to which Dr. Capps' energies have been

23   committed.  Thus, monetary relief is not "merely incidental" to injunction—it dominates.  (Mot.,

24   13:1-23:14.)[29]

25        Plaintiffs' injunction theory fails for another reason.  Plaintiffs cannot plausibly allege that

26   they will be duped by the same challenged statements again; they lack standing to pursue these

27

28        [29]Plaintiffs never cite *Wal-Mart* and rely instead on pre-*Wal-Mart* authorities outside this
     district.  (*See* Mot., 12:22-27 (and cases cited).)

1   claims.  *See, e.g.*, *Rahman*, 2014 WL 5282106, at *6; *Morgan v. Wallaby Yogurt Co.*, No. 13-CV-

2   00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014); *Garrison v. Whole Foods Mkt.*

3   *Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014).  And even

4   if they could somehow allege future deception, they disclaim any further desire to purchase Del

5   Monte products.  (Kosta Dep., 179:11-20; Bates Dep., 155:17-19.)  Judge Breyer denied

6   certification of a (b)(2) class in *Jones* for this reason.  2014 U.S. Dist. LEXIS 81292, at *46-49

7   (injunctive relief improper because plaintiff did not allege an intent to purchase the products in

8   the future); *see also Jou v. Kimberly-Clark Inc.*, No. C-13-3075 JSC, 2013 WL 6491158, at *4

9   (N.D. Cal. Dec. 10, 2013); *Algarin*, 300 F.R.D. at 458.

10  **IV.    CONCLUSION**

11          For all these reasons, the Court should deny Plaintiffs' motion for class certification.

12

13  Dated:  December 15, 2014           WILLIAM L. STERN
                                        CLAUDIA M. VETESI
14                                      LISA A. WONGCHENKO
                                        ALEXANDRA LAKS
15                                      MORRISON & FOERSTER LLP

16                                      By:   */s/ William L. Stern*
                                                WILLIAM L. STERN
17

18                                      Attorneys for Defendant
                                        DEL MONTE FOODS, INC.

19

20

21

22

23

24

25

26

27

28