1   Ben F. Pierce Gore (SBN 128515)
    PRATT ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone: (408) 429-6506
    Fax: (408) 369-0752
4   pgore@prattattorneys.com

5   Brian K. Herrington (admitted *pro hac vice*)
    DON BARRETT, P.A.
6   404 Court Square North
    P.O. Box 927
7   Lexington, MS 39095
    Telephone:  (662) 834-2488
8   Fax:  (662) 834-9628
    bherrington@barrettlawgroup.com
9
    *Attorneys for Plaintiffs*
10

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      OAKLAND DIVISION

15

16   MICHAEL KOSTA and STEVE BATES,         Case No.  4:12-cv-01722-YGR
     individually and on behalf of all others
17   similarly situated,                    **PLAINTIFFS' REPLY IN SUPPORT OF
                                            THEIR MOTION FOR CLASS
18                    Plaintiffs,            CERTIFICATION, FOR APPOINTMENT
                                            OF CLASS REPRESENTATIVES, AND
19   v.                                      FOR APPOINTMENT OF CLASS
                                            COUNSEL**
20   DEL MONTE FOODS, INC.,                  Hearing date: February 10, 2015
                                            Time:          2:00 p.m.
21                    Defendant.             Judge:         Hon. Gonzalez Rogers
                                            Action Filed: April 5, 2012
22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... i

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

I.      Plaintiffs Have Standing To Sue For Products Not Purchased ................................ 1

II.     The Class Is Ascertainable ...................................................................................... 3

     A.    A Lack of Business Records Does Not Preclude Ascertainability. ............. 3

     B.    Defendant's Post-Litigation Label Changes Do Not Defeat
          Ascertainability. ......................................................................................... 5

III.    Commonality and Predominance Are Not Lacking as to Liability ......................... 6

     A.    The Class Definition Is Not Overbroad. .................................................... 6

     B.    There Are No Material Label Differences That Would Defeat
          Commonality/Predominance. ....................................................................... 7

     C.    The Challenged Statements Have A Single Meaning. ................................. 7

     D.    Materiality, Causation and Reliance Do Not Raise Individual
          Issues. ......................................................................................................... 8

     E.    Dr. Van Liere's "Study" Does Not Refute A Finding of Materiality
          or Deception. ............................................................................................ 10

IV.    Plaintiffs Can Show Classwide Entitlement to Monetary Relief. ........................ 11

     A.    Disgorgement Is The Proper Remedy For Plaintiffs' Unjust
          Enrichment Claim. ..................................................................................... 11

     B.    Restitution Per Plaintiffs' UCL, FAL, And CLRA Claims. ..................... 12

     C.    Actual Damages Per Plaintiffs' CLRA Claim Are Amenable to
          Classwide Proof. ....................................................................................... 14

     D.    Dr. Capps' Models Do Not Violate *Duran*. .............................................. 14

     E.    Nominal Damages Are Available. .............................................................. 15

V.     The Court Should Certify A Rule 23(b)(2) Injunction Class ................................ 15

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Ajaxo Inc. v. E\*Trade Financial Corp.*
115 Cal. Rptr. 3d 168 (2010) ........................................................................ 12

*Allen v. Hyland's Inc.*
300 F.R.D. 643(C.D. Cal. 2014) ................................................................... 4, 7

*Astiana v. Kashi Co.*
291 F.R.D. 493 (S.D. Cal. 2013).............................................................. 4, 7, 12

*Avina v. Spurlock,*
105 Cal. Rptr.198 (1972) .............................................................................. 15

*Brazil v.  Dole Packaged Foods LLC ,*
No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014)... 3, 8, 9

*Brazil v. Dole Packaged Foods, LLC,*
No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 81690 (N.D. Cal. June 16, 2014)......... 14

*Brockey v. Moore,*
131 Cal. Rptr. 2d 746 (2003) ........................................................................ 10

*Bruton v. Gerber Products CO.,*
No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 86581 (N.D. Cal. June 23, 2014).......... 4

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3d. Cir. 2013)........................................................................... 3

*Chavez v. Blue Sky Natural Beverage Co.,*
268 F.R.D. 365 (N.D. Cal. 2010) ................................................................... 3

*Chavez v. Blue Sky Natural Beverage Co.,*
340 F. App'x 359 (9th Cir. 2009) ................................................................... 13

*County of San Bernardino v. Walsh,*
69 Cal. Rptr. 3d 848 (Cal. App. 2d Dist.2007) ............................................... 11

*Delarosa v. Boiron, Inc.,*
275 F.R.D. 582 (C.D. Cal. 2011) ................................................................... 3

*Duran v. U.S. Bank Nat'l Assoc.,*
325 P.3d 916 (Cal. 2014) .............................................................................. 14

*Fletcher v. Sec. Pac. Nat'l Bank,*
591 P. 2d 51 (Cal. 1979) ............................................................................... 12

*Guido v. L'Oreal, USA, Inc.,* Nos.
CV 11-1067 CAS (JCx); CV 11-5465 CAS (JCx), 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) ....................................................................................... 3

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013)......................................................................... 9

*In re Google AdWords Litig.*,
        No.: 5: 08-CV-3369 EJD, 2012 U.S. Dist. LEXIS 1216 (N.D. Cal. Jan. 5, 2012) ............ 7

*In re Google Android Consumer Privacy Litigation*,
        2014 U.S. Dist. LEXIS 31430 (N.D. Cal. March 10, 2014) ............................................ 13

*In re POM Wonderful, LLC Marketing and Sales Practices Litig.*,
        No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. 2012)............ 3

*In re Steroid Hormone Cases*,
        181 Cal. App. 4th 145 (Cal. 2010) ....................................................................... 9

*In re Tobacco II Cases*,
        207 P.3d 20 (Cal. 2009) .................................................................................... 8, 9

*In re Vioxx Class Cases*,
        180 Cal. App. 4th 116 (2009)................................................................................ 9

*Johns v. Bayer Corp.*,
        280 F.R.D. 551 (S.D. Cal. 2012).......................................................................... 3

