**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL KOSTA AND STEVE BATES, individuals on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DEL MONTE FOODS, INC.,<br><br>Defendant. | Case No.: 12-CV-1722 YGR<br><br>**ORDER DENYING PLAINTIFFS' THIRD MOTION FOR CLASS CERTIFICATION (DKT. NO. 174)** |

Plaintiffs bring this putative class action alleging that the labels on certain Defendant Del Monte Foods, Inc. ("Del Monte") food products, as well as Del Monte's advertising, do not comply with the federal Food, Drug, and Cosmetics Act ("FDCA"), as adopted by the California Sherman Law, Cal. Health & Safety Code section 109875, *et seq.* ("Sherman Law"). Based upon those violations, Plaintiffs assert claims under several state and federal consumer protection statutes: the California Unfair Competition Law, Bus. & Prof. Code section 17200 *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code section 17500 ("FAL"); the Consumers Legal Remedies Act, Cal. Civ. Code section 1750 *et seq.* ("CLRA"), as well as a state law claim for restitution.[1]

Plaintiffs allege that Del Monte has intentionally misbranded its products in violation of federal and California law. In the class certification motion, Plaintiffs claim that Del Monte's

---

[1] In its Order dated May 15, 2013, the Court granted in part and denied in part DelMonte's motion to dismiss and strike portions of the First Amended Complaint ("FAC"). (Dkt. No. 92.) The Court thereafter consolidated the instant case with the related case, *Langille v. Del Monte Corporation*, Case No. 13-cv-1839 YGR, and directed the filing of a Consolidated Complaint on June 11, 2013. (Dkt. No. 96.)

canned tomato products, and their SunFresh and FruitNaturals fruit products, include unlawful and misleading claims in three general categories. As to the tomato products, Plaintiffs seek certification for the products labels bearing : (1) antioxidant claims, which include a statement and symbol ("blue flag") indicating that the products "contain antioxidants," despite failing to meet the minimal FDA nutritional requirements for that statement; and (2) a statement that the product is a "natural source" of lycopene, a nutrient for which there is no FDA established daily value; and (3) "no artificial flavors or preservatives" claims, where such products contain ingredients such as calcium chloride, citric acid, high fructose corn syrup, and carmine. (Complaint at ¶¶ 116, 124, 125.) For the fruit products, Plaintiffs seek certification of their claim that the products' refrigeration indicators—including packaging similar to fresh produce, placement in refrigerated cases, and label statements stating that products "must be refrigerated" and are "fresh"—were misleading. Plaintiffs further claim that the product labels and packaging at issue are alike, regardless of where the product was bought and regardless of the particular flavor of the product.

Based on these allegations, and the evidence presented in connection with their motion, Plaintiffs move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, as follows:

> All persons in the United States who, from April 5, 2008, until the date of notice, purchased a Defendant's brand canned tomato product or a Defendant's FruitNaturals or SunFresh fruit product.[2]

Specifically, Plaintiffs move to certify a class under Rule 23(b)(2) and under Rule 23(b)(3).

**I.  BACKGROUND**

**A.  Procedural Background**

Plaintiffs filed their original complaint April 5, 2012. When Del Monte moved to dismiss the original complaint, Plaintiffs filed a First Amended Complaint on July 6, 2012. (Dkt. No. 23.) The Court granted in part and denied in part Del Monte's motion to dismiss the FAC on May 15,

---

[2] The following persons are expressly excluded from the proposed class definition: (i) Defendant and its subsidiaries and affiliates; (ii) all persons who make a timely election to be excluded from the Class; (iii) governmental entities; and (iv) the Court to which this case is assigned and its staff.

2

2013. (Dkt. No. 92.) Nearly one year later, on May 6, 2014, Plaintiffs filed their first motion for class certification. (Dkt. No. 122.) Before the briefing on that motion was completed, Plaintiffs filed a Motion for Leave to File Excess Pages for their Class Certification Reply Brief (Dkt. No. 124), in which they represented that significant discovery related to the class certification motion had not been completed yet. In light of that representation, the motion for class certification was deemed withdrawn and the Court set a new briefing schedule. The parties thereafter filed their briefing on the second motion for class certification (Dkt. No. 128), as well as Defendant Del Monte Foods Inc.'s motions to strike the declarations of Plaintiffs' experts, Oral Capps and Julie Caswell, submitted in support of the second certification motion (Dkt. Nos. 132 and 133.)