*Johnson v. Gen. Mills, Inc.*,
        276 F.R.D. 519 (C.D. Cal. 2011) ........................................................................ 3

*Jones v. Conagra Foods Inc.*,
        No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) ............. 2

*Juarez v. Arcadia Financial, LTD.*,
        61 Cal. Rptr. 3d 382, 400 (Cal. App. 4th Dist. 2007) ........................................... 12

*Keilholtz v. Lennox Hearth Products, Inc.*,
        268 F.R.D. 330 (N.D. Cal. 2010)......................................................................... 9

*Kluge v. O'Gara*
        38 Cal. Rptr. 607 (Cal. App. 1st Dist.1964) ....................................................... 15

*Korea Supply Co.v. Lockheed Martin Corp.*,
        63 P.3d 937 (Cal. 2003) ..................................................................................... 13

*Kraft Foods Group Brands, LLC v. Cracker Barrel Old Country Store, Inc.*,
        735 F.3d 735 (7th Cir. 2013)................................................................................ 10

*Kwikset Corp. v. Super. Ct.*,
        246 P.3d 877 (Cal. 2011) ..................................................................................... 9

*Lanovaz v. Twinings N. Am., Inc.*,
        No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 57535 (N.D. Cal. Apr. 24, 2014)........ 3, 8

*Lindell v. Synthes USA*,
        2014 WL 841738 (E.D. Cal. Mar. 4, 2014) ...................................................... 13

*Makaeff v. Trump Univ., LLC*,
        2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ...................................................... 13

*McCrary v. The Elations Co., LLC,*
    EDCV 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) . 3, 6

*Meister v. Mensinger,*
    178 Cal. Rptr. 3d 604  (Cal. App. 6th Dist.2014) ....................................................... 11, 12

*Miletak v. Allstate Ins. Co.,*
    C 06-03778 JW, 2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010 ........................ 10

*Occidental Land, Inc. v. Super. Ct.,*
    556 P.2d 750 (Cal. 1976) ............................................................................................ 8

*Park v. Cytodyne Technologies, Inc.,*
    GIC 768364, 2003 WL 21283814 (Cal. Super. Ct. May 30, 2003)................................. 10

*Park v. Welch Foods, Inc.,*
    No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.) ............................................................... 13

*ProMex, LLC v. Hernandez,*
    781 F.Supp. 2d 1013 (C.D. Cal. 2011)................................................................... 15

*Rahman v. Mott's LLP,*
    No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 147102 (N.D. Cal. Oct. 14, 2014).............. 10

*Ries v. Arizona Beverages USA, LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012)......................................................................... 3, 4, 9

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
    2008 WL 4906433 (C.D. Cal. 2008)............................................................................ 3

*Sanbrook v. Office Depot, Inc.,*
    2009 WL 840020 (N.D. Cal. Mar. 30, 2009)............................................................. 13

*Siminoff v. Jas. H. Goodman & Co. Bank*
    121 P. 939 (Cal. App. 1912) ............................................................................ 15

*Stearns v. Ticketmaster Corp.*
    655 F.3d. 1013 (9th Cir. 2013)........................................................................... 9

*Thurston v. Bear Naked, Inc.,*
    No. 3:11-CV-02890-H (BGS), 2013 U.S. Dist. LEXIS 151490 (S.D. Cal. 2013) ............. 4

*United States v. Gonzalez-Alvarez,*
    277 F.3d 73 (1st Cir. 2002) ............................................................................... 13

*Walmart v.Dukes,*
    131 S. Ct. 2541 (2011) ................................................................................ 8, 15

*Wiener v. Dannon Co.,*
    255 F.R.D. 658 (C.D. Cal. 2009 ....................................................................... 12

*Wolph v. Acer Am. Corp.,*
    272 F.R.D. 477 N.D. Cal. Mar. 25, 2011)........................................................... 4

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010)........................................................................ 13

*Ziesel v. Diamond Foods, Inc.,*
    No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608  (N. D. Cal. June 07, 2011).......... 12

**Statutes**

21 C.F.R. § 101.13 .................................................................................... 7

21 C.F.R. § 101.54 .................................................................................... 7

**Treatises**

Restatement (Second) of Torts, § 538, subd. (2)(b) (1977) ............................................. 9

## STATEMENT OF THE ISSUES TO BE DECIDED

Whether the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3       Defendant's opposition to class certification rests on mischaracterization and distortion –

4 anything to divert the Court from the undeniable fact that Defendant has made millions and

5 millions of dollars by making unlawful label statements on certain of its tomato and fruit

6 products. Plaintiffs relied on the challenged label statements in making their purchasing

7 decisions[1], those label statements do not differ from flavor to flavor within a product line, and

8 each class member was exposed to the same labels as Plaintiffs. The facts are simple. The

9 applicable law is straightforward. The only thing that is complicated is Defendant's convoluted

10 attempt to avoid liability.

11

**ARGUMENT**

12 **I.     Plaintiffs Have Standing To Sue For Products Not Purchased**

13      Defendant misconstrues and manipulates Plaintiffs' deposition testimony to argue that

14 Plaintiffs do not have standing because they did not rely on Defendant's unlawful label

15 statements. Defendant is simply wrong.

16      **Antioxidant Statement:** Both Plaintiffs read and relied on Defendant's antioxidant

17 statements. *See* (Deposition of Michael Kosta ("Kosta Dep."), 50:12-25; 64:16-66:2; 14:1-17;

18 Deposition of Steven Bates ("Bates Dep."), 28:21-29:1; 40:1-6; 43:7-11.)

19      **Refrigeration Statement:** Mr. Kosta was misled by Defendant's "Must Be Refrigerated"

20 statement prior to purchase. (Kosta Dep at 170:12-18.) Mr. Bates similarly relied on Defendant's

21 packaging and believed that this product had the highest level of deception than any other product

22 at issue. (Bates. Dep. at 106:12-25).

23      **"No Artificial Flavors or Preservatives" Statement:** Mr. Kosta read and relied on

24 Defendant's "No Artificial Flavors or Preservatives" statement and would not have otherwise

25 purchased these products (Kosta Dep. at 22:14-24:4; 40:4-13).