The Court heard oral argument on the second class certification motion and the related motions to strike on August 19, 2014, at which time Plaintiffs represented that they had agreed to withdraw certain claims on behalf of the class. Subsequent to the hearing, the parties submitted, and the Court approved, a stipulation narrowing the scope of the claims against Defendant. (Dkt. No. 156.) The stipulation withdrawing the claims asserted by the putative class significantly changed the scope of the class Plaintiffs sought to certify and rendered much of the evidence and arguments in the second round of class certification briefing unhelpful, if not irrelevant, and leaving significant gaps in the evidentiary record as to the remaining issues for class certification. Given those changes, by its order issued September 4, 2014, the Court denied the second motion for class certification without prejudice to refiling with evidence tailored the narrowed set of claims. (Dkt. No. 159.) The motion presently before the Court is Plaintiffs' third attempt at class certification.

**B.      Evidentiary Issues In Connection With This Motion**

*1.      Plaintiffs' Motion to Strike Declaration of Liam Farrell*

In connection with this third motion for class certification, Plaintiffs moved to strike the declaration of Liam Farrell filed in opposition to the motion. (Dkt. No. 182-13.) Plaintiffs argue that Farrell's declaration is a sham declaration that contradicts his deposition testimony, and that Del Monte should be estopped from relying on it. More specifically, Plaintiffs argue Farrell testified, in his May 16, 2014 deposition, that the challenged label statements were on the products at issue from 2008 to 2013, but then suddenly had an "epiphany" in the December 2014 declaration

he submitted, declaring that there were variations as to whether those label statements appeared on all products within that time frame.

The Court has reviewed the record and finds the factual chronology more complicated than Plaintiffs indicate. In May 2014, Farrell testified that, "to the best of [his] knowledge," the product labels included the same statements for the entire time period. (Dkt. No. 195-5, Farrell Depo. at 71-72, 73, 80-81.) In his July 2014 declaration, submitted in opposition to Plaintiffs' second motion for class certification, he stated that labels vary across product lines, within product lines, and over time, and that certain tomato products did not have the antioxidant flag at all, such as tomato sauce and the larger-sized cans of diced tomatoes. (Dkt. No. 131-7, ¶¶ 4-6, 9.) Both the deposition and declaration were made at a point in the litigation when several hundreds of different product labels were at issue. In August 2014, at the hearing on the second class certification motion, Plaintiffs abruptly disavowed many of their claims, significantly changing the matters at issue. At the hearing, the Court directed the parties to submit a stipulation clarifying what issues remained for decision. (Transcript of August 19, 2014 hearing at 61.) The parties submitted a stipulation in which Plaintiffs dismissed claims concerning certain products (Dkt. No. 154), but shortly thereafter on September 2, 2014, Del Monte submitted a separate statement which charted out the label variations across size and product type for the remaining tomato and fruit products. (Dkt. No. 158.)

By order issued September 9, 2014, the Court denied the second class certification motion and directed Plaintiffs to submit evidence directed to the narrowed scope of its claims in any future class certification motion. (Dkt. No. 159.) In October 2014, Plaintiffs deposed another representative of Del Monte about product labeling, Jackie Curtis. Curtis testified to differences in product labels depending on the product type, noting that third party packaging suppliers and printers would have to confirm whether the different labels were actually used on products that shipped. (Dkt. No. 198-6, Curtis Depo., at 69, 76-78.) Thus, Plaintiffs were aware of Del Monte's position and evidence showing label variations, if not by July at least by September 2014. Plaintiffs neither made a discovery motion nor sought to re-depose Farrell or anyone else regarding the discrepancies between his May 2014 testimony and his July 2014 declaration, the statements by

4

Curtis, or the statements in Del Monte's September 2, 2014 filed with the Court. Fact discovery closed on November 17, 2014.

Based on the foregoing, the Court concludes that Farrell's December 2014 declaration in opposition to Plaintiffs' third motion for class certification was not a late-revealed "epiphany," but was consistent with Del Monte's position and evidence presented well before the close of discovery. The motion to strike the December 2014 Farrell Declaration is, therefore, **DENIED**.[3]

## II.   APPLICABLE STANDARDS

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). To depart from this general rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotations and citation omitted). The proponent of class treatment, usually plaintiff, bears the burden of demonstrating that class certification is appropriate. *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982), *abrogated on other grounds in Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir.1996).

Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets of requirements that plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b), depending upon the nature of the class they seek to certify. *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010) (setting forth requirements of Rule 23). Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify

---

[3] The Court notes that Del Monte previously moved to strike the declarations of Dr. Oral Capps and Dr. Julie Caswell when they were submitted in connection with Plaintiffs' second motion for class certification. Plaintiffs have incorporated those same declarations in their third motion for class certification, but Del Monte did not renew or renotice those motions to strike.