26      The fact is (and the evidence shows) that both Plaintiffs relied on Defendant's labels and

27 those labels caused Plaintiffs to purchase Defendant's canned tomato and fruit products.  While

28

---

[1] Excerpts of Mr. Kosta's and Mr. Bates' depositions are attached as Exhibits A and B

PLAINTIFFS' REPLY ISO THEIR MOTION FOR CLASS CERTIFICATION          1
CASE NO. 4:12-CV-01722-YGR

1   Defendant's slip and fall analogy is cute, it misses the mark. Plaintiffs read, relied, and were

2   misled by Defendant's product labeling, which resulted in an actual injury—purchasing the

3   misbranded products.

4            Defendant also argues that different interpretations of the labels prevent standing or, in the

5   alternative, a finding that the Plaintiffs are typical of all class members. (Opp. Br. at 4.) As for

6   refrigeration, Defendant concedes it only has one meaning:

> THE COURT: That wasn't my question, Mr. Stern. You said that these things
> have different meanings. I was challenging you to give me a meaning for "must
> be refrigerated" other than it must be in the refrigerator.
>
> MR. STERN:  There is no other meaning on that one.

10   (Transcript of Proceedings, Doc. No. 155 at 40, (September 2, 2014) ("Transcript")).  Defendant

11   argues that Mr. Bates cared only about the word "Fresh," but this ignores Mr. Bates' testimony

12   that he found "naturals," "in 100% juice," the clear packaging, and the fact that the product

13   required refrigeration to be misleading. (Bates Dep. 124:17-23.) As for preservatives, Defendant

14   argues that Mr. Kosta's interpretation of "artificial flavors or preservatives as fresh" was illogical

15   (Opp. Br. at 5,) but it's only illogical because Defendant selectively quotes his testimony. Mr.

16   Kosta testified about what "artificial flavors or preservatives" meant to him:

> Q.      Does "No artificial flavors or preservatives" mean fresh to you?
>
> A.      It means that there was nothing added to alter the flavor, enhance the
>         flavor, or preserve the product. I'm not sure what's left.

20   (Kosta Dep. at 16:15-19.)  Despite Defendant's distortion of Plaintiffs' testimony, the evidence

21   demonstrates that both Plaintiffs read and relied on the challenged label statements.

22            Defendant cites *Jones v. Conagra Foods Inc.*, No. C 12-01633 CRB, 2014 U.S. Dist.

23   LEXIS 81292 (N.D. Cal. June 13, 2014) to support its argument that Plaintiffs do not have

24   standing or in the alternative are not typical.  *Jones* is applicable here for standing purposes, but

25   not for the reason cited by Defendant. Plaintiffs have testified that they read and were misled by

26   Defendant's labels, which is sufficient for standing purposes.[2] *Id.* at *15, 18 (finding standing

27

28   _____

[2] *See* Bates Dep. at 24:6-21; 28:21-29:11; 34:24-35:3; 36:8-21; 37:13-22; 40:1-6; 40:23-41:6;
45:25-46:5; 47:13-20; 60:9-13; 73:7-10; 73:23-25; 74:2-18; 80:9-20; 89:12-13; 89:19-90:2; 91:4-
8; 98:2-5; 101:17-24; 107:12-21; 125:12-126:1; 182:13-21; *see also* Kosta Dep. at pp. 14:7-12;

1   where the plaintiff testified that he read and relied on natural label statement on ketchup, but not

2   finding standing where the plaintiff was not misled by antioxidant statement on hot cocoa.)

3   Additionally, Plaintiffs' claims are typical of the class. In *Jones*, the plaintiff initially brought a

4   "natural" claim, but then sought to certify an "ingredient list" claim. *Id.* at *24. Judge Breyer

5   found that typicality did not exist because the plaintiff had not read or relied on the ingredient list.

6   *Id.* Here, however, Plaintiffs did read and rely on Defendant's label claims.

7   **II.    The Class Is Ascertainable**

8          **A.  A Lack of Business Records Does Not Preclude Ascertainability.**

9          Defendant argues that because it does not have a record of people who purchased its

10  products, a class cannot be certified; consumers cannot be trusted to recall past purchases. (Opp.

11  Br. at 5)  In support, Defendant cites *Carrera v. Bayer Corp.,* 727 F.3d 300 (3d. Cir. 2013) and

12  *Jones v. ConAgra Foods, Inc.*, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014.

13         First, *Carrera* is not the law in this circuit. "While [*Carrera*] may now be the law in the

14  Third Circuit, it is not currently the law in the Ninth Circuit." *Brazil v.  Dole Packaged Foods*

15  *LLC* , No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, at *18 (N.D. Cal. May 30, 2014)

16  (quoting *McCrary v. The Elations Co., LLC,* EDCV 13-00242 JGB (OPx), 2014 U.S. Dist.

17  LEXIS 8443, at *24, 25 (C.D. Cal. Jan. 13, 2014); *see also, Lanovaz v. Twinings N. Am., Inc.*,

18  No. C-12-02646-RMW, 2014 U.S. Dist. LEXIS 57535, at *7 (N.D. Cal. Apr. 24, 2014)

19  ("[Defendant] argues that the proposed class lacks ascertainability because few, if any, company

20  records exist to identify purchasers or which products they bought, and consumers did not keep

21  receipts or product containers. This is not persuasive.").[3]

22

23  20:17-20; 39:23-40:13; 50:12-20; 62:9-63:9; 65:13-66:2; 79:6-22; 115:12-116:11; 138:6-12;
    171:23-172:10 (excerpts attached).
24  [3] Contrary to the Third Circuit's reasoning in *Carrera,* courts in this Circuit routinely certify
    classes of purchasers of over-the-counter products where it would be impossible to identify and
    notice every member of the class.  *See, e.g., Chavez v. Blue Sky Natural Beverage Co.,* 268
25  F.R.D. 365, 377 (N.D. Cal. 2010) (beverages); *In re POM Wonderful, LLC Marketing and Sales*
    *Practices Litig.,* No. ML 10-02199 DDP (RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. 2012)
26  (juice products); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS (JCx); CV 11-5465 CAS
    (JCx), 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) (hair products); *Johns v. Bayer*
    *Corp.,* 280 F.R.D. 551, 560 (S.D. Cal. 2012) (multivitamins); *Ries v. Arizona Beverages USA,*
27  *LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012) (tea products); *Delarosa v. Boiron, Inc.,* 275 F.R.D.
    582, 595 (C.D. Cal. 2011) (homeopathic products); *Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519,
28  524 (C.D. Cal. 2011) (yogurt products); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
    2008 WL 4906433 (C.D. Cal. 2008) (nutritional supplements).