Del Monte did file objections to a reply declaration of Dr. Capps and a newly submitted declaration of F. Edward Scarborough. (Dkt. No. 197.) The grounds for objection were that Plaintiffs had offered the evidence therein for the first time on reply without sufficient opportunity to respond. As neither the Reply Capps declaration nor Scarborough's declaration is material to the Court's decision herein, the objections are overruled as moot.

a class.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.) *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012).  Although some inquiry into the substance of a case may be necessary to determine whether these requirements are satisfied, the court must not freely advance a decision on the merits to the class certification stage.  The Supreme Court recently affirmed this position stating:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent —that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

In addition to the four requirements set forth in Rule 23(a), most courts have implied an additional threshold requirement: that the members of the class are readily ascertainable.  *See Xavier v. Philip Morris USA, Inc*., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("the party seeking certification must demonstrate that an identifiable and ascertainable class exists"); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011) ("[w]hile Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).  "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement…[that] its members can be ascertained by reference to objective criteria… [and] the description of the class is definite enough so that it is administratively feasible for the court to

6

ascertain whether an individual is a member." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. at 299 (internal citations omitted).

The Ninth Circuit has not yet reached the question of whether there is an ascertainability requirement in Rule 23. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 (9th Cir. 2014) ("we need not and do not reach the question of whether the district court abused its discretion in denying certification based on the threshold ascertainability test"). However, it has reiterated that "class certification of UCL claims is available only to those class members who were actually exposed to the business practices at issue." *Id.* at 1068; *see also Pierce v. County of Orange,* 526 F.3d 1190, 1200 (9th Cir.2008) (district court did not abuse its discretion in decertifying a damages class because "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members"); *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014) *cert. denied,* 135 S. Ct. 962 (2015) (court did not abuse discretion in denying class certification for lack of ascertainability where plaintiff offered no plan for reliably identifying members of the class).

Several other Circuit Courts of Appeals have held that ascertainability is an implicit prerequisite to certifying a class which requires class members to be identifiable by objective, verifiable criteria "without extensive and individualized fact-finding or minitrials." *Carrera v. Bayer Corp.*, 727 F.3d 300, 303-04 (3d Cir. 2013) (quotation marks omitted); *see also Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'"); *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir.) *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014) (in order to maintain a class action, the class must be adequately defined and clearly ascertainable); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006) *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (class members must be ascertainable). The Court's reading of these authorities leads it to conclude that, as a condition of certifying a class, Plaintiffs must establish

7

ascertainability by demonstrating that class members can be identified readily by clear, objective criteria.[4]

Once the threshold requirements for certification are met, a plaintiff must establish that the class is appropriate for certification under one of the provisions in Rule 23(b).  Here, Plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3).  Rule 23(b)(2) requires that a plaintiff to show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## III.  DISCUSSION

### A.  Nature of the Alleged Class Claims

The Court turns first to a general overview of the nature of the class claims and what Plaintiffs will need to prove to establish Del Monte's liability, as this informs the analysis of each of the Rule 23 elements.  Plaintiffs allege claims under the UCL, FAL, CLRA, and common law restitution on the grounds that Del Monte has created misleading labeling and advertising for its products which fail to comply with objective FDA and Sherman Law standards.  It is this

---

[4] While the Ninth Circuit has not opined on the point, there is a divergence of authority regarding whether and to what degree ascertainability is required for certification of a Rule 23(b)(2) injunctive relief class.  *See* NEWBERG ON CLASS ACTIONS § 3:7 (5th ed.) (setting approaches of various circuits finding ascertainability applies, does not apply, or is relaxed for injunctive relief classes); *see also Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007) ("As a general matter, less precision is required of class definitions under Rule 23(b)(2) than under Rule 23(b)(3), where mandatory notice is required by due process.").  This Court is in agreement with others that, even where certification is sought only for purposes of injunctive relief, a "class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment" in order to avoid "satellite litigation…over who was in the class in the first place."  *Xavier*, 787 F. Supp. 2d at 1089; *cf. In re Yahoo Mail Litig.*, No. 13-CV-04980-LHK, 2015 WL 3523908, at *16 (N.D. Cal. May 26, 2015) *appeal filed* June 10, 2015, Ninth Circuit Ct. of Appeal Case No. 15-80101 ("the ascertainability requirement does not apply to Rule 23(b)(2) actions, [but t]his does not obviate the basic requirement that Plaintiffs provide a clear class definition under Rule 23(c)(1)(B).")