1    Second, and respectfully, Judge Breyer's opinion in *Jones* reflects a minority position.

2    The majority position is set out in *Dole*, *Twinings*, and the numerous cases listed in footnote 3

3    above. In *Astiana v. Kashi Co.*, 291 F.R.D. 493, 510 (S.D. Cal. 2013) in which the court certified

4    a class of consumers who purchased defendant's products labeled "All Natural" or "Nothing

5    Artificial" the court rejected arguments identical to Defendant's stating:

> 6    There is no requirement that 'the identity of the class members ... be known at the
> 7    time of certification.' " *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 536
>       (N.D.Cal.2012); *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 482 N.D. Cal. Mar.
> 8    25, 2011). If class actions could be defeated because membership was difficult to
>       ascertain at the class certification stage, "there would be no such thing as a
> 9    consumer class action." *Ries,* 287 F.R.D. at 536. As long as the class definition is
>       sufficiently definite to identify putative class members, "[t]he challenges entailed
> 10   in the administration of this class are not so burdensome as to defeat
>       certification."
> 11

12   *Id* at 500; *see also Thurston v. Bear Naked, Inc.*, NO. 3:11-CV-02890-H (BGS), 2013 U.S. Dist.

13   LEXIS 151490, at *8 (S.D. Cal. 2013) (rejecting same argument). Refusing to certify a class

14   because a defendant does not keep sales records of its end consumers would eviscerate consumer

15   class actions. *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 659 (C.D. Cal. 2014) (citing *Astiana*, 291

16   F.R.D. at 500 and *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 536 (N.D. Cal. 2012).

17   Relying on *Bruton v. Gerber Products CO.,* No. 12-CV-02412-LHK, 2014 U.S. Dist.

18   LEXIS 86581 (N.D. Cal. June 23, 2014), Defendant creates a "memory test" that it believes

19   consumers will have to engage in to accurately recall whether they purchased one of its products

20   with an unlawful label. (Opp. Br. at 6.) But this is not a *Bruton*-like case. All the 14 ½ oz. cans of

21   diced tomato and stewed tomato products had the antioxidant labels (Transcript, at -34-35,) and a

22   consumer will likely remember what types of Del Monte canned tomato products he/she

23   purchases. As to the fruit products, Defendant has admitted all of these products contain the

24   "Must be Refrigerated" statement.[4] Even if Defendant changed the labels to read "Refrigerate For

25   Quality," the products are still likely unlawful. (*See* Dr. F. Edward Scarbrough Declaration

26   ───────────────
     [4] Defendant does not argue that all the labels for its FruitNaturals and SunFresh products do not
27   contain the "refrigeration" statement. Instead, they argue that 60% of each of the flavors in those
     lines actually require refrigeration. This does not preclude ascertainablity for class certification. If
     all the FruitNaturals and SunFresh products contain the "refrigeration" statement, the consumers
28   can simply recall whether or not they purchased one of these products, and whether or not any of
     these products actually need to be refrigerated is a fact question common to the class.

1    attached hereto as Ex. I.) At minimum, questions about whether "refrigerate for quality" is lawful

2    present common, not individual, issues.

3          Defendant points out that today consumers can find products with the challenged

4    statements next to products without the challenged statements. Defendant should not be able to

5    escape liability simply because it has put into the chain of commerce unlawful products next to

6    allegedly lawful ones. Defendant relies on its 30(b)(6) representative Jackie Curtis to confirm the

7    label changes. But all of Defendant's 30(b)(6) witnesses either testified they were not involved in

8    any label changes (Deposition of Janine Peery[5], ("Peery Dep.") at 45: 5-13,) or that *there were no*

9    *label changes on any of the products from 2008 to 2012 or 2013.* (Deposition of Liam Farrell,

10   ("Farrell Dep.") at 71:8-25, 72:4-73:6, 73:15-24; 80:18-81:3, 85: 25-86:19, 87:11-88:5, 88:9-

11   89:1; Deposition of Jackie Curtis, "Curtis Dep." at 21:19-24, 38:16-39:7, 40:4-14, 56:7-19 , 67:8-

12   16).

13         Finally, even if the Court finds that the products should be narrowed due to label

14   discrepancies, it is free to narrow the class definition, which Defendant acknowledges.

15   (Transcript, at 39.)

16        **B.  Defendant's Post-Litigation Label Changes Do Not Defeat**
         **Ascertainability.**
17

18         Defendant argues that because it changed its labels – *after* Plaintiffs filed this lawsuit – it

19   is now "impossible to determine by 'objective' means who (if anyone) was injured." (Opp. Br. at

20   7.) Defendant relies on two cases both of which are distinguishable. In *Jones*, the labels on the

21   tomato products changed at different times throughout the class period. *See Jones,* No. C 12-

22   01633, Doc. No. 203, Decl. of Timothy Nangle. In *Bruton*, 2014 U.S. Dist. LEXIS 86581, at *24-

23   30, the defendant sold baby food products both with and without the challenged label statements

24   during and throughout the class period. Such is not the case here. Defendant's Diced Tomatoes

25   and Stewed Tomatoes contained the blue antioxidant flag from the beginning of the class period

26   until some time in 2013, when, in response to this lawsuit, Defendant removed the flag. But, these

27

28   [5] Excerpts to the Peery Dep., Farrell Dep., and Curtis Dep. are attached as Exhibit C, D, and E,
     respectively.