8

misleading labeling and advertising that they allege caused them to purchase products or pay premiums they would not have otherwise paid.

The standard for these state law claims is the "reasonable consumer" test, which requires a plaintiff to show that a "reasonable consumer" is likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir.2008); *see also Kasky v. Nike Inc.,* 27 Cal. 4th 939, 951 (2002) (deceptiveness under the UCL established if advertising is "actually misleading or…has a capacity, likelihood or tendency to deceive or confuse the public"). Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs. *See Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254, 1274 (2007) (in UCL, CLRA, and FAL claims, courts apply the reasonable consumer standard and "must view the labeling from the perspective of those consumers for whom the [challenged] designation is important"). A "representation is 'material'…if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (*quoting Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 333 (2011) and Restatement 2d Torts, section 538 (2)(b)).

Proof that statements were material to the plaintiff purchaser class, and that class members relied on those statements in making purchasing decisions, does not always require individualized evidence for each class member. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), *as modified on denial of reh'g* (Feb. 8, 2010) (plaintiffs satisfied materiality requirement on a classwide basis where court "assume[d] that a reasonable person would not knowingly commit a criminal act" and therefore the legality of possessing the product was material); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (*quoting Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 976-66 (1997) ("'a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material… [a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in

9

determining his choice of action in the transaction in question'"). However, in all but the most unusual case,[5] plaintiffs must offer some means of proving materiality and reliance by a reasonable consumer on a classwide basis in order to certify a class. *Id.*; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133 (2009) (where plaintiff failed to offer "common evidence as to what consumers perceived or what they would find material" in false advertising claim, class could not be certified); *Faulk v. Sears Roebuck & Co.*, No. 11-CV-02159 YGR, 2013 WL 1703378, at *9 (N.D. Cal. Apr. 19, 2013) (*quoting Zinser,* 253 F.3d at 1189) (at class certification, a plaintiff must at least "point to common proof that would establish the materiality element of his own claim" rather than "rely merely on assurances of counsel that any problems with predominance or superiority can be overcome.").

**B.     Rule 23(a) Threshold Requirements**

*1.     Numerosity and Adequacy*

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). To determine adequacy of representation under Rule 23(a)(4), the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Del Monte concedes that numerosity of the class is established.[6] Likewise, no argument is raised by Del Monte to contest the adequacy of the class representatives or class counsel.

---

[5] The Court considers the *In re Steroid* decision to be that unusual case where a court could presume the alleged misrepresentation at issue—that sale of the over-the-counter steroid products was not illegal—was material to a showing of injury to purchasers based solely on that fact, without further evidence. *In re Steroid*, 181 Cal. App. 4th at 157; *see also Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 927 (2010) ("unlike in *Steroid Hormone,* the fact that the consumers did not learn of this information was not a basis to conclude Target was required to disgorge profits from the sales to every consumer, regardless whether the consumer was ever exposed to the alleged misrepresentation"); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1131 (N.D. Cal. 2014) (rejecting plaintiffs' citation of *In re Steroid* as not requiring proof of reliance for class certification of mislabeling claims).

[6] DelMonte admits that the number of consumers who purchased the challenged products exceeds 10,000. (Exhibit 2 to Plaintiffs' Motion [Defendant's Responses to Requests for Admission Number 4].)

10

### *2. Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). That is, the named plaintiffs must "suffer the same injury as the class members." *Wal-Mart*, 131 S.Ct. at 2550-51. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

Del Monte contends that Plaintiffs cannot establish typicality because they cannot show they have suffered the same injury as the class members, given that their deposition testimony repudiated key allegations of their complaint. While Plaintiffs' FAC alleges that they read and relied on the challenged label statements, and "would likely not have purchased…had they known the products were misbranded," Del Monte argues that the deposition testimony of Kosta and Bates contradicts those allegations. The Court reviews the cited testimony as to each of the three categories of claims.

    a.    <u>Antioxidants</u>

Kosta could not recall specifically but believed he did see the statement on the label regarding antioxidants. (Kosta Depo. at 50, 64.)[7] Kosta testified that he does "scan through the labels. I don't read everything…I can't recall exactly, that moment when I was in the store, if I did" read the particular label statement. (Kosta Depo. at 14.) He testified that the phrase on the label "probably caused [him] to read more, to scan more." (*Id.*) He testified that in "the process of

---

[7] Excerpts of the deposition of Michael Kosta can be found at Dkt. Nos. 174-5, 182-9, and 195-2. Excerpts of the deposition of Steven Bates can be found at Dkt. Nos. 174-4, 182-10, and 195-3. The "Kosta Depo." and "Bates Depo." citations herein are to the internal page numbers of those deposition transcripts.