PLAINTIFFS' REPLY ISO THEIR MOTION FOR CLASS CERTIFICATION                                      5
CASE NO. 4:12-CV-01722-YGR

1   products have always contained the statement "no artificial flavors or preservatives" and continue

2   to do so. The SunFresh and Fruit Naturals products have been labeled "must be refrigerated"

3   throughout the class period until some products were labeled "refrigerate for quality," which is no

4   less unlawful.

5          The only evidence Defendant produces to support its assertion that the product labels

6   varied is the declaration of Liam Farrell. In his deposition, Mr. Farrell testified that the labels for

7   each challenged product did not change from 2008-2013. *(See* Farrell Dep. at 71:8-25, 72:4-73:6,

8   73:15-24; 80:18-81:3, 85: 25-86:19, 87:11-88:5, 88:9-89:1.) Now, Farrell relies on print copies of

9   labels to support this new position that the product labels did change. [6] (*See* Declaration of Liam

10  Farrell, Doc. No. 182-13, at 2-8.) However, Mr. Farrell cannot know for certain whether these

11  print copies ever even made it onto a product—by Defendant's own admission there is no way to

12  confirm whether a particular label was placed on a product and into the stream of commerce, and

13  there are no documents cataloguing label changes. (Curtis Dep. at 75:3-15.) *They have no*

14  *evidence to support their argument that a label change occurred before 2013.*[7]

15         Finally, "[a] lack of ascertainability alone will generally not scuttle class certification."

16  *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *6 (C.D. Cal. Apr. 12, 2012) (citing *Galvan v.*

17  *KDI Distrib.*, SACV 08-0999-JVS (ANx), 2011 U.S. Dist. LEXIS 127602, at *14 (C.D. Cal. Oct.

18  25, 2011).

19  **III.    Commonality and Predominance Are Not Lacking as to Liability**

20         **A.  The Class Definition Is Not Overbroad.**

21         Defendant argues that the class definition is impermissibly overbroad because it includes

22  people who "did not see or rely on the alleged misrepresentations, or were not misled." (Opp. Br.

23  at 7-8.) This argument was explicitly rejected in *McCrary*. "Moreover, Defendant's concern that

24  some putative class members . . . were uninjured is unpersuasive. *McCrary*, 2014 U.S. Dist.

25  LEXIS 8443, at *44. "[T]he requirement of concrete injury is satisfied when the Plaintiffs and

---

[6] Plaintiffs are simultaneously moving to strike the declaration of Liam Farrell and incorporate that motion herein by reference.

[7] *See* Exhibit G, October 14, 2014 email from Defendant's counsel to Plaintiffs' counsel stating that Defendant cannot confirm that label copies were actually put onto the products and that there "are also no documents cataloging differences in label statements."

class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." *Id* (quoting *In re Google AdWords Litig.*, No.: 5: 08-CV-3369 EJD, 2012 U.S. Dist. LEXIS 1216 (N.D. Cal. Jan. 5, 2012).The focus of the UCL and FAL is on the actions of the defendants, *not on the subjective state of mind of the class members*. *McCrary*, 2014 U.S. Dist. LEXIS 8443, at \*44. (Emphasis added.)

Defendant makes no attempt to distinguish this case from *Astiana v. Kashi Co.*, 291 F.R.D. 493, 510 (S.D. Cal. 2013) ("*Kashi*") in which the court certified a class of consumers who purchased defendant's products labeled "All Natural" or "Nothing Artificial." "[T]he proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation." *Id.* at 500. Furthermore, "[i]t strains credulity to suggest that a 'significant portion of the general consuming public . . .' do not rely—at least in part—on representations about the products' uses and effectiveness on product packaging when buying the products." *Allen*, 300 F.R.D. at 667.

## B. There Are No Material Label Differences That Would Defeat Commonality/Predominance.

Defendant argues that "the labels are different" and, therefore, commonality and predominance don't exist. (Opp. Br. at 9.) This is simply not true for the reasons discussed in Section II.B., *supra*. Each class member purchased Defendant's misbranded products. Each class member was subject to the same unlawful and deceptive labeling statements during the proposed class period. A finding of Defendant's culpability for a single class member will yield the same result for all.

## C. The Challenged Statements Have A Single Meaning.

Defendant next argues that there is no common meaning for challenged statements and, therefore, there can be no common deception. (Opp. Br. at 9.) The fact that consumers may have different understandings about the meaning of "Natural Source of Antioxidants" demonstrates

1    exactly the type of consumer confusion the FDA was trying to prevent. Federal regulations,

2    adopted by California's Sherman Law, do not allow Defendant to tout a nutrient for which there

3    is no established daily value. 21 C.F.R. §§ 101.13 and 101.54.  There is no daily value for

4    lycopene. Thus, Defendant cannot say it's a "natural source," "good source," or "excellent

5    source." How could one possibly determine whether a product is a good or bad source of

6    something for which there is no daily value? Defendant's tomato products could be 99%

7    lycopene, but if there's no daily value for lycopene, the 99% is a meaningless value. Ultimately,

8    however, the question of whether a reasonable consumer would agree with Plaintiffs'

9    understandings of "natural source of antioxidants" is a question for the jury, not for class

10   certification. Further, Defendant has conceded that "must be refrigerated" does not have multiple

11   meanings. (Transcript at 40.)

12              **D.  Materiality, Causation and Reliance Do Not Raise Individual Issues.**

13          Defendant's argument that Plaintiffs must demonstrate that materiality, causation and

14   reliance are common to the class have been rejected numerous times. In *Dole*, the court stated that

15   materiality is a "question common to the class, the resolution of which 'will resolve an issue that

16   is central to the validity of each of the claims in one stroke.'" *Brazil*, 2014 U.S. Dist. Lexis 74234,

17   *24-25 (quoting *Walmart v.Dukes*, 131 S. Ct. 2541, 2545 (U.S. 2011)). "Because 'an inference of

18   reliance arises if a material false representation was made to persons whose acts thereafter were

19   consistent with reliance upon the representation,' should [the plaintiff] prevail in proving that [the

20   defendant']s label misstatements were material, he will have established a presumption of

21   reliance as to the entire class as well. *Id.* (quoting *Occidental Land, Inc. v. Super. Ct.*, 556 P.2d

22   750 (Cal. 1976); *see also In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009).