11

how I shop…I would imagine" that the label statements caused him to purchase the product. (Kosta Depo. at 50.)

Bates testified that he did look at the "blue box" with the antioxidant statement on the front of the label, but that he did not read, or could not recall reading, the antioxidant statement on the back of the label before he purchased the product. (Bates Depo. at 12, 28-29, 40.) He testified that he might or might not have purchased the product if it did not reference antioxidants on the label, depending on what other products said. (Bates Depo. at 40-41.)

### b. Artificial Flavors or Preservatives

Kosta testified that he generally looks to see if there are artificial flavors or preservatives present in products, and he scans the label for that information. (Kosta Depo. at 20-21.) He testified that he might not have purchased the product if he had known it contained artificial flavors or preservatives, depending on how other available products compared to DelMonte's. (Kosta Depo. at 40.) He testified that he was not sure if he read the statement "no artificial flavors or preservatives" on the diced tomato product before he purchased, but that he does "look to see if it has artificial flavors or preservatives on almost everything." (Kosta Depo. at 79.) Bates did not identify artificial flavor or preservative statements as a misleading element in his deposition. (Bates Depo. at 12.)

### c. Refrigeration

Kosta testified that he did not see the "must be refrigerated" statement on one FruitNaturals product before he purchased it, but was influenced to purchase it by the fact that it was in the refrigerator section. (Kosta Depo. at 146.) He testified that he did read the "must be refrigerated" statement on two other FruitNaturals products. (Kosta Depo. at 170-71.) Plaintiffs do not contend that Kosta purchased SunFresh products.

Bates testified that he did not notice a "must be refrigerated" label on a FruitNaturals product he purchased, but believed that it did require refrigeration because he "pulled it from a refrigerated section." (Bates Depo. at 124.) He testified that the combination of the word "naturals" on the front of the FruitNaturals product, along with the fact that it was located in the refrigerated section with produce, in a clear container, in "100% juice" indicated to him that it was

12

"fresh" and required refrigeration. (Bates Depo. at 106-08.) The SunFresh products that he purchased were in the canned section. (Bates Depo. at 208.)

### d. Conclusions on Typicality

The Court finds Plaintiffs have sufficiently established that the claims of Kosta and Bates are typical of the class they seek to represent as to their antioxidant claims with respect to the tomato products. The evidence indicates a similar injury to the proposed class due to purchase of the same or similar products. Plaintiffs have also offered evidence sufficient to show that Kosta's claims regarding the "no artificial flavors or preservatives" statement on Del Monte tomato products is typical of the class he seeks to represent. However, the evidence does not support a finding that Bates has a "no artificial flavors or preservatives" claim with respect to the tomato products, and thus his claims are not typical of the proposed class in this respect.

With respect to the FruitNaturals products, Plaintiffs have also offered sufficient evidence to conclude that Kosta and Bates have claims typical of other class members. The evidence indicates they suffered an alleged injury similar to the proposed class based upon their purchase of the same or similar products.

However, Plaintiffs have failed to offer evidence that Kosta and Bates have refrigeration/fresh claims as respects the SunFresh product line. Kosta offers no evidence to support a SunFresh claim and Bates only testified to seeing SunFresh products in a non-refrigerated shelf area. Thus, neither Kosta nor Bates has a claim typical of the proposed class with respect to the SunFresh products. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019-20 (9th Cir.2011) (upholding district court's holding that proposed class representative who did not see challenged statement, and other who was not deceived by challenged statement, were not typical).

### *3. Ascertainability*

To establish ascertainability for purposes of class certification, Plaintiffs must demonstrate that: (*i*) members of the proposed class are readily identifiable by objective criteria, and (*ii*) it is administratively feasible to determine whether a particular person is a member of the class. *Xavier*, 787 F. Supp. 2d at 1089. Plaintiffs contend that all Del Monte products bear the same unlawful statements and that the class is readily ascertainable because it is all persons who purchased one of

the products. The proffered class definition, "all persons who purchased a Defendant's brand canned tomato product or a Defendant's FruitNaturals or SunFresh fruit product," sets forth objective criteria for class membership.