23          In *Twinings*, Judge Whyte ruled, "As materiality is an objective inquiry, no individualized

24   examination of materiality is necessary. To establish materiality, [the plaintiff] need only prove

25   that a reasonable consumer would attach importance to [the defendant's] antioxidant statements,

26   or that [the defendant] knows or has reason to know that its consumers are likely to regard the

27   label statements as important in making purchasing decisions. This question is common to the

28   class." *Twinings*, 2014 U.S. Dist. LEXIS 57535, at *14. Indeed, the overwhelming majority of

courts that have considered these arguments have rejected them. For example, in *Keilholtz v.*

*Lennox Hearth Products Inc*, the court held:

> [T]he causation required by the [CLRA] does not make plaintiffs' claims
> unsuitable for class treatment. Causation as to each class member is commonly
> proved more likely than not by materiality. That showing will undoubtedly be
> conclusive as to most of the class. As noted above, common questions
> predominate even if Defendant can defeat the showing of causation as to a few
> individual class members. As long as Plaintiff can show that material
> misrepresentations were made to the class members, an inference of reliance
> arises as to the entire class.

268 F.R.D. 330, 343 (N.D. Cal. 2010). In *Hinojos v. Kohl's Corp.,* 718 F.3d 1098 (9th Cir. 2013),

the Court of Appeals for the Ninth Circuit—following the California Supreme Court's dictates

from *Kwikset Corp. v. Super. Ct.,* 246 P.3d 877 (Cal. 2011)—addressed the issue of materiality in

the context of a class action based on the UCL:

> A representation is "material,"…if a reasonable consumer would attach
> importance to it or if "the maker of the representation knows or has reason to
> know that its recipient regards or is likely to regard the matter as important in
> determining his choice of action."8 *Id*. at 892 (quoting Restatement (Second) of
> Torts, § 538, subd. (2)(b) (1977)). Moreover, the legislature's decision to prohibit
> a particular misleading advertising practice is evidence that the legislature has
> deemed that the practice constitutes a "material" misrepresentation, and courts
> must defer to that determination.

*Hinojos,* 718 F.3d at 1107. Pursuant to *Hinojos*, this legislative regulation of the label statements

establishes, by itself, that the statements are material.

In *In re Tobacco II,* California's Supreme Court resolved the question of whether the

named class member and absent class members need demonstrate reliance upon an unlawful

statement for class certification. *In re Tobacco II*, 207 P.2d at 31 . That Court held that only the

named plaintiff need show reliance upon the unlawful statement. *Id*. [8]

Defendant's argument regarding *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133

(2009) was recently rejected in *Dole*. "Unlike *Vioxx*, this case presents specific alleged

misrepresentations common to the class . . . . Therefore, the objective inquiry into whether 'a

---

[8] California law is now well settled that reliance by a named plaintiff on a material
misrepresentation is imputed to the class. *Stearns v. Ticketmaster Corp.*655 F.3d 1013, 1022-23
(9th Cir. 2013) (relying on *In re Steroid Hormone Cases*, 181 Cal. App. 4th 145, 155-56 (Cal.
2010); *see also Ries*, 287 F.R.D. at 537-38.

1   reasonable consumer would attach importance' to Dole's label statements is a question common

2   to the class." *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *27-28.  A reasonable consumer would

3   attach significance to the challenged label statements. *See* Doc. No. 128, Ex. 2, Decl. of Julie

4   Caswell.

5          Defendant also argues that Plaintiffs must have a consumer survey to prove deception.

6   (Opp. Br. at 13-14.) But none of the cases cited by Defendant *required* a consumer survey. To the

7   contrary, in *Rahman v. Mott's LLP*, the court noted:

8          Other courts have taken a less data-driven approach, requiring only that
           "reasonable minds could differ" in order to find a triable issue of fact as to
9          whether a reasonable consumer would be deceived. *Miletak v. Allstate Ins. Co.*, C
           06-03778 JW, 2010 U.S. Dist. LEXIS 26913, 2010 WL 809579 (N.D. Cal. Mar.
10         5, 2010); *see also Park v. Cytodyne Technologies, Inc.*, GIC 768364, 2003 WL
           21283814 (Cal. Super. Ct. May 30, 2003) ("[T]o establish that advertising is
11         misleading under a reasonable consumer test should not require the use of
           consumer surveys. Considering that the advertisement speaks for itself, the judge
12         is in a position to determine whether it is misleading, i.e. likely to deceive, under
           a "reasonable consumer" standard."); *Brockey v. Moore*, 131 Cal. Rptr. 2d 746
13         (2003).

14  No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 147102, at *25-26 (N.D. Cal. Oct. 14, 2014).

15         **E.  Dr. Van Liere's "Study" Does Not Refute A Finding of Materiality or
               Deception.**
16

17         Defendant offers a post-litigation survey to argue there is no common evidence to show

18  materiality or deception. The Seventh Circuit observed the following about consumer surveys:

19         [W]e want to say something about the consumer survey Kraft presented in support
           of its claim of confusion.  Consumer surveys conducted by party-hired expert
20         witnesses are prone to bias.  There is *such* a wide choice of survey designs, none
           foolproof, involving such issues as sample selection and size, presentation of the
21         allegedly confusing products to the consumers involved in the survey, and
           phrasing of  questions in a way that is intended to elicit the surveyor's desired
22         response – confusion or lack thereof – from the survey respondents.  Among the
           problems identified by the academic literature are the following:  when a
23         consumer is a survey respondent, this changes the normal environment in which
           he or she encounters, compares, and reacts to trademarks; a survey that produces
24         results contrary to the interest of the party that sponsored the survey may be
           suppressed and thus never become a part of the trial record; and the expert
25         witnesses who conduct surveys in aid of litigation are likely to be biased in favor
           of the party that hired and is paying them, usually generously.  All too often
26         experts abandon objectivity and become advocates for the side that hires them.