Del Monte raises concerns that the class would not be ascertainable, despite the use of facially objective criteria. Purchasers are unlikely to have retained receipts or other evidence of purchase and Del Monte has no records of such purchases. Moreover, Del Monte contends that self-identification of class members would be fraught with errors because only certain products within the accused product lines actually had the allegedly misleading labeling and packaging. Specifically, Del Monte points to the following discrepancies in the labeling and packaging of the products at issue:

- Only 27 of the 61 representative labels for tomato products at issue have an antioxidant "blue flag" on the front of the label. (Farrell Dec. ¶ 8.)[8] No tomato sauce products ever included the blue flag. Only certain flavors and sizes of diced and stewed tomatoes ever included the flag. Appearance of the flag on the flavors where it was used varied over the time of the class period, appearing in some years but not others. The back-panel antioxidant statement appeared on all diced and stewed varieties, but not all sauce varieties. Use of the flag as well as the back-panel statement was discontinued in 2013.

- Only 32 of the 61 tomato product labels included the accused artificial flavor high fructose corn syrup, the presence of which varies across product lines and flavors, as well as within the same flavor over time. (Farrell Dec. ¶ 9.) As for preservatives, none of the tomato sauce products contained accused preservative calcium chloride.

- Fifteen of the 25 representative FruitNaturals products, and 14 of the 23 SunFresh products are packaged in Mexico, are not shelf-stable, and actually do require refrigeration, making the refrigeration statements truthful. Other fruit products changed their labels during the class period from "Must Be Refrigerated" to "Refrigerate for Quality."[9]

---

[8] Tomato products come in different flavors and sizes. For example, Defendant sells "Diced Tomatoes with Garlic and Onion" and "Diced Tomatoes with Mushroom and Garlic." The labeling, including the allegedly misleading aspects of the labeling, varies by size and flavor. (Farrell Dec. ¶¶ 7-10, Tables 1 and 2.)

[9] Plaintiffs contend that this change to the label is "still *likely* unlawful," and is still a common issue. (Reply at 4:24-25, emphasis supplied.) This is not part of the allegations of the

14

1 Thus, Del Monte argues that the process of determining who is a member of the class would 2 require a potential member to pass a "memory test" to identify specifically which product, flavor, 3 and label variation they purchased, and, for the fruit products, whether they purchased the products 4 in a refrigerated or non-refrigerated section. Del Monte relies on decisions denying class 5 certification on ascertainability grounds in *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 6 2014 WL 2860995 (N.D. Cal. June 23, 2014), *appeal filed* January 30, 2015, Ninth Circuit Ct. of 7 Appeal Case No. 15-15174, and *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 8 2702726 (N.D. Cal. June 13, 2014), *appeal filed* July 15, 2014, Ninth Circuit Ct. of Appeal Case 9 No. 14-16327. Because those cases are quite similar to the instant action, the Court examines them 10 in some depth.

11 In *Bruton*, the plaintiffs sought to certify a class defined as persons who purchased Gerber 12 baby food products labeled with certain alleged unlawful and deceptive nutrient content claims as 13 well as allegedly misleading statements of "No Added Sugar" and/or "No Added Refined Sugar." 14 *Bruton*, 2014 WL 2860995, at *2. In denying certification of both a Rule 23(b)(2) injunctive relief 15 and 23(b)(3) damages class, the court in *Bruton* found that the class was not sufficiently 16 ascertainable because consumers would be required to recall more than just whether they purchased 17 a product from a particular line of Gerber baby food products. *Bruton*, 2014 WL 2860995 at *8. In 18 addition, they would have to recall whether: (*i*) they purchased a qualifying flavor; (*ii*) the product 19 was in a certain type of packaging; and (*iii*) the packaging included the challenged statements. *Id.* 20 Thus the court concluded that "the number of products at issue in this case, the varieties included 21 and not included in the class definition, the changes in product labeling throughout the class period, 22 the varied and uncertain length of time it takes for products with new labels to appear on store 23 shelves, and the fact that the same products were sold with and without the challenged label 24 statements simultaneously make Plaintiff's proposed class identification method administratively 25 unfeasible." *Id.* at *9. The court contrasted the variability in the proposed *Bruton* class with other

---

28 FAC. The Court declines to read new bases for liability into the class at this stage of the litigation, after discovery has closed and Plaintiffs are on their third attempt to certify a class.