27  *Kraft Foods Group Brands, LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741

28  (7th Cir. 2013) (emphasis in original)(internal citations omitted). All of these concerns apply to

Defendant's *post-litigation* consumer survey.  Dr. Van Liere gives very little information on the phrasing of the survey questions, the composition of the data sample, and the data which Dr. Van Liere may have discarded that did not cohere with Defendant's desired result. Interestingly, Defendant's counsel offered a similar "study" by Dr. Van Liere in *Dole*. The court didn't mention the "study" a single time in reaching the conclusion that the defendant's statements did present common questions of materiality and deception. *Dole*, 2014 U.S. Dist. LEXIS 74234, at *27-28. Dr. Van Liere's study did not even take into account the label statements on Defendant's fruit products. The Court should not consider Dr. Van Liere's unreliable and biased submission.[9]

## IV. Plaintiffs Can Show Classwide Entitlement to Monetary Relief.

### A. Disgorgement Is The Proper Remedy For Plaintiffs' Unjust Enrichment Claim.

To hide its erroneous legal reasoning, Defendant lumps all of Plaintiffs' claims together and declares that there is only one measure of monetary relief in food misbranding cases: the difference between the amount Plaintiffs paid and the value Plaintiffs received. (Opp. Br. at 18.)

Disgorgement is the equitable remedy for unjust enrichment. "Disgorgement as a remedy is broader than restitution or restoration of what the plaintiff lost." *Meister v. Mensinger*, 178 Cal. Rptr. 3d 604, 617 (Cal. App. 6th Dist.2014) (citing *County of San Bernardino v. Walsh*, 69 Cal. Rptr. 3d 848, 856 (Cal. App. 2d Dist.2007) and *Feitelberg v. Credit Suisse First Boston, LLC*, 36 Cal. Rptr. 3d 592 (Cal. App. 6th Dist. 2005)). "[T]he public policy of this state does not permit one to 'take advantage of his own wrong' regardless of whether the other party suffer actual damage. Where 'a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust … the defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched.'" *Id.*at 618. (Citations omitted.) "The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both

---

[9] Dr. Capps has described the flaws in Defendant's survey in his reply declaration submitted as Exhibit A to Plaintiffs' first motion for certification. *See* (Dkt. No. 143-1.)

benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. *Id.* Further, the calculation of unjust enrichment is, like any other calculation, sometimes simple and sometimes complex. Merely because the calculation is more complex does not mean that the remedy is unavailable, however. As we have previously noted in discussing the concept of unjust enrichment, "[t]here is no standard formula to measure it."  "Recovery is not prohibited just because the benefit cannot be precisely measured. But as with any other pecuniary remedy, there must be some reasonable basis for the computation." (*Ibid.*) *Meister*, 178 Cal. Rptr. 3d at 620 (quoting *Ajaxo Inc. v. E\*Trade Financial Corp.*, 115 Cal. Rptr. 3d 168 (2010)).

### B. Restitution Per Plaintiffs' UCL, FAL, And CLRA Claims.

With due respect to Judges Koh, Breyer, and Whyte, the measure of restitution is not limited to the difference between what a plaintiff paid for an unlawful product and the value received. In fact, the measure of restitution can even be "broader than simply the return of money that was once in the possession of the person from whom it was taken . . ." *Juarez v. Arcadia Financial, LTD.*, 61 Cal. Rptr. 3d 382, 400(Cal. App. 4th Dist. 2007). In *Juarez,* the court explained, "Ordinarily, the measure of restitution is the amount of enrichment received . . . but as stated in Comment *e* [of the Restatement on Restitution]*,* if the loss suffered differs from the amount of benefit received, *the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.*" (internal citation omitted). *Id.*

Restitution addresses the equity "concern that wrongdoers not retain the benefits of their misconduct." *Fletcher v. Sec. Pac. Nat'l Bank*, 591 P. 2d 51, 57 (Cal. 1979). "A court awarding restitution under the California consumer protection laws has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff *the amount that the defendant wrongfully acquired.*'" *Kashi*, 291 F.R.D. at 506 (emphasis added) (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670-71 (C.D. Cal. 2009).

Restitutionary disgorgement can be ordered based on common evidence available from Defendant's own records of its sales, profits, and pricing data as well as third party sources. *See Ziesel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at \*32 (N.

D. Cal. June 07, 2011). Plaintiffs' claim for restitutionary disgorgement would not provide a windfall to Plaintiffs. In fact, disgorgement would only provide to Plaintiffs and the Class partial restitution because class members paid retail prices for Defendant's products rather than Defendants' wholesale prices.[10] This approach is proper. *See Korea Supply Co.v. Lockheed Martin Corp.,* 63 P.3d 937, 949 (Cal. 2003) (restitutionary disgorgement of profits made by wrongdoer on the transactions at issue is permitted, whereas nonrestitutionary disgorgement of profits at large prohibited); *In re Google Android Consumer Privacy Litigation*, 2014 U.S. Dist. LEXIS 31430, at *21-22 (N.D. Cal. March 10, 2014) (citing *Korea Supply Co*. and holding "the Court cannot conclude that Plaintiffs might not be able to show an ownership interest in at least some of Google's profits.").[11]

Even if the Court were to adopt the approach of Judges Koh, Breyer, and Whyte in determining the measure of restitution, the difference between what Plaintiffs and the Class paid for Defendant's unlawful products and the value received presents common issues. Dr. Capps has demonstrated that he can show what Plaintiffs and the Class paid for Defendant's products. The other part of the equation – the value Plaintiffs and the Class received – is uniform across the Class. In written discovery on the issue of value, Defendant stated, "[C]onsumers receive caloric and nutritional value when purchasing and consuming Challenged Products." (Defendant Del

---

[10] If the Court determined that the class should be awarded full restitution, because, *inter alia*, the product is illegal to sell or hold this would also be a common calculation using average retail prices.  This is also a proper measure of damages easily calculated on a class-wide basis.  *See Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) ("In summary, Chavez asserts that he purchased beverages that he otherwise would not have purchased in absence of the alleged misrepresentations. As a result, Chavez personally lost the purchase price, or part thereof, that he paid for those beverages."); *Sanbrook v. Office Depot, Inc.*, 2009 WL 840020, at *5 (N.D. Cal. Mar. 30, 2009) ("Furthermore, the injury suffered by each class member is likely equivalent as well: the purchase price of the Plan."); *United States v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002) ("where a product cannot be sold lawfully it has a value of zero..."); *Park v. Welch Foods, Inc.*, Case No. 5:12-cv-6449, Dkt. 49 (N.D. Cal.) (J. Grewal) ("The fact remains, however, that in California, '[i]t is unlawful for any person to . . . hold or offer for sale any food that is misbranded,' and the statute establishing that is subject to the punishments described above.").