15

cases in which classes of purchasers had been certified based upon the fact that the products in the class definition all contained the same statements for the entire class period. *Id.*

In *Jones*, the district court likewise found that the class was not sufficiently ascertainable for class certification under either Rule 23(b)(2) or 23(b)(3). *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014). Plaintiffs in *Jones* sought to certify classes of purchasers of Hunt's tomato products, PAM cooking spray products, and Swiss Miss hot cocoa products, alleging that their packaging contained deceptive and misleading information, including statements that the tomato products were "100% Natural" and "Free of artificial ingredients & preservatives" despite containing citric acid and calcium chloride. *Id.* at 1. The evidence presented at class certification included product labels that changed over the course of the class period, and some product varieties lacking the challenged statements in the first instance. *Id.* at 2-3. The district court rejected certification, opining that "it is hard to imagine that [class members] would be able to remember which particular Hunt's products they purchased from 2008 to the present, and whether those products bore the challenged label statements…[since] there were 'literally dozens of varieties with different can sizes, ingredients, and labeling over time' and 'some Hunt's cans included the challenged language, while others included no such language at all.'" *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014).

Like *Bruton* and *Jones*, the product labels and packaging at issue here do not fall into neatly separate categories such that one can say with any confidence that the purchaser of an item in that category was subject to the alleged violations. The products vary in the truthfulness of the packaging and labeling of certain FruitNaturals products. The extent of that variability is compounded over the course of the class period. While the lack of proof of purchase may be a factor, it is not dispositive. Here, the Court weighs more heavily the variations in the products included in the proposed class which make it much more difficult for a purchaser to recall which particular product, with which packaging and labeling, they purchased.

Plaintiffs' class definition here covers purchasers of *any* product within the Del Monte canned tomato, SunFresh fruit, and FruitNaturals fruit product lines, eliding issues of whether every

16

1 product in those lines, throughout the entire class period, contained the alleged false labeling and
2 packaging. The Court cannot ignore the evidence of such variability here and its impact on
3 ascertainability. Likewise, the Court declines Plaintiffs' suggestion (Reply at 5:13-15) to simply
4 narrow the class definition to account for the labeling discrepancies, since that would not solve the
5 problem of class members having to engage in a complicated memory test to establish class
6 membership.

Thus, Plaintiffs' failure to establish ascertainability weighs against class certification.[10]

### *4.    Common Questions of Law And Fact*

Rule 23(a)(2) requires the party seeking certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question "must be of such a nature that it is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556.

Plaintiffs contend that there are common questions as to: (1) whether the challenged label statements are unlawful, unfair, deceptive, or misleading, and (2) the materiality of the challenged label statements to the reasonable consumer. They argue that a "common core" of fact binds the entire class because all class members purchased one of Del Monte's tomato or fruit products bearing the same unlawful statements or deceptive packaging.

The Court finds that Plaintiffs have failed to demonstrate common questions of law and fact to support class certification. With respect to the question of whether the challenged labels and

---

[10] The Court notes that in food labeling cases in this district where certification of a Rule 23(b)(2) class was granted, district courts have required the class of purchasers to be sufficiently ascertainable. *See Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at *2-3 (N.D. Cal. Apr. 24, 2014) *reconsideration denied,* No. C-12-02646-RMW, 2014 WL 7204757 (N.D. Cal. Dec. 17, 2014) (class of purchasers of Defendants' white, green, and black teas was sufficiently ascertainable for injunctive relief); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) (decertifying damages class due to issues of common proof, but leaving 23(b)(2) class intact because it remained ascertainable); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (granting class certification for injunctive relief class after determining class was sufficiently ascertainable).

packaging are unlawful, unfair, deceptive, or misleading, the variations are so great that at least half the challenged products would not evidence the violations alleged, either because they did not appear on the products or because the refrigeration requirements were truthful. For the same reasons discussed above, purchase of one of the products alone would not equate to membership in a class of persons to whom Del Monte is liable. Thus, as the class is presently defined, there is "no cohesion among the members because they were exposed to quite disparate information." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (variations in tool rental agreements "over time and among the different Home Depot locations" raised individual issues).

Leaving aside the variations on the labeling and packaging in the product lines included in the class definition, Plaintiffs have also failed to offer evidence that the materiality of the alleged unlawful, deceptive, or misleading statements could be shown on a classwide basis. While materiality and reliance for purposes of UCL, FAL and CRLA claims can be subject to common proof on a classwide basis under some circumstances, Plaintiffs here have offered no valid means by which such classwide proof would be made.