[11] Defendant's attacks on Dr. Capps' damages models do not defeat class certification. When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate. *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *16 (S.D. Cal. Feb. 21, 2014).  *See also, Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification."); *Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) ("The *Comcast* ruling reiterated a fundamental focus of the Rule 23 analysis: The damages must be capable of determination by tracing the damages to the plaintiff's theory of liability. However, so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification.").

Monte Foods, Inc.'s Supplemental Response To Request For Production No. 22 Of Plaintiffs' First Set Of Requests For Production Of Documents To Defendant, at 4)[12]. The caloric and nutritional value of the challenged products will not vary from can to can or cup to cup. These values are uniform across the class. Defendant further stated, "These taste, quality, brand recognition, convenience, and health factors, among others, all constitute 'value' consumers receive when purchasing Challenged Products." *Id.* Taste, quality, brand recognition, convenience, and health factors are all uniform for each can and cup of the challenged products. Defendant can't plausibly argue that the taste of one can of diced tomatoes varies wildly from one can to the next. The convenience associated with grabbing a cup of FruitNaturals isn't going to change from one cup to the next. If value must be considered, it presents common, not individual, questions. Given that Defendant has presented not a shred of evidence to place a dollar amount on its products' value – which is its burden given that value received is an affirmative defense – the Court would be on solid ground in finding that the value of Defendant's products is zero.

### C. Actual Damages Per Plaintiffs' CLRA Claim Are Amenable to Classwide Proof.

Defendant makes much of Judge Koh's rulings decertifying classes in *Dole* and *Blue Diamond*. First, the plaintiffs in those cases have appealed or soon will appeal. Second, the cases are factually dissimilar as explained in Dr. Capps' declaration attached hereto as Exhibit F.

### D. Dr. Capps' Models Do Not Violate *Duran*.

Defendant argues that Dr. Capps' damages models run afoul of the recent California Supreme Court ruling in *Duran v. U.S. Bank Nat'l Assoc.*, 325 P.3d 916 (Cal. 2014). Defendant's argument is without merit and has been rejected before. In *Dole*, the court found that *Duran* (1) has little application in food misbranding cases (2) to the extent Duran has application, the court's certification of the class is consistent with *Duran* and (3) because [the defendant's] liability doesn't require proof that individual class members relied on the challenged statements, there is no risk that the class includes numerous uninjured consumers. *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 81690, 7-8 (N.D. Cal. June 16, 2014).

---

[12] Attached as Exhibit H.

### E.  Nominal Damages Are Available.

Defendant argues that nominal damages are not available in a CLRA action and that Plaintiff fails to provide a workable damages model. These arguments miss the point. First, Plaintiffs' nominal damages claim does not arise from the CLRA. Nominal damages may be recovered if no loss or injury has resulted from an act but the law recognizes a technical invasion of a plaintiff's rights or a breach of duty by a defendant. *Avina v. Spurlock*, 105 Cal. Rptr.198 (1972). The award of nominal damages compensates for the invasion of the right and, therefore, constitutes a recognition of that right and an admonition that it cannot be invaded with impunity. *See Kluge v. O'Gara*  38 Cal. Rptr. 607, 609 (Cal. App. 1st Dist.1964); *Siminoff v. Jas. H. Goodman & Co. Bank* 121 P. 939, 943 (Cal. App. 1912). In the present case, nominal damages arise from Defendant's practice of selling misbranded food to Plaintiffs and class members. Second, nominal damages may be recovered if real, actual injury has occurred and damages have been suffered, but the extent and amount of the injury and damages cannot be determined from the evidence presented.  *Avina*, 105 Cal. Rptr. at 200; *see also ProMex, LLC v. Hernandez*, 781 F.Supp. 2d 1013, 1019 (C.D. Cal. 2011) (holding plaintiff entitled to recover nominal damages where there was a legal wrong without appreciable damages). Thus, a damage model is not necessary for an award of nominal damages. It is precisely for those cases in which a calculation of damages cannot be proven with the necessary accuracy that nominal damages are allowed. Defendant should not be allowed to keep ill-gotten gain simply because damages may be hard to calculate on a classwide basis. In that sense, an award of nominal damages is an alternative to restitution and CLRA damages.

### V.      The Court Should Certify A Rule 23(b)(2) Injunction Class

Defendant's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) is misplaced. Plaintiffs do not seek monetary relief from certification of a (b)(2) class. Plaintiffs seek certification under (b)(3) for their monetary relief claims.

### CONCLUSION

Plaintiffs respectfully request that the motion for class certification be granted.

Dated:  January 12, 2014.          Respectfully submitted,

                                    /s/ *Brian K. Herrington*
                                   Brian K. Herrington (admitted *pro hac vice*)
                                   DON BARRETT, PA
                                   404 Court Square North
                                   P.O. Box 927
                                   Lexington, MS 39095
                                   Telephone: (662) 834-2488
                                   Fax: (662) 834-9628
                                   bherrington@barrettlawgroup.com

                                   Ben F. Pierce Gore (SBN 128515)
                                   PRATT ASSOCIATES
                                   1871 The Alameda, Suite 425
                                   San Jose, CA 95126
                                   Telephone: (408) 429-6506
                                   Fax: (408) 369-0752
                                   pgore@prattattorneys.com

                                   *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Brian K. Herrington, hereby certify that a true and complete copy of the foregoing was

served to all counsel of record via the ECF filing system on January 12, 2015.


                                    /s/  *Brian K. Herrington*
                                   Brian K. Herrington