Plaintiffs rely on the declaration of Dr. Julie Caswell, evidence they offered in connection with their prior motion for class certification filed June 2, 2014. (Dkt. No. 128-2, Caswell Dec.) The bulk of Dr. Caswell's declaration consists of broad statements about why labels generally matter to consumers of food products. (*See* Caswell Dec. ¶¶ 6-24.) Paragraph 25 of the declaration generally summarizes the allegations of Plaintiffs' FAC as they stood prior to their narrowing of the issues for class certification. It states:

> 25. I have been asked to review the Consolidated Complaint in *Kosta v. Del Monte Corporation* to focus on the following labeling issues which are the subject of the Plaintiff's Motion for Class Certification:
> A. Del Monte's use of the labeling statement "Natural Source of Antioxidants" with a check mark by the word "Lycopene" on its tomato products;
> B. Del Monte's use of the labeling statement "No artificial ingredients, additives, and preservatives" on its fruit and vegetable products;
> C. Del Monte's use of the labeling statement "Natural" on its fruit and vegetable products;
> D. Del Monte's use of the labeling statement "Fresh" on its fruit and vegetable products; and

18

E. Del Monte's use of the labeling statement "No Sugar Added" on its fruit products.

(*Id.* at ¶ 25.) Following this, the only opinion Dr. Caswell offers in her declaration that is at all specific to the facts of this case is:

> In my experience with labeling statements and consumer choice, it is my opinion that the statements listed in Paragraph 25 would be material to a reasonable consumer. The claims are material because reasonable consumers would rely on them to identify products that have particular nutrition, value/function, and process attributes and in comparison shopping between food products.

(*Id.* at ¶ 27.) Dr. Caswell does not state that she reviewed any particular labels at issue, that she surveyed any consumers who purchased products with these labels, or even that the particular attributes challenged by Plaintiffs (*i.e.*, the blue antioxidant flag, the "must be refrigerated" statement, or the nature of the packaging and refrigerator placement) would have been material to consumers. Indeed, the declaration offered by Dr. Caswell here appears to be identical to the declaration she has offered in support of other food labeling cases brought by Plaintiffs. *Cf. Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *15-16 (N.D. Cal. June 13, 2014) (rejecting nearly identical declaration by Dr. Caswell because it "does not demonstrate that [the challenged labeling statement] is necessarily 'material to reasonable consumers'"); *see also Major v. Ocean Spray Cranberries*, CAND Case No. 12-cv-3067, Dkt. No. 23-7 (Declaration of Julie Caswell) (nearly identical declaration); *Bruton v. Gerber Products Co.,* CAND Case No. 12-cv-2412, Dkt. No. 82-5 (Declaration of Julie Caswell) (nearly identical declaration). A fill-in-the-blanks declaration from an expert, without any real consideration of the specific product attributes at issue here, is not sufficient to establish that the materiality of the label statements here is a common question.

Thus, Plaintiffs offer no method of classwide proof to show that a "reasonable consumer" would find the challenged statements deceptive and material to their purchasing decision. Plaintiffs' argument that Del Monte would not have changed the labels if the changes were not material to consumers begs the question. Without evidence to prove materiality on a classwide basis, no common question exists.

19

Finally, the Court is not persuaded by Plaintiffs' argument that their claim under the UCL's unlawful prong, based on violation of California's Sherman Law, Cal. Health & Safety Code section 110760, is subject to classwide proof without the need to show material or reliance. As the California Supreme Court held in *Kwikset*, with respect to similar statutory violations, the question of consumer deception still requires a showing of reliance. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327, 246 P.3d 877, 888 (2011) (requiring proof of reliance where "statutory provisions simply codify prohibitions against certain specific types of misrepresentations…[t]he theory of the case is that Kwikset engaged in misrepresentations and deceived consumers"); *see also Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503, at *3 (N.D. Cal. Nov. 25, 2013) (following *Kwikset* on this point).

In sum, Plaintiffs have failed to demonstrate, on the record before the Court, that there are common issues of fact or law for the class at issue that would be capable of determination "in one stroke." Lack of commonality also weighs against class certification.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' Motion for Class Certification is **DENIED**. As stated herein, the Court concludes that Plaintiffs have not met their burden to put forth sufficient evidence to satisfy each of the threshold requirements for class certification in Rule 23(a). Of the requirements (numerosity, common questions of law or fact, typicality, and adequacy of representation, plus some measure of ascertainability), only the factors relative to numerosity and adequacy, and some amount of typicality, are fully met here. Plaintiffs have failed to satisfy the other elements.

Because the Court finds that the threshold requirements of Rule 23(a) are not met, the Court does not proceed to considering whether a class could be certified under Rule 23(b)(2) or 23(b)(3).

This terminates Docket No. 174.

**IT IS SO ORDERED**.

Date: July 30, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**